# UNITED STATES DISTRICT COURT
## District of Kansas
(Kansas City Docket)

UNITED STATES OF AMERICA,

        Plaintiff,

     v.                       Case No. 16-20032-01-06-JAR

LORENZO BLACK,
KARL CARTER,
ANTHON AIONO,
ALICIA TACKET,
CATHERINE ROWLETTE, and
DAVID BISHOP,

        Defendants.

---

### UNITED STATES' FIRST RESPONSE TO MOTION AND AMENDED MOTION FOR FED.R.CRIM.P. 41(g) RETURN OF INFORMATION (Doc. 82 and 85) AND NUMEROUS MOTIONS TO JOIN (Docs. 89, 92, 94, 96, 97)

---

Comes now, the United States of America, by and through its attorney, Debra L. Barnett, Assistant United States Attorney, for the District of Kansas, and advises the Court as follows:

I.     <u>Procedural History</u>

A Complaint was filed in this case against defendants Lorenzo Black, Karl Carter, Stephen Rowlette, Anthon Aiono, Alicia Tackett, Catherine Rowlette and David Bishop on April 9, 2016. (Doc. 1.)  On May 4, 2016, an Indictment was returned against defendants Black, Carter, Aiono, Tackett, Catherine Rowlette and Bishop.  (Doc. 52.)

In the Complaint's supporting Affidavit, Richard Dertinger, Robert Burress and Jermaine Rayton were identified as being involved in criminal activity at Corrections Corporation of America's (CCA) facility in Leavenworth, Kansas.  (Doc. 1, at 6-8, and 22.)  On August 5, 2016, the Federal Public Defender (FPD) filed a Motion for Fed.R.Crim.P. 41(g) Return of Information as to Robert Burress and Jermaine Rayton, two FPD clients held at CCA. (Doc. 82.)  This motion was amended two days later.  (Doc. 85.)  Both motions were joined by the defendants indicted herein, as well as Richard Dertinger.  (Docs. 89, 92, 94, 96, 97.)

A.    <u>Factual Background</u>

On April 8, 2016, law enforcement agents executed a search warrant inside CCA as part of a long-term investigation involving drug and contraband distribution inside the facility.   Prior to executing the warrant, counsel for the government coordinated with law enforcement agents and a designated attorney in the United States Attorney's Office to establish a segregated team

("taint team/filter team") to review any potential attorney-client material encountered during the course of the investigation. The taint agents were used while executing multiple search warrants as part of this investigation.

Agents determined, based on financial documents, that approximately 95 inmates were implicated in drug and contraband-trafficking inside CCA. Given the broad scope of the investigation, on April 12, 2016, a law enforcement agent served a subpoena on CCA's record custodian seeking "all video footage or still images currently retained by the Corrections Corporation of America (CCA) depicting any internal or external surveillance video or still image taken between July 2014 and April 12, 2016 at the CCA facility in Leavenworth, Kansas." Sometime during May, 2016, CCA provided six drives, each three TB in size, to the government containing surveillance footage from the CCA facility in Leavenworth.[1]

On May 24, 2016, the parties held a meet-and-confer to address issues related to the significant volume of discovery available. During the meeting, the government informed all counsel that the government was in the process of obtaining all surveillance at CCA for a specifc time period. Counsel for the

---

[1] In reality, the government only obtained surveillance footage for a limited period based on the retention capability of CCA's surveillance system, which is estimated to be from approximately January, 2016, to May, 2016. The government did not view the surveillance footage due to the assertions that the footage might contain attorney-client privilege material. Thus, the government is unable to verify the exact time period covered by the CCA surveillance footage that was in the government's possession.

government also informed defense counsel that pursuant to a search warrant, agents recovered all "law library computers" inside the facility and proposed a process that would allow defense counsel to review any potential attorney-client material contained in the law library computers before agents or attorneys involved in the investigation reviewed the material. Pursuant to the procedure proposed by the government, after defense counsel identified any potential attorney-client material, the taint team would then review the privilege log provided by defense counsel and verify that it, indeed, contained attorney-client material. If the material was in fact deemed to be attorney-client, then neither government counsel or agents assigned to the case would be provided the material.

On June 29, 2016, the government emailed counsel explaining, "[f]rom defense counsel, I am waiting for 6 drives, each 3 TB in size on which I will download 18 total TB of surveillance footage. The footage is divided by camera angle, and we coordinated with CCA to provide a chart showing what is depicted on each camera angle (ie, which pod, hallway, etc.)." On July 1, 2016, the government emailed counsel providing them with the make and model of the external drives provided by CCA to facilitate copying of the surveillance footage. On July 13, 2016, the government emailed Catherine Rowlette's counsel asking that he coordinate with other defense counsel to set

up a meet and confer with all counsel to discuss discovery issues.    The parties agreed to meet and confer on July 21, 2016, at 3:30 p.m.    On July 13, 2016, the Court contacted counsel *sua sponte* and set a hearing regarding discovery issues for July 21, 2016, at 3:30 p.m.    No counsel in this case, or any related case, has provided the government with external drives on which to download the CCA surveillance footage before it was relinquished to the Court on August 9, 2016.

During the hearing on July 21, the Court inquired: "And there are cameras that are identified with particular—the visitor room and the attorney/client room as well, or no?"    Counsel for the government responded: "Yes.    Except that there is no—there are no audio in attorney/client unless someone at CCA, an employee, took it upon themselves to turn on the audio. But I don't believe it's recorded.    It's just that it would allow a particular CCA employee to listen in without recording if—if the employee believes something was afoot that he needed to be aware of."    At the time of the hearing, the government believed that CCA's system operated in that manner based on descriptions provided by a cooperating inmate and his attorney during the course of the investigation.    On July 25, 2016, the government provided to defense counsel an index[2] of camera angles related to the CCA surveillance

---

[2] This index was prepared by CCA.    After its receipt, an employee of the United States Attorney's Office converted the spreadsheet into a pdf document that has since been provided

footage. Within the index, as relevant to this proceeding, certain camera angles are marked "Attorney Room, Attorney Room 4, Attorney Room 5, Attorney Room 6, Attorney Room 7, Attorney Room 8, Attorney Room 9." No Assistant United States Attorney in this office has viewed the footage from the CCA attorney-client rooms.

On August 4, 2016, counsel for Richard Dertinger, who is charged in a separate case (case number 14-20067-CM), contacted the government in that case and asserted an attorney-client privilege regarding the CCA surveillance footage. The government agreed not to review the footage, and to instruct anyone else with access to the footage not to review it until any litigation pertaining to the attorney-client privilege was resolved. On August 5, 2016, the surveillance footage was marked as containing potential attorney-client material and placed in the government's vault.[3]

On August 5, 2016, the government met with coordinating discovery counsel, Shazzie Naseem, to discuss discovery in this case. Government counsel advised Mr. Naseem that counsel for Mr. Dertinger was reviewing footage to verify whether attorney-client meetings were recorded in any fashion.

---

to counsel.

[3] The United States Secret Service also had a copy of the surveillance footage. That copy of the footage was also marked as containing potential attorney-client information, and agents placed that copy of the footage in a secure location. All of these drives were subsequently given to the Court on August 9.

B.    Pending Motions

In the instant motions, defense counsel requested an evidentiary hearing after which counsel asked that this Court order CCA to disclose the following --

1.    Its policy regarding surveillance and documentation of meetings between inmates and their counsel;

2.    Its policy concerning the recording of phone calls between inmates and their counsel;

3.    How information regarding interaction between inmates and their counsel is transferred to the United States Attorney's Office for the District of Kansas, or any law enforcement agency.

(Doc. 82, at 3.)  Counsel further requested that this Court impound video recordings, audio recordings, or other record of information derived from the government's possession of attorney-client meetings, in essence seeking a protective order for potential privileged communications.  (Id., at 3-4.)

The Amended Motion further requested that the Court return all recorded confidential legal communication to the defendants through counsel, and that the Court order the following –

1.    That the United States Attorney's Office disclose its policy and practice of gathering and reviewing privileged and confidential legal communication from CCA or other pretrial holding facilities;

2.    That the United States Attorney's Office identify the cases in which it has gathered or reviewed confidential and privileged legal communication, and whether that has been disseminated; and

3.      That the parties be allowed to address other evidentiary matters as they arise in this quickly developing investigation.

(Doc. 85, at 11.)   Counsel further reserved the right to request sanctions as recognized in *Schillinger v. Haworth*, 70 F.3d 1132, 1142-43 (10th Cir. 1995), advising that the defense would "ask the Court to appoint an outside entity to 1) investigate, in consultation with the defense and USAO, the conduct of CCA and the USAO in recording and reviewing legal communication, and 2) recommend appropriate remedies to the Court."   (*Id.*, at 12.)

## II.    Preliminary Matters

Fed.R.Crim.P. 41(g) is an improper mechanism for bringing this matter before the Court.   The video recordings were provided by CCA pursuant to the service of a subpoena for video footage and still photos.   *See United States v. Calandra*, 414 U.S. 338 (1974)(The request for return of property is the equivalent of a motion to suppress implicating the exclusionary rule which does not extend to grand jury proceedings.) As such, these recordings were not "seized" by the government pursuant to a search warrant or warrant exception, making Rule 41 and the Fourth Amendment inapplicable.

In addition, because Mr. Burress, Mr. Rayton and Mr. Dertinger are not indicted in the present case, they are not parties to this specific litigation and are not entitled to seek relief in this case beyond the request for a protective

order for their privileged communications, if any are determined to exist. Instead, each inmate should file a motion in their existing criminal case, or in a civil case that would allow each inmate to address the potential recording of privileged communications by CCA while meeting with their counsel.

Each inmate also lacks standing to file motions for the review and/or return of recordings of their (potentially) privileged communications seized as evidence. In order to establish standing, the Court would first be required to determine whether a claimant's Fourth Amendment rights have been violated. Or, stated another way, has the disputed search and seizure "infringed an interest of the defendant which the Fourth Amendment was designed to protect." *Rakas v. Illinois*, 439 U.S. 128, 139 (1978).

The government recognizes that ultimately the primary issue in the defendants' various motions is whether any of the CCA video recordings provided pursuant to a subpoena, constitute privileged materials, and, if so, whose communications are involved. The defendants herein and other inmates (and their counsel) lack standing to challenge the subpoena issued to CCA, even if the materials provided might be used against the defendants or other inmates. *See In re Grand Jury Subpoenas Dated Dec. 14, 1987*, 926 F.2d 847 (9th Cir. 1991). However, because the defendants, Mr. Burress, Mr. Rayton and/or Mr. Dertinger could request that this Court enter a protective

order in their respective cases for the CCA recordings, and because the Court has general equitable jurisdiction, the government has agreed only to go forward with the review of these recordings by a Special Master in order to address the potentially sensitive nature of the recordings provided by CCA in a timely and uniform manner.   *See Floyd v. United States*, 860 F.2d 999 (10th Cir. 1988).   In addition, the government recognizes that these recordings, and their handling, present unique issues that require the Court's attention.

By proceeding in this manner, the United States does not waive the presentation of evidence or any arguments it may wish to assert to the allegations made in the hearing on August 9, 2016, before this Court or in the initial motions filed herein.   However, the government believes that certain matters cannot be fully addressed or litigated until there is a determination as to the nature of the material in the questioned recordings.[4]

A.    Special Master

The government requests that the Court appoint a Special Master who is a judge or retired judge, unfamiliar with the facts of this particular case and investigation.   Fed.R.Civ.P. 53.   The Special Master should review the DVRs in order to determine –

---

[4] *United States v. Neill*, 952 F.Supp. 834 (D.D.C. 1997)(If the government submits disputed documents under seal for *in camera* review by a neutral and detached magistrate or by court appointed special masters, the defendant bears the burden of proving that tainted material was provided to the government.)

1.      What is on the video recordings in the CCA interview rooms designated as "attorney room,"

2.      Whether any interaction is depicted that constitutes attorney-client privileged communication, and

3.      If a recorded contact is determined to be privileged, which inmate is involved and whether any exception to the privilege exists.

The government requests that the Court order the following procedures–

1.      The Special Master shall have authority to review all recordings on DVRs 1 through 6 provided by CCA, in order to determine whether the materials are protected from disclosure because of attorney-client privilege and whether there are applicable exemptions to this privilege.

2.      The Special Master shall retain both sets of DVRs (designated as the "original" from CCA, and the "copy") using the "copy" for his/her review. The "original" shall be kept under seal in a secure, climate-controlled facility.

3.      The Special Master is authorized to meet jointly with the parties and to employ any procedure for review that may help ensure an accurate, impartial and expeditious review of the recordings, such that all non-privileged recordings are produced to the government as promptly as possible.

4.    The Special Master may meet with the parties jointly and may avail him/herself of any aid or expertise that s/he may have, or any other sources of aid and expertise that s/he may need, in order to perform the review appropriately and in a manner that is consistent.   The parties are directed to work with the Special Master to expedite these proceedings and to ensure their integrity and accuracy.

5.    The Special Master should immediately hand over copies of any recordings to the government that the parties agree are not privileged so that those materials may be prepared for discovery and disclosure in the criminal case.   With regard to the remaining materials, the Special Master is directed to issue a report and recommendation on an item by item basis (recording by recording), avoiding the disclosure of any material the Special Master believes to be privileged. The parties may object to the report and recommendations within 14 days of its issuance.   This Court should review any such objections *de novo*.[5]

B.    <u>Issues not Properly Before this Court</u>

The only issue properly raised at this time is the request for a protective order and determination about whether the CCA DVRs contain privileged communications.   Any other issue regarding policies, practices, and/or access

---

[5] *See United States v. Stewart*, 2002 WL 1300059 (S.D.N.Y. June 11, 2002)(unpublished); *United States v. Abbell*, 914 F.Supp. 519 (S.D.Fla. 1995); and *DeMassa v. Nunez*, 747 F.2d 1283 (9th Cir. 1984).

to specific images has not been properly raised by an appropriate party in this or any other case.

Jacquelyn Rokusek represents a person not indicted herein. Any issues regarding access to specific images should be raised in that specific case, not here.

As officers' of the Court, government counsel represent that government counsel has not reviewed these recordings. In fact, there was no necessity for the evidence presented last week because the government announced at the beginning of the hearing that it was ready to turn the recordings over to the Court, and agree to the appointment of a Special Master to review those recordings. The government, however, requests an opportunity to present evidence regarding its handling of these DVRs, if and when it becomes necessary to do so, in the proper forum.

Counsels' requests for the following should be denied for the following reasons --

1. The request for CCA's policy regarding surveillance and documentation of meetings between inmates and their counsel is unnecessary and moot at this point due to the Court's August 9, 2016, order that CCA cease the recording and surveillance of meetings between inmates and their counsel.

2. The request for CCA's policy concerning the recording of phone calls between inmates and their counsel is unnecessary and moot at this point due to the Court's August 9, 2016, order that CCA cease the recording of telephone calls between inmates and their counsel.

3.    The request for a description of how information regarding interaction between clients and counsel is transferred to the United States Attorney's Office for the District of Kansas, or any law enforcement agency, is a request for an unwarranted investigation and discovery not authorized by the law or the Rules of Evidence.

4.    The request that the United States Attorney's Office disclose its policy and practice of gathering and reviewing privileged and confidential legal communication from CCA or other pretrial holding facilities, is a request for investigation and discovery not authorized by the law or the Rules of Evidence.   Furthermore, counsel is aware of the United States Attorney's Manual (USAM), which controls the handling of special materials seized pursuant to lawful process and authorization. Though nothing in the record suggests that the United States Attorney's Office does not adhere to and follow the USAM, which is an internal document that does not confer independent rights or remedies to third parties.

5.    The request that the United States Attorney's Office identify cases where it has gathered or reviewed confidential and privileged legal communication, and whether that has been disseminated, is irrelevant to the instant case and is an unsubstantiated and inappropriate request for investigation and discovery not authorized by the law or the Rules of Evidence, or supported by the evidence.

Counsel has suggested that this Court or the Special Master assume the role of investigating CCA and/or the United States Attorney's Office.   The United States does not consent to this.   The evidence demonstrates that such a request is unwarranted on the facts already presented, and outside the scope of this Court's authority and the issues presented and litigated within this case.   *See* Fed.R.Civ.P. 53(a)(1)(A).   Furthermore, CCA is not an entity of the United States, is not a party to this proceeding, and has not been afforded due

process in this matter.

Wherefore, the United States requests that the Court appoint a Special Master to review the CCA recordings in order to determine if there are any privileged communications contained therein, allow for additional briefing on the relevant issues that arise regarding that specific matter, and, if needed, set a hearing date for the presentation of evidence by the government after the Special Master makes an initial determination on the nature of the DVR recordings.

Respectfully,

THOMAS E. BEALL
Acting United States Attorney

 /s/    Debra L. Barnett
DEBRA L. BARNETT
Assistant United States Attorney
United States Attorney's Office
301 N. Main, Suite 1200
Wichita, Kansas 67202
316-269-6481
K.S.Ct.No. 12729
debra.barnett@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2016, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys for the defendants.

<u>s/ Debra L. Barnett</u>
DEBRA L. BARNETT
Assistant U.S. Attorney