16CR20032-ord(appt-specialmaster).wpd

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 16-20032 |
|     Plaintiff | ) | |
| | ) | |
| v. | ) | JUDGE JULIE A. ROBINSON |
| | ) | |
| LORENZO BLACK, et al., | ) | APPOINTMENT ORDER |
|     Defendants | | |

On August 9, 2016, the Court held an emergency hearing in connection with the Federal

Public Defender's ("FPD's") Amended Motion for Return of Information (Doc. 82). The Court

granted this motion, ordering the Government[1] to submit to the custody of the Court certain "video

recordings depicting privileged attorney-client communications at the Corrections Corporation of

America Leavenworth Detention Center" (hereinafter, "CCA"). Order at 1 (Doc. 102). At the

hearing, the parties also "jointly request[ed] the appointment of a special master to segregate all

recordings of attorney-client communications from the remainder of the recordings" that were

submitted to the Court. *Id.* at 3.

Thereafter, the Court: (1) held additional hearings and received briefs regarding the

appropriate scope of the Special Master's duties; and (2) ordered CCA and the Government to

submit to the custody of the Court various additional materials, including audio recordings.

---

[1] As a general matter, the Court uses the term "the Government" in this Order to refer to the United States Attorney's Office for the District of Kansas, unless context requires a broader definition.

The parties' briefs reveal that: (1) the parties agree and consent to the Special Master's performance of certain duties; but (2) the parties are not in *full* agreement, as the FPD asserts the Special Master should pursue additional duties, to which the Government objects.   Further, the parties agree that, although this is a criminal case, the Court should follow the directives of Federal Rule of Civil Procedure 53, which governs the appointment of a Special Master in civil cases.[2]

The Court concludes that appointment of a Special Master is appropriate in this case. Accordingly, the Court hereby enters this Order of Appointment.

---

[2] It is clear a court may appoint a Special Master in a criminal case.  "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has 'the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'"  *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (quoting *In re: Peterson*, 253 U.S. 300, 311 (1920)); *see Ruiz v. Estelle*, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983) ("[R]ule 53 does not terminate or modify the district court's inherent equitable power to appoint a person, whatever be his title, to assist in administering a remedy."); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (the authority to appoint "expert advisors or consultants" derives from either Rule 53 or the Court's inherent power); 18 U.S.C. §3626(g)(8) (defining "special master" as "any person appointed by a Federal court pursuant to Rule 53 . . . *or* pursuant to any inherent power of the court to exercise **the powers of a master**") (emphasis added).

Other district courts have relied on similar authority to appoint Special Masters in criminal cases. *See, e.g., United States v. Stewart*, 2002 WL 1300059 at *4 (S.D.N.Y. June 11, 2002); *United States v. Abbell*, 914 F. Supp. 519 (S.D. Fla. 1995).  Indeed, the United States Attorney's Manual ("USAM"), issued by the Department of Justice, lists using a Special Master as one method of reviewing documents seized from a law office in a criminal case.  *See* USAM §9–13.420(F) (available at www.justice.gov/usam/united-states-attorneys-manual).

## I.     Appointment of the Special Master.

Having given the parties notice and an opportunity to be heard, the Court now appoints as

Special Master David R. Cohen, Esq., of the following law firm:

> David R. Cohen Co. LPA
> 24400 Chagrin Blvd., Suite 300
> Cleveland, OH  44122
> 216-831-0001  tel
> 866-357-3535  fax
> E-Mail:   david@specialmaster.law
> www.SpecialMaster.law

This appointment is made pursuant to Fed. R. Civ. P. 53 and the inherent authority of the

Court.  As Rule 53 requires, the Court sets out below the duties and terms of the Special Master and

reasons for appointment, and orders the Master to "proceed with all reasonable diligence," Rule

53(b)(2).

## II.     Rule 53(b)(2).

Rule 53 requires an order of appointment to include certain contents.  *See* Fed. R. Civ. P.

53(b)(2).  The following discussion sets forth the matters required.

### A.     Special Master's Duties.

Rule 53(a)(1)(A) states the Court may appoint a Special Master to "perform duties consented

to by the parties."  In addition, Rule 53(a)(1)(C) states the Court may appoint a Special Master to

"address pretrial and posttrial matters that cannot be effectively and timely addressed by an available

district judge or magistrate judge of the district."  The Court has reviewed legal authority addressing

the duties of a Special Master that are permitted under the Federal Rules of Civil Procedure and

Article III of the Constitution.[3]  Consistent with this legal authority and the currently-anticipated needs of the Court, as well as the parties' consent, the Court decrees that the Special Master shall have the authority to perform the following duties.[4]

**Initial Duties**

  **Phase I**

  The Special Master shall begin by evaluating the feasability of: (1) identifying privileged and confidential information contained within the recordings and other materials submitted by the Government and CCA to the Court; (2) excising and retaining this information; and (3) providing to the Government and Coordinating Discovery Counsel copies of the remaining, non-privileged and non-confidential materials.

  The Special Master's feasability evaluation shall include an assessment of the time, labor, and cost to index, cull, and segregate the privileged and confidential materials.[5]  This evaluation will include determination of: (1) the volume of the recordings (digital size and/or number of hours); (2) the number of audio and video recordings of the defendants and all other CCA detainees produced to the Government; (3) the number of audio and video recordings of attorney-client communications

---

  [3] *See generally Appointing Special Masters and Other Judicial Adjuncts: A Benchbook for Judges and Lawyers* (5th ed. 2013) (available at www.SpecialMaster.law); Fed. R. Civ. P. 53, advisory committee's notes, 2003 amendment (discussing the range of duties and authority of a Special Master).

  [4] The Court may amend this Order to add additional duties.  With regard to the "Initial Duties" listed here, the Court will schedule a discovery hearing within the next few weeks, where the Special Master will meet with the parties and the Court to determine the most efficient way to proceed.

  [5] It is expected the Special Master will employ IT professionals and others to assist with performance of the Initial Duties.

of defendants and all other CCA detainees produced to the Government; (4) whether it is possible

to index the recordings and cull and segregate the confidential information; and (5) the technology,

equipment, software, and personnel required to undertake these tasks. This evaluation will inform

the Court and the parties as to the appropriate process for discovery in this case.

**Phase II**

After the Special Master submits a feasability report, the Court will determine whether the

Special Master should proceed. If so, the Special Master will, as soon as reasonably possible:

•       Identify, excise, and retain privileged or confidential information from the video recordings
        made at CCA that have been submitted to the Court;

•       Provide copies of these video recordings with the privileged or confidential information
        removed to the Government and Coordinating Discovery Counsel;

•       Identify, excise, and retain privileged or confidential information from the audio recordings
        made at CCA that have been submitted to the Court;

•       Provide copies of audio recordings with the privileged or confidential information removed
        to the Government and Coordinating Discovery Counsel;

•       Identify, excise, and retain privileged or confidential information in the computers seized
        from CCA's inmate law libraries; and

•       Provide images of law library computers with the privileged or confidential information
        removed to the Government and Coordinating Discovery Counsel.

During pursuit of these Initial Duties, the Special Master shall keep the Court and the parties

apprised of his progress and provide an anticipated time line toward completion.

The parties agree and the Court orders that the Special Master's pursuit of these Initial Duties

and any other duties shall not constitute or be deemed a waiver of attorney-client privilege.

**Complementary Duties**

In conjunction with the "Initial Duties" listed above, the Court may also call upon the Special Master to undertake any of the following complementary and auxiliary duties.

•     Provide periodic status reports to the Court.

•     Make formal or informal recommendations and reports to the parties, and make recommendations and reports to the Court, regarding any matter pertinent to the above-listed duties.

•     Communicate and meet with the parties and attorneys as needs may arise in order to permit the full and efficient performance of these duties.

•     Employ staff as may be necessary to assist the Special Master in performing his duties, including experts, consultants, or advisors. The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill his duties.

•     Assist with preparation for attorney conferences (including formulating agendas), court scheduling, and case management.

•     Compile data and assist with, or make findings and recommendations with regard to, interpretation of forensic, scientific, and technical evidence.

•     Assist with legal analysis of the parties' motions or other submissions, whether made before, during, or after trials, and provide the Court with formal and informal recommended rulings on those motions.

•     Assist with responses to media inquiries.

•     Help to coordinate other, related litigation.

•     Direct, supervise, monitor, and report upon implementation and compliance with the Court's Orders, and make findings and recommendations on remedial action if required.

•     Interpret and enforce any agreements reached by the parties.

•     Propose structures and strategies for negotiation of any issues as may become necessary.

•     Monitor compliance with structural injunctions, as may become necessary.

**Additional, Investigative Duties**

The Court continues to consider whether to direct the Special Master to undertake additional investigative duties as requested by the FPD. Generally, the FPD asks the Court to direct the Special Master to investigate whether, and the extent to which, the Government has violated the Sixth Amendment and/or Fed. R. Crim. P. 6(e) in this and other criminal cases.

The Court has chosen to limit the Special Master's duties to those to which the Government consents *at this time*. The Court may later expand the scope of the Special Master's appointment (or may appoint a second Special Master and/or a neutral expert) to include the following duties, among others:[6]

• Determine what, if any, steps were taken by CCA or other pretrial holding facilities to protect confidential audio communications, such as blocking certain phone numbers or warning callers, and whether those measures were communicated to either detainees or their attorneys.

• Determine whether any other protected communications, such as legal mail or videoconferencing, were recorded by CCA or other pretrial holding facilities, or were obtained by the Government.

• Determine how the Government came into possession of any confidential or protected materials, and determine any Government policy or practice related to obtaining those materials; and identify any specific cases or specific Government attorneys or agents who obtained those materials.

• Determine the prior policy and practices of CCA and other pretrial holding facilities under contract with the United States Marshal Service with regard to recording protected communications.

---

[6] These additional investigative duties are copied from the FPD's proposed appointment order (Doc. 119-1). By listing them here, the Court does not mean to limit the Special Master's ability to pursue his "Initial Duties." For example, if the Special Master concludes it is necessary to review certain CCA records in order to identify privileged or confidential information in the CCA recordings, he is authorized to do so notwithstanding reference to that as an "additional investigative duty" below.

- Identify past occasions when CCA or other pretrial holding facilities have made available to the Government or any law enforcement agency recordings of protected communications.

- Determine whether the Government intentionally sought production, formally or informally, of any protected communication from any pretrial holding facility for use in an investigation, grand jury proceeding, or prosecution; and by what means.

- Determine whether the Government inadvertently came into possession of protected materials from any pretrial holding facility, and whether appropriate remedial or protective measures were taken to notify the parties and protect the security of the communications.

- Determine whether and how the Government has used or attempted to use protected material in any investigation, grand jury proceeding, or litigation, regardless of whether the use or attempted use was disclosed to the Court or to the parties; and whether the Government did or attempted to interfere with a defendant's attorney-client relationship, such as requesting attorney fees or alleging conflicts of interest.

- Identify, by using visitation logs and other facility records, the attorneys and clients who met during the time span covered by the recordings of protected meetings in this case, or any other case involving Government possession of protected material discovered during this inquiry.

- Identify the attorneys and clients who communicated by phone or videoconferencing during the time span covered by the audio recordings in this case, or any other case involving Government possession of protected material discovered during this inquiry.

- Inspect and copy files, documents, communication, and electronic data of any pretrial holding facility, the United States Marshal Service, and the Government as necessary to complete the above duties.

- Report to the Court the identity of parties affected by any breaches of privilege, confidence, Constitutional rights, statutory rights, or ethical obligations, and recommend available remedies, in this case or others, if appropriate.

### B.    Communications with the Parties and the Court.

Rule 53(b)(2)(B) directs the Court to set forth "the circumstances, if any, in which the [Special Master] may communicate ex parte with the court or a party."  The Special Master may communicate ex parte with the Court at the Special Master's discretion, without providing notice to the parties, regarding logistics, the nature of his activities, management of the litigation, and other

8

appropriate matters, and also to assist the Court with legal analysis of the parties' submissions.  The Special Master may communicate ex parte with any party or his attorney, as the Special Master deems appropriate, for the purposes of ensuring the efficient administration and management and oversight of this case, and for the purpose of mediating or negotiating a resolution of any dispute related to this case.  The Special Master shall not communicate to the Court any substantive matter the Special Master learned during an ex parte communication between the Special Master and any party.[7]

### C.    Special Master's Record.

Rule 53(b)(2)(c) states the Court must define "the nature of the materials to be preserved and filed as a record of the [Special Master's] activities."  To the extent the Special Master takes possession of the original or copies of any materials submitted by the CCA or the Government (including materials containing audio or video recordings, and CCA law library computers), the Special Master shall work with the parties and qualified personnel to ensure those materials are preserved.  The Special Master shall maintain normal billing records of his time spent on this matter, with reasonably detailed descriptions of his activities and matters worked upon.  If the Court asks the Special Master to submit a formal report or recommendation regarding any matter, the Special

---

[7] The Court may later modify the Special Master's ex parte communications with the Court with respect to certain functions, if the role of the Special Master changes.  *See, e.g., In re Propulsid Products Liab. Litig.*, 2002 WL 32156066 (E.D. La. Aug. 28, 2002) (after the Special Master was given additional mediation duties, the scope of his ex parte communications with the parties and the Court, as well as his record-keeping obligations, changed); Rule 53(b)(4) (noting that an order of appointment may be amended).  On the other hand, imposition of different limits on ex parte communications does not necessarily require amendment of this Order.

Master shall submit such report or recommendation in writing, for filing on the case docket.[8]  The Special Master need not preserve for the record any documents created by the Special Master that are docketed in this or any other court, nor any documents received by the Special Master from counsel or parties in this case.

### D.    Review of the Special Master's Rulings.

Rule 53(b)(2)(D) directs the Court to state "the time limits, method of filing the record, other procedures, and standards for reviewing the [Special Master's] orders, findings, and recommendations."  The Special Master shall either: (1) reduce any formal order, finding, report, ruling, or recommendation to writing and file it electronically on the case docket via Electronic Case Filing ("ECF"); or (2) issue any formal order, finding, report, ruling, or recommendation on the record before a court reporter.  Pursuant to Rule 53(f)(2), any party may file an objection to an order, finding, report, ruling, or recommendation by the Special Master **within 14 calendar days** of the date it was filed; failure to meet this deadline results in permanent waiver of any objection to the Special Master's orders, findings, reports, rulings, or recommendations.[9]  Absent timely objection,

---

[8]  The Court expects the parties and the Special Master will need to file many submissions under seal.  Accordingly, the Court lifts the requirement of Local Cr. R. 49.6.  If the parties or the Special Master have good reason to believe a document they wish to file contains confidential or privileged information, they may file those documents under seal without further order of the Court.

[9]  Rule 53(f)(2) provides that parties may file objections "no later than 21 days after a copy of the [Special Master's order, report, or recommendations] is served, unless the court sets a different time."  FPD suggested setting a time of 7 days instead of 21, while the Government suggested 14 days.  The Court chooses to set a 14-day period for filing of objections; however, the Special Master may provide in his order, finding, report, or recommendation that the period for filing objections to that particular document is some different period, if warranted.  Motions for extensions of time to file objections will not normally be granted unless good cause is shown.

the orders, findings, reports, rulings, and recommendations of the Special Master shall be deemed approved, accepted, and ordered by the Court, unless the Court explicitly provides otherwise.

If the Special Master issues an informal ruling or order that is not on the record (such as the resolution of a discovery dispute) either orally, via email, or through other writing, and a party wishes to object to that ruling or order, the party shall ask the Special Master to formalize the ruling or order by filing it on the docket or appearing before a court reporter. Such request shall be made within three days of issuance of the informal order or ruling, else the opportunity to object shall be waived. The procedures and deadlines outlined in this section shall then apply.

As provided in Rule 53(f)(4, 5), the Court shall decide de novo all objections to conclusions of law made or recommended by the Special Master; and the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. The Court shall retain sole authority to issue final rulings on matters formally submitted for adjudication, unless otherwise agreed by the parties, and subject to waiver of objection to written orders or recommendations as noted above. To the extent the Special Master enters an order, finding, report, ruling, or recommendation regarding an issue of fact, the Court shall review such issue de novo, if any party timely objects pursuant to the Rules and within the 14 calendar day time period set forth herein; *see* Rule 53(f)(3). Failure to meet this deadline results in permanent waiver of any objection to the Special Master's findings of fact.

**E.     Compensation**.

Rule 53(b)(2)(E) states that the Court must set forth "the basis, terms, and procedure for fixing the [Special Master's] compensation;" *see also* Rule 53(g) (addressing compensation). The Special Master shall be compensated at his current rate of $500 per hour, with the Government

11

bearing 100% of this cost.[10]  Normal annual increases to this rate of compensation shall be calculated

by reference to the Laffey Index.[11]  The Special Master shall incur only such fees and expenses as

may be reasonably necessary to fulfill his duties under this Order, or such other Orders as the Court

may issue.  The Court has "consider[ed] the fairness of imposing the likely expenses on the parties

and [has taken steps to] protect against unreasonable expense or delay."  Rule 53(a)(3).

From time to time, on approximately a monthly basis, the Special Master shall file under seal

an Itemized Statement of fees and expenses (not to include overhead).  Given that, at this juncture

in the litigation, one of the duties of the Special Master is to assist the Court with legal analysis of

the parties' submissions and review of confidential and privileged information, the Court expects

these Itemized Statements may reveal confidential communications between the Special Master and

the Court.  Accordingly, the Court shall maintain these Itemized Statements under seal, and they

shall not be made available to the public or counsel.  The Special Master shall file with the Itemized

Statement a Summary Statement, which shall list only the total amount billed, shall not be filed

under seal, and shall contain a signature line for the Court, accompanied by the statement "approved

for disbursement."  If the Court determines the Itemized Statement is regular and reasonable, the

Court will sign the corresponding Summary Statement and transmit it to the parties.  The

---

[10]  Unlike civil cases, where all parties typically have funds to contribute toward payment of a Special Master, the criminal defendants in this case are impoverished.  Further, there are no funds available from the Defender Services Office of the Administrative Office of the United States Courts.  Thus, the Court exercises its discretion and orders the Government to pay the Masters' fees and expenses.  *See Atlantic Richfield Company v. American Airlines, Inc.*, 98 F.3d 564, 572 (10th Cir. 1996) (noting that "[d]istrict courts have discretion to apportion the compensation of a special master among the parties"); *Brock v. Ing*, 827 F.2d 1426, 1428 (10th Cir. 1987) ("In a given case, fairness may suggest that the expense [of the Special Master] be borne by [only] one of the parties.").

[11]  *See* www.laffeymatrix.com/see.html.  Annual increases will be limited to the *percentage* increases shown in the Laffey Matrix, not the *numerical* increases.

Government shall then remit to the Special Master the Court-approved amount, within 20 calendar days of Court approval.[12]


F.    **Other Matters**.

1.    **Affidavit**.

Rule 53(b)(3)(A) notes that the Court may enter an Order of appointment "only after the [Special Master] files an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. §455." *See also* Rule 53(a)(2) (discussing grounds for disqualification).  The Special Master shall submit the required affidavit within seven days of the date of this Order.


2.    **Cooperation**.

All Relevant Parties[13] shall all provide full cooperation to the Special Master, and any staff or consultant employed by the Special Master, and observe faithfully the requirements of any orders of the Court and rulings by the Special Master.  The Relevant Parties shall timely comply with rulings of the Special Master issued pursuant to this Order.  Pursuant to Rule 53(c)(2), the Special Master may, if appropriate, "impose on a party any noncontempt sanction provided by Rule 37 or 45, and may recommend a contempt sanction against a party and sanctions against a nonparty."  As

---

[12]    The Court notes that numerous other District Court Judges have followed this same procedure. *See, e.g., Sibley v. Sprint Nextel Corp.*, 298 F.R.D. 683, 688 (D. Kan. 2014) (Vratil, J.); *In re Welding Rod Prods. Liab. Litig.*, 2004 WL 3711622 at *5 (N.D. Ohio Nov. 10, 2004); *In re Sears, Roebuck and Co. Front-Loading Washer Prods. Liab. Litig.*, case no. 06-CV-7023 (docket no. 436 at 7) (N.D. Ill. Dec. 29, 2014).

[13]    "Relevant Parties" includes the parties and their counsel, the Government, the FPD, the United States Attorney's Office, the United States Marshall Service, and CCA, including their successors in office, agents, and employees.

13

an agent and officer of the Court, the Special Master (and those working at his direction) shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions.[14]

3.    **Access to Information**.

All Relevant Parties will make readily available to the Special Master any and all individuals, information, documents, materials, programs, files, databases, services, facilities, and premises under their control that the Special Master requires to perform his duties.  The Relevant Parties will make readily available to the Special Master any and all facilities, files, databases, computer programs, and documents necessary to fulfill the Special Master's functions under this Order.  The Special Master is authorized to issue subpoenas for the production of documents or taking of testimony on the record.

The Special Master may require reports from the Relevant Parties in a format specified by the Special Master, as reasonably required to enable the Special Master to perform all assigned duties.

**IT IS SO ORDERED.**

/s Julie A. Robinson_____
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

Dated: October 11, 2016

---

[14]  *See, e.g., Atkinson-Baker & Assocs., Inc. v. Kolts*, 7 F.3d 1452, 1454-55 (9th Cir. 1993) (applying the doctrine of absolute quasi-judicial immunity to a Special Master).