1                   UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF KANSAS
2

3  UNITED STATES OF AMERICA,        Docket No. 16-20032-04-JAR

4       Plaintiff,                  Kansas City, Kansas
                                    Date:  03/13/2017
5  v.

6  ALICIA TACKETT,

7       Defendant.
   . . . . . . . . . . . . . . . . . . . .
8

9                        TRANSCRIPT OF
                    CHANGE OF PLEA HEARING
10          BEFORE THE HONORABLE JULIE A. ROBINSON
                UNITED STATES DISTRICT JUDGE
11
   APPEARANCES:
12 For the Plaintiff:    Mr. D. Christopher Oakley
                         United States Attorney's Office
13                       360 U.S. Courthouse
                         500 State Avenue
14                       Kansas City, Kansas 66101

15 For the Defendant:    Ms. Kathleen A. Ambrosio
                         Ambrosio & Ambrosio, Chtd.
16                       800 Southwest Jackson Street
                         Suite 817
17                       Topeka, Kansas 66612

18 Court Reporter:       Kelli Stewart, RPR, CRR, RMR
                         Official Court Reporter
19                       259 U.S. Courthouse
                         500 State Avenue
20                       Kansas City, Kansas 66101

21

22

23

24

25

1            (2:25 p.m., proceedings commenced).

2            THE COURT:  All right.  We're here in United

3    States versus Alicia Tackett, 16-20032.  Your

4    appearances, please.

5            MR. OAKLEY:  May it please the Court.  The

6    United States appears by Chris Oakley.

7            MS. AMBROSIO:  May it please the Court.

8    Your Honor, Ms. Tackett appears in person by counsel,

9    Kathleen Ambrosio.

10           THE COURT:  All right.  We're here for a

11   change of plea.  So, Ms. Tackett, if you will stand and

12   raise your right hand.

13               (Defendant sworn).

14           THE COURT:  All right.  Will you tell me

15   your full legal name and age, please.

16           THE DEFENDANT:  Alicia Dawn Rowlette.  And

17   my age is 30.

18           THE COURT:  All right.  So is Tackett your

19   maiden name or your-- what is your--

20           THE DEFENDANT:  It was my prior-- it was my

21   first marriage.

22           THE COURT:  Okay.  So is Rowlette your

23   maiden name?

24           THE DEFENDANT:  No, Stanfield is my maiden

25   name.

16-20032-04-JAR    USA v. Alicia Tackett    03.13.17    3

```
 1              THE COURT:  Okay.  But Rowlette is your
 2   current legal name?
 3              THE DEFENDANT:  Yes.
 4              THE COURT:  Okay.  All right.  And how old
 5   are you?
 6              THE DEFENDANT:  30.
 7              THE COURT:  What is your highest level of
 8   education?
 9              THE DEFENDANT:  I have my GED.
10              THE COURT:  All right.  Have you been
11   provided with a copy of the charges against you in this
12   case?
13              THE DEFENDANT:  Yes, I have.
14              THE COURT:  And have you gone over those
15   charges with your lawyer, Ms. Ambrosio?
16              THE DEFENDANT:  Yes.
17              THE COURT:  Have you ever been treated for a
18   mental illness or diagnosed with a mental illness?
19              THE DEFENDANT:  No.
20              THE COURT:  Have you been treated or
21   diagnosed for drug or alcohol abuse or addiction?
22              THE DEFENDANT:  No.
23              THE COURT:  Today are you under the
24   influence of any drug, medication, or alcoholic
25   beverage?
```

16-20032-04-JAR    USA v. Alicia Tackett    03.13.17    4

1          THE DEFENDANT:  I have a prescription of

2    Klonopin for anxiety.

3          THE COURT:  Okay.  Does that prescription

4    affect your memory, your ability to communicate or

5    understand?

6          THE DEFENDANT:  No.

7          THE COURT:  Okay.  All right.  Did you and

8    Ms. Ambrosio review and discuss the evidence that the

9    government has against you in this case?

10          THE DEFENDANT:  Yes.

11          THE COURT:  All right.  And did she tell you

12    about the fact that you have a right to a jury trial?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you and your lawyer, Ms.

15    Ambrosia, review and discuss the plea agreement between

16    you and the government?

17          THE DEFENDANT:  Yes.

18          THE COURT:  And another document that will

19    be filed along with that this afternoon is called a

20    petition to enter plea.  Have you gone over that

21    document with your lawyer also?

22          THE DEFENDANT:  Yes.

23          THE COURT:  Did Ms. Ambrosia discuss with

24    you the sentencing process the judge usually uses using

25    sentencing guidelines and a sentencing statute to

1    determine the sentence?

2              THE DEFENDANT:  Yes.

3              THE COURT:  All right.  Are you satisfied

4    with the advice and representation that you've received

5    from your lawyer in this case?

6              THE DEFENDANT:  Yes.

7              THE COURT:  I have a copy of the plea

8    agreement between you and the government.  It's 11 pages

9    long, including the signature page.  Does this plea

10   agreement cover all of the promises and all of the

11   agreements between you and the government?

12             THE DEFENDANT:  Yes.

13             THE COURT:  And who made the decision for

14   you to enter into this plea agreement?

15             THE DEFENDANT:  I did.

16             THE COURT:  Did anyone pressure, threaten,

17   or coerce you to make that decision?

18             THE DEFENDANT:  No.

19             THE COURT:  Would it be fair to say it's

20   something you decided to do voluntarily and of your own

21   free will?

22             THE DEFENDANT:  Yes.

23             THE COURT:  All right.  Mr. Oakley, will you

24   summarize the key terms of the plea agreement.

25             MR. OAKLEY:  Yes, Your Honor.  And the plea

1   agreement is entered into pursuant to Rule 11(c)(1)(C)

2   of the Federal Rules of Criminal Procedure.

3           And under the terms of the written plea

4   agreement, the defendant agrees to plead guilty to

5   Count 10 of the indictment, which charges conspiracy to

6   commit money laundering in violation of 18 United States

7   Code, Section 1956(h).

8           The defendant acknowledges that she

9   understands that the maximum sentence which may be

10  imposed as to Count 10 of the indictment is not more

11  than 20 years of imprisonment, a $250,000 fine, three

12  years of supervised release, and a $100 mandatory

13  special assessment.

14          The parties are proposing as an appropriate

15  sentence in this case 12 months and one day imprisonment

16  on Count 10, three years of supervised release, no fine,

17  and the mandatory special assessment.

18          And the parties are seeking this binding

19  plea agreement as an appropriate disposition of this

20  case because if the Court permits itself to be bound by

21  the proposed sentence, it brings certainty to the

22  sentencing process.

23          The parties do acknowledge that they

24  understand that if the Court does not agree with the

25  sentence, that the defendant and the United States may

1    be restored to the positions they maintained prior to

2    reaching this plea agreement.

3              In return for the defendant's plea of

4    guilty, the United States agrees to dismiss the

5    remaining counts of the indictment at the time of

6    sentencing and agrees to not file any additional charges

7    against the-- of the defendant arising out of the facts

8    forming the basis for the present indictment or

9    concerning crimes already known to the government that

10   are related to program fraud, including insurance fraud,

11   tax fraud, and food stamp fraud.

12             The defendant acknowledges that she

13   understands that the Court has no obligation to accept

14   the proposed plea agreement and sentence and that it is

15   solely within the Court's discretion whether to accept

16   the proposed binding plea agreement as an appropriate

17   disposition in this case.

18             However, she also acknowledges that she

19   understands that if the Court does agree to be bound by

20   the proposed plea agreement and sentence, that the

21   parties shall be bound by all terms of the plea

22   agreement and the defendant will not be permitted to

23   withdraw her guilty plea.

24             She acknowledges that she understands that

25   if the Court announces that it will not be bound by the

1  proposed plea agreement, that the parties agree that at

2  that time either party may withdraw the proposed plea

3  agreement.  And if either does so, then all parties will

4  be restored to the positions they were in prior to

5  entering the defendant's guilty plea.

6         The defendant knowingly and voluntarily

7  agrees and consents to the forfeiture of all assets that

8  are directly and indirectly related to this count, more

9  specifically to real property known as 6544 Sni-A-Bar

10 Road in Kansas City, Missouri.  Your Honor, there's not

11 a forfeiture count in the indictment, but the defendant

12 does agree to cooperate in any civil forfeiture

13 proceeding related to that residence.

14        The defendant agrees to cooperate fully with

15 the United States Attorney's office as it relates to the

16 forfeiture and also to the identification of assets

17 concerning any monetary payments.

18        The defendant in Paragraph 12 on Page 8

19 knowingly and voluntarily waives any right to appeal or

20 collaterally attack any matter in connection with this

21 prosecution, with her conviction, or the components of

22 the sentence to be imposed, including the length and

23 conditions of supervised release, as well as any

24 sentence imposed upon revocation of supervised release.

25        The defendant acknowledges that she

1    understands that normally she would have the right to

2    appeal and/or collaterally attack.  But as consideration

3    of the plea agreement, she's voluntarily giving up those

4    rights.  The parties do acknowledge that the defendant

5    is not waiving any subsequent claims with regards to

6    ineffective assistance of counsel or prosecutorial

7    misconduct.

8            The defendant acknowledges that she

9    understands that the United States will provide to the

10   Court and to the probation office all information it

11   deems relevant to determining the appropriate sentence

12   in this case.  The defendant acknowledges that she

13   understands that this plea agreement binds only herself

14   and the United States Attorney for the District of

15   Kansas and it does not bind any other federal, state, or

16   local prosecution authority.

17           And finally, Your Honor, the defendant

18   acknowledges that she's had sufficient time to discuss

19   this case with her attorney, that she's satisfied with

20   the advice and representation that she's been given, and

21   that the written plea agreement contains all the

22   parties' promises.

23           THE COURT:  All right.  Thank you.

24           Ms. Rowlette, was there anything the

25   prosecutor said about your plea agreement that you

1    disagree with or do not understand?

2              THE DEFENDANT:  No, Your Honor.

3              THE COURT:  As Mr. Oakley mentioned, in

4    Paragraph No. 12 of your plea agreement you are agreeing

5    to give up most of your rights of appeal, most of your

6    rights to bring a challenge to the conviction or

7    sentence.  Paragraph 12, though, does include some

8    limited rights of appeal that you'll still have, it

9    describes those.  But other than those that are

10   mentioned in Paragraph 12, you're giving up all other

11   rights of appeal.  Do you understand that?

12             THE DEFENDANT:  Yes.

13             THE COURT:  All right.  Now, this plea

14   agreement is what we refer to as a binding plea

15   agreement under Rule 11(c)(1)(C) of the Federal Rules of

16   Criminal Procedure.  And Mr. Oakley explained that, but

17   I'll go over it as well.

18             What this means is if I accept your plea

19   agreement, I'm agreeing to be bound by its terms,

20   meaning I will be sentencing you to a prison sentence of

21   12 months and a day, followed by three years of

22   supervised release, no fine, and a $100 Crime Victims

23   Fund assessment.  That will be the sentence, the

24   sentence that you and the government bargained for and

25   agreed to.

1           If I decide not to accept your plea

2    agreement, you will have several options.  You can

3    proceed to sentencing anyway and take your chances, so

4    to speak.  Or you can withdraw your plea and then either

5    negotiate a new plea agreement or proceed to trial.  Do

6    you understand that?

7           THE DEFENDANT:  Yes.

8           THE COURT:  Okay.  One of the consequences

9    of your pleading guilty, Ms. Rowlette, is that you are

10   giving up your right to a jury trial.  Once you plead

11   guilty today, there will not be a jury trial on any of

12   the issues in this case.  Understood?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  And when I say a right to

15   a jury trial, I'm really talking about a whole group of

16   rights associated with that.  So if you decided not to

17   plead guilty, the case would proceed to a jury trial,

18   you would continue to be represented by your lawyer

19   throughout the trial and beyond.  Whether or not you had

20   money for attorney's fees or trial expenses wouldn't

21   matter, all of that would be paid for.

22          And the case would be tried to a jury of 12

23   people.  And that jury of 12 could not convict you of

24   any charge unless they were able to reach a unanimous

25   verdict of guilty on the particular charge.  And to find

 1    you guilty, the jury would have to be convinced that the
 2    government at trial had presented sufficient evidence to
 3    prove your guilt beyond a reasonable doubt.  Beyond a
 4    reasonable doubt is actually the legal burden of proof
 5    or legal standard of proof the government has in any
 6    criminal case, including this one.

 7              At trial you would not have a burden of
 8    proof.  In fact, as the accused person, the law presumes
 9    you to be innocent.  So the jury would be instructed
10    that they must presume you to be innocent and they would
11    be instructed that what this presumption of innocence
12    means is that a defendant does not have to do anything
13    to prove their innocence, they start with the
14    presumption of innocence.

15              So at trial you would have no responsibility
16    to present any evidence or any defense, testify, call
17    witnesses.  The jury would be instructed that's not your
18    responsibility, they shouldn't expect you to do that.
19    It would be wrong for them to hold it against you if you
20    didn't do that.

21              So you would have the right to present a
22    defense, but it would be your choice.  And it couldn't
23    hurt, it couldn't be held against you if you didn't.
24    And whether or not you presented a defense at trial, you
25    would always have the right to confront and cross

1    examine the government's witnesses and perhaps in that

2    way to point out doubt in the evidence to jury.

3            So that's what would happen if the case

4    proceeded to trial.  But again, once you plead guilty

5    this afternoon, you're giving up the right to jury

6    trial.  Understood?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Okay.  Now, there are also civil

9    rights consequences, other civil rights that you're

10   giving up once you plead guilty to a felony crime like

11   this one.  You will lose the right to vote, lose the

12   right to serve on a jury, you'll lose the right to serve

13   in certain public offices.  You'll lose the right to

14   purchase or possess a firearm, ammunition, a dangerous

15   weapon.  And if you're not an American citizen, there

16   are also deportation consequences.  Do you understand

17   that as well?

18           THE DEFENDANT:  Yes, Your Honor.

19           THE COURT:  Okay.  And then, of course,

20   there are potential sentencing consequences.  Now,

21   sentencing is a very complicated process.  It involves

22   me figuring out which of dozens and dozens of sentencing

23   guidelines apply to you in your situation and which ones

24   do not.

25           Then I also consider a number of other

1    sentencing factors under a sentencing statute.  The

2    guidelines are not mandatory, but the judge has to go

3    through them all.  They help guide the judge's decision.

4            And so at this stage of the proceeding,

5    typically what I tell someone in your shoes is that

6    although your lawyer is experienced, the prosecutor is

7    experienced, I'm experienced in the sentencing

8    guidelines, none of us can predict at this point with

9    certainty what sentence you'll receive until we go

10   through the entire sentencing process because it is

11   complicated.  Do you understand that?

12           THE DEFENDANT:  Yes, Your Honor.

13           THE COURT:  All right.  So what I can tell

14   you with certainty is on Count 10 of the indictment, you

15   would never receive a sentence of more than 20 years in

16   prison because that's the maximum.  The maximum fine,

17   $250,000.  The maximum I could sentence you to for

18   supervised release after prison would be three years.

19   And then a $100 Crime Victims Fund assessment.  So

20   that's the maximum you face under any circumstances.  Do

21   you understand that?

22           THE DEFENDANT:  Yes, Your Honor.

23           THE COURT:  All right.  Now, if I accept the

24   plea agreement, the beauty of that-- of this type of

25   plea agreement is it does bring certainty to the

1    process.  Everyone knows what the sentence will be.  But

2    again, if I don't accept the plea agreement, you'll have

3    other options as well.

4              Another thing that I need to make sure you

5    understand is whatever sentence you receive, that's

6    essentially the amount of time that you'll spend in

7    prison.  So in this case, if you were to receive a

8    20-year prison sentence, that's the maximum, that would

9    mean you'd actually serve 20 years.  If you were to

10   receive a five-year sentence, it would mean you'd serve

11   five years.

12             In this case if you receive a sentence of 12

13   months and one day, it means you'll serve about 12

14   months and one day.  That one day is interesting,

15   though, because by-- a sentence of anything over 12

16   months, you are-- you are at least eligible for good

17   time credit.  It doesn't mean you'll receive it.  I have

18   nothing to do with that, that's how you are with the

19   Bureau of Prison officials and what-- their assessment

20   of you.

21             But a sentence of 12 months or less, you

22   don't even accrue good time credit, you don't even have

23   that possibility.  A sentence of 12 months and more,

24   including one day more, means you would at least be

25   eligible for that process.  Do you understand that?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  Okay.  And that, I think,

3   process can give you at most 15 percent off your

4   sentence.  But again, that's not something that's

5   guaranteed.  Do you understand that?

6           THE DEFENDANT:  Yes, Your Honor.

7           THE COURT:  Okay.  All right.  Mr. Oakley,

8   will you tell us the factual basis for Ms. Rowlette's

9   plea to Count 10?

10          MR. OAKLEY:  Yes.  On September 5th, 2012,

11  an individual with the initials S.R. purchased the

12  residence at 6544 Sni-A-Bar Road in Kansas City,

13  Missouri.  S.R. paid for the residence with proceeds

14  from the distribution of methamphetamine.

15          On December 4th, 2013, S.R. was charged by

16  indictment with, among other things, conspiracy to

17  distribute more than 50 grams of methamphetamine in the

18  District of Kansas.  On December 22nd, 2013, S.R. was

19  arrested pursuant to the indictment and S.R. remains in

20  custody.

21          Between January of 2014 and April 2016, the

22  defendant, Alicia Tackett, resided at the residence at

23  6544 Sni-A-Bar Road.

24          On January 17th, 2014, S.R. signed a

25  warranty deed in the presence of a notary public.  The

1    warranty deed purportedly conveyed the residence at 6544

2    Sni-A-Bar to S.-- to a person whose initials are S.S.

3    for $1 and other valuable consideration.

4            On March 21st, 2014, the defendant

5    registered the warranty deed with the Jackson County

6    Court.  Specifically, the defendant paid the processing

7    fee to the Jackson County courthouse, and the defendant

8    kept the receipt from that transaction in the residence

9    at 6544 Sni-A-Bar Road.

10            On April 20th, 2016, law enforcement agents

11    interviewed S.S.  S.S. stated that she did not, in fact,

12    give any consideration for the residence at 6544

13    Sni-A-Bar Road, nor did she have any knowledge that the

14    property had been conveyed to her.

15            The defendant knew that the house was

16    purchased with proceeds from drug sales.  The purpose of

17    the fraudulent conveyance of the residence at 6544

18    Sni-A-Bar Road was to conceal and disguise the ownership

19    and control of the residence.

20            The defendant acknowledges that the

21    financial transaction affected interstate commerce.  And

22    that would be the government's evidence, Your Honor.

23            THE COURT:  All right.  Two questions for

24    you, Ms. Rowlette.  The first is, do you believe the

25    government has the evidence to prove what Mr. Oakley

1   just said?

2            THE DEFENDANT:  Yes.

3            THE COURT:  And the second is, did you, in

4   fact, do what you're charged with in Count 10 of the

5   indictment, which charges you that beginning in January

6   of 2014 and continuing to about April, 2016, here in

7   Kansas and elsewhere, you agreed with at least-- with

8   one other person, that person's initials are S.R., to

9   committed the following federal offense:

10            To knowingly conduct or attempt to conduct a

11   financial transaction that affected interstate and

12   foreign commerce, specifically the purchase of a house

13   and the recording of the deed.  And that the money to

14   buy that house involved the proceeds of specified

15   unlawful activity, specifically a conspiracy to

16   distribute and possess with intent to distribute more

17   than 50 grams of methamphetamine.

18            And that you knew that the transaction was

19   designed to conceal or disguise the source or the

20   ownership or the control of the money that went to buy

21   the house.  And you also knew that the money was

22   involved in at least-- the money was the proceeds of

23   some form of unlawful activity.  Did you, in fact, do

24   that?

25            THE DEFENDANT:  Yes, Your Honor.

 1          THE COURT:  All right.  Ms. Rowlette, if you

 2   and your lawyer are ready, you can go ahead and sign the

 3   petition to enter plea.

 4      (Defendant executed the document in open court).

 5          MS. AMBROSIO:  May I approach, Your Honor?

 6          THE COURT:  Yes.  All right.  And, Ms.

 7   Rowlette, if you'll stand and raise your right hand,

 8   we'll acknowledge your signature on the petition.

 9              (Defendant sworn).

10          THE COURT:  All right.  And you can remain

11   standing.  Ms. Ambrosio and Mr. Oakley, do you know of

12   any reason why I should not take Mr. Rowlette's plea at

13   this time?

14          MR. OAKLEY:  No, Your Honor.

15          MS. AMBROSIO:  No, Your Honor.

16          THE COURT:  All right.  Ms. Rowlette, would

17   you like me to read the charge to you in Count 10 of the

18   indictment?  Do you want me to read it aloud to you?

19          THE DEFENDANT:  No.

20          THE COURT:  How do you plead to Count 10 of

21   the indictment?

22          THE DEFENDANT:  Guilty.

23          THE COURT:  All right.  You can be seated.

24   All right.  The Court finds that the defendant, Alicia

25   Rowlette, formerly known as Alicia Tackett, is mentally

1    competent at today's hearing and was at the time of the

2    commission of the offense.  The Court finds that Ms.

3    Rowlette enters her plea on an informed basis, she's had

4    the advice and representation of experienced and

5    competent counsel in Ms. Ambrosio.

6              And supplemented by my conversation with Ms.

7    Rowlette today, I am satisfied that she is aware of the

8    charges, the factual and evidentiary basis for the

9    charges.  She's aware of her right to a jury trial and

10   aware of the potential civil rights and sentencing

11   consequences of pleading guilty to this charge.

12             I find the plea is knowingly and voluntarily

13   made and that it is supported by an independent basis in

14   fact containing each of the essential elements of the

15   offense.  So the plea is accepted.  Ms. Rowlette is

16   adjudged guilty of Count 10 of the indictment.

17             I'm also specifically accepting the plea

18   agreement at this time, which means, Ms. Rowlette, you

19   know what your sentence will be, you have that

20   assurance.

21             I'll order a presentence report.  We'll

22   schedule sentencing for May 30th at 1:30 p.m.  And

23   conditions of release continue pending sentencing.  I

24   should've asked, does that work for you?  I know it does

25   for you, Mr. Oakley.

1           MS. AMBROSIO:  Your Honor, that date works

2    fine.  Thank you.

3           THE COURT:  Okay.  So we'll see you back on

4    May 30th at 1:30.  Conditions of release continue.

5           There is a pending Rule 41(g) motion.  Ms.

6    Ambrosio, what's your pleasure with respect to that?

7           MS. AMBROSIO:  Your Honor, we are not

8    intending to proceed under that particular issue.  I

9    would ask that the Court determine that that issue is

10   moot as to Ms. Rowlette.

11          THE COURT:  All right.  I'll show this as

12   denied as moot.  All right.  We'll see you back on

13   May 30th.

14          MS. AMBROSIO:  Thank you, Your Honor.

15          THE COURT:  And we'll be in recess.

16          (2:46 p.m., proceedings recessed).

17

18

19

20

21

22

23

24

25

```
 1                    C E R T I F I C A T E

 2

 3

 4      I, Kelli Stewart, a Certified Shorthand Reporter and

 5   the regularly appointed, qualified and acting official

 6   reporter of the United States District Court for the

 7   District of Kansas, do hereby certify that as such

 8   official reporter, I was present at and reported in

 9   machine shorthand the above and foregoing proceedings.

10      I further certify that the foregoing transcript,

11   consisting of 21 pages, is a full, true, and correct

12   reproduction of my shorthand notes as reflected by this

13   transcript.

14      SIGNED March 24, 2017.

15

16

17

18          /s/ Kelli Stewart
                                                    
19          Kelli Stewart, CSR, RPR, CCR, RMR

20

21

22

23

24

25
```