IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
    *Plaintiff,*
    **v.**    Case No. **16-20032-JAR**

**LORENZO BLACK,** *et al.***,**
    *Defendants.*

**FEDERAL PUBLIC DEFENDER'S OBJECTION TO THE SPECIAL MASTER'S REPORT REGARDING OTHER ISSUES RELATED TO RECORDINGS AT CCA-LEAVENWORTH (D.E. 214)**

Pursuant to the Court's Appointment Order,[1] the Federal Public Defender (FPD) respectfully objects to the Special Master's Report Regarding Other Issues Related to Recordings at CCA-Leavenworth.[2] The FPD objects to the Special Master's conclusion that the defense bar's response to the government's actions is a product of "a widespread undergrowth of mistrust between the Office of the United States Attorney for the District of Kansas and defense counsel."[3] The suggestion that this litigation results from mutual mistrust between the USAO and the defense simply misses the mark.

---

[1] D.E. 146 at 10; *see also* Fed. R. Civ. P. 52(f)(2).

[2] D.E. 214.

[3] *Id*. at 25-26.

The problem is not mutual mistrust between opposing counsel. The problem is that the government was caught in an incursion into privileged defense communications. Since the incursion was discovered, the government has not been fully candid about its actions, has attempted to obfuscate the issues with tenuous legal arguments,[4] has resisted full cooperation with the Special Master's investigation,[5] and has resisted responsibility or accountability for its misconduct.

The "spark" did not quickly ignite a passionate response.[6] Rather, once the defense learned that attorney-client meetings at CCA-Leavenworth were being recorded, we fully and carefully consulted with the USAO to allay concerns before bringing the matter to the Court. On August 3, 2016, the day we learned of the recordings, the FPD emailed the USAO to notify that office of what we had learned and to solicit the position of the USAO to determine

---

[4] *See, e.g.*, D.E. 133 at 30 ("As the United States made clear in its response to the motion to impound additional evidence (Doc. 121), the inmates waived privilege by conducting phone calls with their attorneys on telephones they knew were subject to recording and monitoring.").

[5] D.E. 214 at 2 ("The OUSA has also produced *some* of the requested information) (emphasis added).

[6] *Id.* at 25 ("This spark *quickly* ignited a passionate response from the defense bar, including demands for investigation regarding whether the OUSA had obtained access to other recordings (both video and audio) of inmate-attorney interactions – whether in this case or otherwise.") (emphasis added).

2

whether our assessment of the facts, based on early information, was correct.[7] The following day, the FPD contacted CCA to determine whether the visitation rooms were subject to audio or video recording.[8] The FPD also contacted the U.S. Marshals Service (USMS) to determine whether attorney-client visitation rooms were being recorded.[9] The FPD did not bring the matter before the Court until we confirmed that attorney-client meetings had been video recorded and maintained and, even then, we proceeded cautiously with our initial pleadings.[10] Before the hearing on August 9, 2016, the defense met in person with the Acting US Attorney and two of his top deputies to exchange exhibits and lay out our entire case before them.

At each juncture in the early litigation, we invited the USAO to correct the facts as we saw them. After the first hearing on August 9th, the USAO has never denied that: (1) visits between defense counsel and their clients at

---

[7] Def. Ex. 453 ("If we missed something about this or are wrong, please let us know, because we would rather fix it than fight a meaningless battle. Feel free to call if you want to talk before tomorrow at noon. Otherwise, talk to you then.").

[8] Def. Ex. 434. CCA responded that the legal visitations rooms were not subject to audio or video recording, which turned out to be false.

[9] Def. Ex. 458.  In response, the USMS passed along false information from CCA that the visitation rooms were not recorded.

[10] *See, e.g.*, D.E. 82 at 3 ("We believe that the United States Attorney's Office for the District of Kansas has recordings of our meetings with our clients in our custody. We would be happy to be wrong.").

CCA were video recorded and maintained; (2) phone calls between defense counsel and their clients were audio recorded and maintained; (3) attorney client communications were wrongfully disseminated in discovery in the *Black* case; and (4) USAO prosecutors used video recordings of a defense counsel and her client, in a case unconnected to the *Black* case, to attempt to sever the relationship between the counsel and her client.[11] The evidence presented was not the product of generalized mistrust. It was simply the evidence we uncovered. Thus, the "spark" became an intense flame because it was aired in the light of day. It was the oxygen of evidence, not mistrust, which fueled this litigation.

Public defense lawyers are charged with defending indigent persons against criminal accusations.[12] That charge demands effective, zealous, and loyal defense of our clients. The Constitution requires as much;[13] ethics

---

[11] We further object to the Special Master's tentative conclusions that: "(1) neither the OUSA nor any law enforcement actually viewed any of the video-recorded attorney-client meetings that were seized from CCA-Leavenworth in May of 2016; and (2) neither the OUSA nor any law enforcement officer have ever before obtained (much less actually viewed) video-recordings of attorney-client meetings at CCA-Leavenworth." D.E. 214 at 26-27. The evidence demonstrates that, at a minimum, the second tentative conclusion is incorrect. The Special Master recommends the Court consider authorizing additional investigation into these tentative conclusions, which we concur should be authorized.

[12] 18 U.S.C. § 3006A; D. Kan. C.R. 44.1.

[13] U.S. Const. amd. VI; *Gideon v. Wainwright,* 372 U.S. 335, 344 (1963) ("Not only these precedents but also reason and reflection require us to recognize that in our

demand even more.[14] We had an affirmative duty to bring this matter before the Court when we uncovered undisputed evidence of government interference with the fundamental right to counsel.[15]

Prosecutors have a responsibility not to convict but to conduct the prosecution fairly, with respect for the defendant's constitutional rights.[16] We made substantial efforts to communicate with the USAO in order to ensure that we were providing the Court with reliable information in the early stages of the litigation. This case is not about mistrust; it arose because the government violated the Sixth Amendment by spying on communications

---

adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him.").

[14] *See, e.g.*, Kan. Rules of Prof'l Conduct R. 1.3 ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and may take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor. A lawyer should act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf.").

[15] *Luis v. United States*, 136 S. Ct. 1083, 1088 (2016) ("No one doubts the fundamental character of a criminal defendant's Sixth Amendment right to the 'Assistance of Counsel.'").

[16] *Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor-indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

between defense counsel and their clients, disseminated the communications in discovery, and tried to profit from its constitutional violations by threating to sever an attorney-client relationship. The government's unchecked procurement and publication of so much privileged defense communications fueled mistrust, and rightly so. But, this litigation has been directed by where the evidence led. The government's misconduct should fuel mistrust from all corners of society, rather than be dismissed as a mere misunderstanding or the result of unexplainable technological glitches.

Our response to these facts did not "diminish the quality of justice."[17] To quietly walk away without doggedly seeking answers and relief would have been a diminution of justice for the clients we represent. It might have been easier, but it would have been wrong. Rather, protecting the sanctity of confidential attorney-client communication enhances the quality of justice as promised by the Sixth Amendment.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Melody_Brannon@fd.org

---

[17] D.E. 214 at 28.

        s/ Kirk C. Redmond
        KIRK C. REDMOND #18914
        First Assistant Federal Public Defender
        for the District of Kansas
        117 SW 6th Avenue, Suite 200
        Topeka, Kansas 66603-3840
        Phone: 785-232-9828
        Fax: 785-232-9886
        Kirk_Redmond@fd.org

        s/ Branden A. Bell
        BRANDEN A. BELL #22618
        Assistant Federal Public Defender
        for the District of Kansas
        117 SW 6th Avenue, Suite 200
        Topeka, Kansas 66603-3840
        Phone: 785-232-9828
        Fax: 785-232-9886
        Branden_Bell@fd.org

        s/ Rich Federico
        RICH FEDERICO, IN# 23818-89
        Staff Attorney
        for the District of Kanas
        117 SW 6th Avenue, Suite 200
        Topeka, Kansas 66603-3840
        Phone: 785-232-9828
        Fax: 785-232-9886
        Rich_Federico@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 29, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the following:

David R. Cohen
David R. Cohen Co., LPA
Special Master
david@specialmaster.law

Donald Christopher Oakley
Assistant United States Attorney
Office of the United States Attorney – Kansas City
chris.oakley@usdoj.gov

Debra L. Barnett
Criminal Chief
Assistant United States Attorney
Office of the United States Attorney – Wichita
debra.barnett@usdoj.gov

Duston J. Slinkard
Assistant United States Attorney
Office of the United States Attorney- Topeka
duston.slinkard@usdoj.gov

John Jenab
Jenab Law Firm, PA
john.jenab@gmail.com

David J. Guastello
The Guastello Law Firm, LLC
david@guastellolaw.com

Jason P. Hoffman
Hoffman & Hoffman
jphoffman@sbcglobal.net

Kathleen A. Ambrosio
Ambrosio & Ambrosio Chtd.
kaambrosio@yahoo.com

Michael M. Jackson
jacksonmm@aol.com

Cynthia M. Dodge
Cynthia M. Dodge, LLC
cindy@cdodgelaw.com

Shazzie Naseem
Berkowitz Oliver LLP - KCMO
snaseem@berkowitzoliver.com

Erin C. Thompson
Foland, Wickens, Eisfelder, Roper, Hofer, PC
ethompson@fwpclaw.com

Jacquelyn E. Rokusek
Rokusek Law, LLC
rokuseklawoffice@yahoo.com

Jonathan L. Laurans
jlaurans@msn.com

Melanie S. Morgan
Morgan Pilate LLC
mmorgan@morganpilate.com

         s/ Melody Brannon
         Melody Brannon