# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff,*
**v.**  Case No. **16-20032-JAR**

**LORENZO BLACK, *et al.*,**
*Defendants.*

## MOTION TO SHOW CAUSE

The Federal Public Defender asks this Court to Order the government to show cause why it should not be held in contempt of court and sanctioned for its refusal to cooperate with the Special Master in a faithful and timely manner. Just over a year ago, this Court appointed a Special Master to investigate whether, how, and why the Kansas United States Attorney's Office came to possess audio and video recordings of confidential attorney-client communications.[1] The Court ordered:

> All Relevant Parties **shall all provide full cooperation** to the Special Master, and any staff or consultant employed by the Special Master, and observe faithfully the requirements of any orders of the Court and rulings by the Special Master. The Relevant Parties **shall timely comply** with rulings of the Special Master issued pursuant to this Order.[2]

The Court also ordered:

---

[1] D.E. 146, Order Appointing, filed 10/11/16.

[2] *Id*. at 13 (emphasis added).

1

> All Relevant Parties **will make readily available** to the Special Master any and **all** individuals, information, documents, materials, programs, files, databases, services, facilities, and premises under their control that the Special Master requires to perform his duties. The Relevant Parties **will make readily** available to the Special Master any and all facilities, files, databases, computer programs, and documents **necessary to fulfill the Special Master's functions under this Order.**[3]

Seven months later, the Court again ordered the same cooperation and access through Phase III of the investigation,[4] which ordered the Special Master to investigate "the actions and conduct of the government, the USAO attorneys and staff, and the participating investigative agencies (hereinafter, collectively the "government"), in procuring, obtaining and perhaps using video and audio recordings of attorney-client meetings and phone calls at CCA."[5]

This Court has criticized, "the strategy and tactics of the U.S. Attorney's Office in not acting with transparency at the very outset of this" as a primary reason for the slow progress of the investigation.[6] Now the Special Master's October 20, 2017 Report laid to rest any doubt about the government's obstructive delay tactics, and that these tactics have violated the Court's Orders.[7]

---

[3] *Id.* at 14 (emphasis added).

[4] Memorandum and Order Directing Phase III Investigation, 5/17/17, D.E. 253 at 47.

[5] *Id.* at 253 at 5-6.

[6] *United States v. Dertinger*, D.Kan. 14-cr-20067-JAR, 6/21/2017 transcript 540:23-258:1.

[7] Report of the Special Master, 10/20/17, D.E. 298. The Special Master has previously suggested that the government has been less than fully forthcoming in response to his requests. Report of Special Master, 3/16/17, D.E. 214 at 2.

The Report details the USAO's long-term dissembling and desultory conduct intended to deter and mislead the Court-ordered investigation.[8] It also appears that the USAO influenced at least one other agency, the United States Secret Service, not to cooperate, further disrupting this investigation.[9] Most of the relevant information is within the USAO's control[10] and thus beyond the reach of the Special Master, absent Court intervention. The conduct described in the Report simply cannot be squared with the Court's Orders.

The USAO also tried to shut down the investigation with the eleventh-hour entrance of a Special Assistant U.S. Attorney from another district, apparently assigned from Headquarters of the Department of Justice at USA Tom Beall's request.[11] That attorney's September 12, 2017 letter explicitly reversed course.[12] But his scatter-shot objections are, in short, waived.[13] "Where the party seeking

---

[8] D.E. 298 at 4-5.

[9] *Id.* at 9 ("USSS has pointed to Mr. Clymer's letter and stated it is now re-thinking whether it will produce any responsive information.").

[10] *Id.* at 4.

[11] D.E. 298-9. The defense will not respond here to the substance; should the government choose to present these objections properly before the Court, those issues can be litigated in open court. However, we will offer that the government's effort to communicate *ex parte* with the Court, both with the letter endorsing its own attorney and offering to meet with the Court privately, D.E. 298-5 ("AUSA Clymer is planning to meet with you, as well as the Special Master, in the near future."), does little to assuage the mistrust of the defense bar, even though that meeting never took place.

[12] *Id.* ("We are confident that AUSA Clymer will be of great assistance to the USAO and the Court in bringing the Investigation to completion."). In retrospect, that statement meant something entirely different than the tone of the letter implied.

[13] *United States v. Ary,* 518 F.3d 775, 783-84 (10th Cir. 2008) (A six-week delay in asserting privilege was untimely and waived claims to work-product and attorney-client privilege.

protection 'fails to pursue all reasonable means of preserving the confidentiality of the privileged matter' the protection is waived."[14] The objections are neither specific nor timely.[15] The USAO's year-long delay before raising these objections should foreclose the Court's consideration, and should not influence any show-cause considerations.

Furthermore, if the USAO contended that the Court's Orders were unlawful, the proper recourse would have been to file comprehensive legal objections (the government primarily complained about having to pay for the investigation),[16] and to appeal that Order to the Tenth Circuit. As with the objections, any appeal is far out of time.[17]

The USAO has consistently defied this Court's Orders in other contexts, as well. The Court ordered the USAO to "produce all hard drives" from USAO computers; the USAO promised that it had done so.[18] Instead, the USAO "wiped clean" the computer used by USAO employee Pauletta Boyd, which was the one

---

Further, when "the party seeking protection fails to specifically identify the materials protected, courts have uniformly found a waiver.").

[14] *Ary*, at 784.

[15] Fed. R. Evid. 502; *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 668–69 (10th Cir.2006) ("The voluntary production of work-product material during discovery may waive a work-product objection.").

[16] See, e.g., D.E. 163.

[17] Fed. R. App. P. 4(b)(1)(B) (government has 30 days to appeal the entry of the order at issue); *In re Grand Jury Proceedings*, 616 F.3d 1186, 1196 (10th Cir. 2010) (30-day limit for government to file an appeal is jurisdictional).

[18] D.E. 253 at 40.

computer dedicated to playing CCA videos, which prevented the Special Master from learning who viewed which recordings on that computer and when.[19] This USAO has yet to explain or be held accountable for this destruction of evidence. Likewise, the Court ordered forensic imaging of any computer used to view video-recordings by individuals affiliated with the USAO, including agents;[20] that was not done until the *Dertinger* defense brought to the Court's attention that the USAO had failed to comply with the Court's order of production.[21] And that same defense attorney had to file a motion to show cause why the government should not be held in contempt in *Dertinger*[22] for failure to honor the Court's order to provide witness statements to the defense and to the Special Master. It still has not been disclosed on the record whether the USAO complied, out of time, with that order.

The USAO's dissembling and delay continue unabated, even in the face of criticism from the Court or Special Master. As recently as June of this year, the Court found that "the government has not had--has not acted with candor, has not acted with transparency from the very outset of this."[23] The Court noted that AUSO

---

[19] *Id.*

[20] D.E. 155 at 6.

[21] *Dertinger*, 6/20/17 tr. 278-79.

[22] *Dertinger*, 14-cr-20067-06-JAR, D.E. 551 (also detailing other instances of USAO refusal to comply with court orders).

[23] *Dertinger,* 6/21/17 tr. 537:18-20.

Flannigan's explanation to the Court was "replete with inconsistencies"[24] and that "[t]here's a huge credibility question here,"[25] further obfuscating the effort to determine the truth. Some ten months elapsed before AUSA Flannigan testified, and former AUSA Tomasic still has not taken the stand, in stark contrast to defense attorney Jackie Rokusek, who testified last August when these issues first arose. Delay, predictably, erodes memories, as well, and with that is the loss of evidence. Accepting their testimony at face value, when AUSA Flannigan testified on June 21, 2017, she answered that she did not remember 22 times; Pauletta Boyd claimed faulty memory 36 times.[26] More evidence of the USAO's recalcitrance: On at least two occasions, the government has filed a "Notice of Correction of Record" or similar pleading admitting that the USAO had made "potentially misleading" representations to the court. The government waited some 40 days after its purported discovery to make this "correction."[27] A hearing on that matter is pending in *United States v. Herrera-Zamora.*[28]

---

[24] *Id.* at 538:24.

[25] *Id.* at 541:15.

[26] *Dertinger,* 6/20/17 tr. at 230-276 & 6/21/17 tr. at 287-490.

[27] *United States v. Herrera-Zamora,* D. Kan. 14-cr-20049-01, D.E. 176 at 1; *United States v. Huff,* D.Kan. 14-cr-20067-09, D.E. 536 at 1.

[28] D. Kan. 14-cr-20049-01.

## A Show Cause Hearing

The Court authorized the Special Master to impose or recommend contempt sanctions for failure to cooperate, under Fed. R. Civ. P. 37 or 45.[29] Notably, Rule 37 provides that, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." An array of sanctions are available, including adverse inferences or dismissing the action in whole or in part.[30]

The Court has broad inherent power to fashion sanctions for contempt of court.[31] Contempt may be civil or criminal, direct or indirect. At its core, however, the power to hold a party in contempt is the power to maintain order in judicial proceedings and to enforce orders of the court.[32] Sanctions are appropriate for misbehavior of court officers or for willful disobedience of a lawful court order.[33] The law also provides that an attorney who "multiplies the proceedings in any case unreasonably and vexatiously" may be required to "satisfy personally" costs, expenses, and attorney fees.[34]

---

[29] D.E. 146 at 13.

[30] Fed. R. Crim. P. 37(2)(A).

[31] *Michaelson v. United States ex rel. Chicago,* 266 U.S. 42, 65-66 (1924).

[32] *Young v. United States ex.rel. Vuitton Et Fils SA,* 481 U.S. 787, 798 (1987).

[33] 18 USC § 401.

[34] 28 USC § 1927; *In re Baker*, 744 F.2d 1438 (10th Cir. 1984) (en banc) (recognizing courts inherent power to impose a sanction payable to the court.).

The facts detailed by the Special Master establish a prima facie case that the USAO has violated the Court's orders, both in destroying evidence and in refusing to cooperate or give access to the Special Master. The burden now shifts to the USAO to show cause why its non-compliance with this Court's lawful Orders should be excused.[35]

## Conclusion

Documenting the USAO's delay and lack of candor, this Court stated, "with respect to whether there were constitutional violations and, if so, what the appropriate remedies are, I'm nowhere close to ruling."[36] More than the original constitutional violations, the USAO's post-offense conduct may eventually define those remedies.

This Court expressed "trust[] that Mr. Beall and his upper management have been and will continue to demonstrate their commitment to curing problems that preceded the CCA investigation and problems that arose during it as well."[37] The government responded with obfuscation and false promises, and then wholly abandoned any pretense of cooperation with the entrance of an out-of-district prosecutor. The government's destruction of evidence and refusal to cooperate with

---

[35] *Citronelle-Mobile v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991); *see also Mercer v. Mitchell,* 908 F.2d 763, 767-68 (11th Cir. 1990).

[36] *Dertinger*, 6/21/17 hrg. tr. 257:7-14 ("I'm not at all satisfied with the state of this record. Very troubled and disappointed that the government didn't-- wasn't forthcoming with these explanations ten months ago." 257:11-14).

[37] D.E. 253 at 44.

the Special Master are more than enough to require the government to show cause why it should not be held in contempt. The defense asks for a hearing at the Court's first opportunity.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785.232.9828
Fax: 785.232.9886
Melody_Brannon@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Rich Federico
RICH FEDERICO #22111
Staff Attorney
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on October 25, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties in the case.

s/ Melody Brannon
MELODY BRANNON, KS # 17612

.