# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | **Case No. 16-CR-20032-JAR** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Government's Motion to Quash** |
| | ) | **Subpoenas Issued by the Federal** |
| **LORENZO BLACK,** | ) | **Public Defender; Memorandum of** |
| **KARL CARTER,** | ) | **Points and Authorities** |
| **ANTHON AIONO,** | ) | |
| **ALICIA TACKETT, and** | ) | |
| **CATHERINE ROWLETTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| ———————————————— | ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the Special Master Investigation, hereby moves this Court to quash the following subpoenas issued by the Office of the Federal Public Defender: (a) a subpoena *duces tecum* demanding production of documents from Corrections Corporation of America/CoreCivic; (b) subpoenas for testimony from two former CoreCivic employees; and (c) subpoenas for testimony from present and former employees of the United States Attorney's Office for the District of Kansas.

This motion is based on Rule 17(b)(2) of the Federal Rules of Criminal Procedure, the files and records of this case, and the attached memorandum of points and authorities.          .

Respectfully submitted,

Steven D. Clymer
Special Attorney for the United States

## MEMORANDUM OF POINTS AND AUTHORITIES

## I

## Introduction

The United States of America hereby moves this Court to quash subpoenas issued by the Office of the Federal Public Defender.  Quashal is required because the Federal Public Defender's Office does not represent any defendant in this case and has no standing, and thus has no legal right to issue subpoenas.  In addition, the subpoenas demand production of records and testimony that are not relevant to the case or controversy before this Court.  Further, compliance with subpoenas to present and former United States Attorney's Office ["USAO"] employees would be unreasonable and oppressive because these subpoenas demand inadmissible testimony about privileged matters and are insufficiently specific.  The USAO subpoenas are being used as a discovery or investigatory device, not to secure identified relevant and admissible evidence or testimony as Rule 17 requires.  Finally, as explained the Memorandum of Points and Authorities in the "Government's Motion to Terminate 'Phase III' of the Special Master's Investigation," which is hereby incorporated into this Memorandum, the judicial inquiry on which all of the Federal Public Defender's subpoenas are based is beyond the authority of a federal district court, lacking factual predication, and unnecessary.

Government counsel respectfully requests that the Court rule on this motion in advance of the December 29, 2017 production date specified in the Federal Public Defender's subpoena *duces tecum*.

## II

## Background[1]

On or about December 4, 2017, the Federal Public Defender moved for an order under Fed. R. Crim. P. 17(b) permitting it to issue subpoenas for testimony at a January 18, 2017 hearing from two former employees of "CoreCivic," a company formerly known as Corrections Corporation of America, which operates the detention facility known as CCA-Leavenworth. [Docket #318]. On December 6, 2017, the district court granted the motion. [Docket #320].

On or about December 6, 2017, the Federal Public Defender moved for an order under Fed. R. Crim. P. 17(b) allowing the "defense" to issue a subpoena duces tecum to "Corrections Corporation of America/CoreCivic" for records of legal visits to CCA-Leavenworth by Federal Public Defender employees and consultants. [Docket #328]. On December 6, 2017, this Court granted the motion. [Docket #329].

On or about December 15, 2017, the Federal Public Defender moved for an order under Fed. R. Crim. P. 17(b) permitting it to issue subpoenas for testimony at the January 18, 2018 hearing to eleven current employees and one former employee of the United States Attorney's Office for the District of Kansas ["USAO"], including the United States Attorney, First Assistant United States Attorney, and Chief of the Criminal Division. [Docket #330]. Attached to the subpoena request motion was a letter dated December 14, 2017, addressed to government counsel, and described as "a *Touhy* request, pursuant to 28 C.F.R. §§ 16.21(a) and (b)." This letter provided "[a] summary of the testimony sought from each witness." [Docket #330-1].

---

[1] The government hereby incorporates the "Background" in Memorandum of Points and Authorities in the "Government's Motion to Terminate 'Phase III' of the Special Master's Investigation."

# III

# Governing Law

## A.  Standing

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Simon v. E. Kentucky Welfare Rights Org*., 426 U.S. 26, 37–38 (1976).  "The concept of standing is part of this limitation."  *Id*.  The standing doctrine "focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated." *Flast v. Cohen*, 392 U.S. 83, 99 (1968).  As the Supreme Court has explained:

> Article III of the Constitution limits the jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const., Art. III, § 2. The doctrine of standing gives meaning to these constitutional limits by "identify[ing] those disputes which are appropriately resolved through the judicial process." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "The law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). To establish Article III standing, a plaintiff must show (1) an "injury in fact," (2) a sufficient "causal connection between the injury and the conduct complained of," and (3) a "likel[ihood]" that the injury "will be redressed by a favorable decision." *Lujan*, *supra*, at 560–561 (internal quotation marks omitted).

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (footnote omitted).

"The [Supreme] Court's . . .  decisions consistently hold that a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution." *Linda R.S. v. Richard D*., 410 U.S. 614, 619 (1973) (citing *Younger v. Harris*, 401 U.S. 37, 42 (1971); *Bailey v. Patterson*, 369 U.S. 31, 33 (1962); *Poe v. Ullman*, 367 U.S. 497, 501 (1961).

The text of the Sixth Amendment establishes that only an "accused" defendant in a "criminal prosecution" has standing to seek judicial relief for an alleged violation of his or her constitutional right to counsel: "In all criminal prosecutions, the accused shall enjoy the right to . . . to have the Assistance of Counsel for his defence." U.S. Const. Amend. VI. Accordingly, the Supreme Court has explained that "[t]he Sixth Amendment right to counsel is personal to the defendant and specific to the offense." *Texas v. Cobb*, 532 U.S. 162, 172 (2001*); see also United States v. Jones*, 44 F.3d 860, 873 (10th Cir. 1995) ("The Sixth Amendment right to counsel is a personal right."). "A defendant thus does not have standing to raise the Sixth Amendment claims of a co-defendant." *Jones*, 44 F.3d at 873; *see also United States v. Davis*, 612 F. App'x 526, 527 (10th Cir. 2015) (unpublished) ("Defendant has no 'standing' to assert a violation of Calhoun's Sixth Amendment right to counsel or Fifth Amendment guarantee against self-incrimination."); *United States v. Adams*, 977 F.2d 596 (10th Cir. 1992) (unpublished) ("The government also argues . . . that the Sixth Amendment right to counsel is a personal right and a co-defendant lacks standing to challenge a violation. We agree."); *United States v. Arthur*, 582 F.3d 713, 720 (7th Cir. 2009) ("Ronald has no standing to raise a Sixth Amendment ineffective assistance of counsel claim on behalf of his wife); *United States v. Sims*, 845 F.2d 1564, 1568 (11th Cir. 1988) ("Even if the agents' actions violated Olsen's right to counsel, Sims has no standing to assert this claim.").[2]

---

[2] The Federal Public Defender's Office has no attorney-client privilege of its own to assert in this case. The attorney-client privilege belongs to the client, not the attorney. *State v. Maxwell*, 10 Kan. App. 2d 62, 64, 691 P.2d 1316, 1320 (1984) ("The privilege belongs to the client."); Kan. Stat. Ann. § 60-426(a) ("communications found by the judge to have been between an attorney and such attorney's client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege").

### B.  Subpoena Requirements

Rule 17 of the Federal Rules of Criminal Procedure governs the issuance of subpoenas *ad testificandum* and *duces tecum* in advance of trials and hearings.  "Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials."  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).  As a result, a broadly drafted production demand "not intended to produce evidentiary materials" but instead "merely a fishing expedition to see what may turn up" is "invalid."  *Id.* at 221.  Consistently, Rule 17(c)(2) provides in part that "the court may quash or modify [a] subpoena if compliance would be unreasonable or oppressive."

Decisions following *Bowman* applied the following test to determine whether to enforce or quash a pretrial subpoena in a criminal case:

> [I]n order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699–700 (1974) (footnote omitted).

The Tenth Circuit has distilled the *Nixon* test into an approach requiring the party defending a subpoena to "clear three hurdles: (1) relevancy; (2) admissibility; and (3) specificity."  *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002) (internal quotation marks, brackets, and citation omitted); *see also United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (describing three requirements).

"The requirement of relevance serves to ensure that a subpoena is not used to circumvent Rule 16 [governing pretrial discovery in federal criminal cases]."  *United States v. Castro-Motta*,

No. 11-CR-00033-REB, 2012 WL 3400828, at *2 (D. Colo. Aug. 15, 2012).  Thus, "vague, global requests . . . are patently inadequate to satisfy" the burden of justifying a subpoena.  *Id*. "Conclusory statements do not establish relevance."  *Abdush-Shakur*, 465 F.3d at 468.

Further, "only materials that are 'admissible as evidence' are subject to subpoena under the rule.  *United States v. Cuthbertson*, 651 F.2d 189, 192 (3d Cir. 1981) (quoting *Bowman Dairy*, 341 U.S. at 221).

A subpoena also must be quashed when it is insufficiently specific.  *Morris*, 287 F.3d at 991.  In *Morris*, the Tenth Circuit held that the district court properly quashed a subpoena broadly seeking information about a government investigation when the demanding party did not specify the precise items sought and was "unable to verify whether the requested material even exists." *Id*.  As Magistrate Judge O'Hara in this District has explained:

> To meet the specificity requirement, a subpoena must refer to specific documents or, at least, to specific kinds of documents.  It is not enough that the documents have some potential of relevance and evidentiary use. There must be a sufficient likelihood that the requested material is relevant to the offenses charged in the indictment, and a sufficient preliminary showing that ... [the requested material] contains evidence admissible with respect to the offense charged.

*United States v. Reed*, 2008 WL 4724437 (D. Kansas 2008) at *1.

Courts have also quashed subpoenas on other grounds.  *United States v. Lansing*, No. 2:08-CR-558 TS, 2009 WL 321575, at *1 (D. Utah Feb. 9, 2009) (rejecting the argument "that the court may quash the subpoenas only if there is a showing that "compliance would be unreasonable or oppressive").  For example, Rule 17(h) provides in part that "[n]o party may subpoena a statement of a witness or of a prospective witness under this rule."  Rather, such statements are governed by the restrictions in Fed. R. Crim. P. 26.2, which is similar to the Jencks Act, 18 U.S.C. § 3500. Similarly, a subpoena can be quashed on "other possible grounds . . . that are not listed in rule 17(c)(2), such as assertion of a privilege.  *Lansing*, 2009 WL 321575, at *1.

# IV

## Argument

The legal principles described above require that the Federal Public Defender's subpoenas be quashed for a host of reasons.

### A. The Federal Public Defender Does Not Represent any Defendant in this Case and Has No Standing, and Thus No Legal Right to Subpoena Witnesses and Documents.

The Federal Public Defender does not represent any of the defendants charged in this case and is not itself a named defendant. Accordingly, neither it nor any client it represents claims to have suffered an "injury in fact" with a causal connection to an alleged Sixth Amendment violation that can be redressed by a decision in this case. It is insufficient for the Federal Public Defender to allege, or even to prove (which it has not done), that it represents non-party inmates at CCA-Leavenworth whose Sixth Amendment right to counsel has been or may have been violated by the government's capture and use of attorney-client privileged conversations. The Federal Public Defender cannot use this case to obtain legal relief for alleged violations of the constitutional rights of its clients in other cases. Instead, those clients can raise such claims in their own criminal case. See *Susan B. Anthony List*, 134 S. Ct. at 2341 (describing requirements for standing). In short, neither the Federal Public Defender not any client whom it represents has standing in this case.

Consistent with these principles, the text of Federal Rule of Criminal Procedure 17 makes clear that only a party to a criminal case has the right to issue subpoenas for evidence or testimony in advance of a trial or hearing. Subsection 17(a) permits the clerk of court to issue a subpoena only to a "party," and a "party" must complete the subpoena. Subsection 17(b), the provision upon which the Federal Public Defender relied in its requests to this Court for the subpoenas, provides that only a "defendant," not from a non-party or an attorney representing a non-party, can apply to a court for a subpoena.

For these reasons alone, all of the subpoenas issued by the Federal Public Defender must be quashed.

**B. The Demanded Testimony and Records Are Not Relevant to the Case and Controversy Before the Court.**

The testimony and records that the Federal Public Defender's subpoenas demand have no relevance to the case and controversy before the Court in *United States v. Black*. The records and testimony sought from CoreCivic and its former employees do not relate to the charges, evidence, or legal defenses raised in this case. Indeed, the subpoena *duces tecum* specifically seeks records of legal visits by the Federal Public Defender's employees to its *own clients*, none of whom is charged in this case. The subpoenas do not request information related to any of the charged defendants, each of whom has other legal counsel.[3] *See* Docket #328. Similarly, the Federal Public Defender's motion for testimonial subpoenas from the former CoreCivic employees describes anticipated testimony from these witnesses that does not relate to the criminal case before this Court. *See* Docket #318. It names only former CCA-Leavenworth inmate Richard Dertinger, who is not a defendant here and whose separate criminal case has been resolved by guilty plea.

The testimony that the Federal Public Defender seeks from the present and former USAO employees is likewise irrelevant. According to the Federal Public Defender's letter, Docket #330-1, it proposes to question these government witnesses about matters wholly unrelated to the case before the Court, including the following examples:

> The total number and names of cases in which the USAO notified opposing counsel, the court, and/or filed a notice of record correction to correct prior statements and representations of USAO prosecutors relating to the USAO obtaining, possession, using, disseminating, listening, or viewing protected attorney-client communications. *Id*. at p. 2.

---

[3] No defendant named in this case has moved the Court to issue a subpoena related to his or her communications with legal counsel and none has a pending motion alleging a Sixth Amendment violation.

Communications by or between [AUSA Flannigan], SAUSA Tomasic, and Jackie
Rokusek in August 2016 relating to the USAO's assertions that Ms. Rokusek had
a conflict with her client, Richard Dertinger, due to its accusation that Ms. Rokusek
provided to him information from another case. *Id*. at p. 4.

Any and all advice [AUSA Flannigan] gave to SAUSA Tomasic and AUSA David
Zabel to use a filter team in *United States v. Herrera-Zamora* (14-20049-01-CM),
including the basis, reasoning, and procedures she used to render this advice. *Id*. at
p. 5.

None of the proposed questioning of the USAO employees relates to the case before the

Court, which involves contraband smuggling at CCA-Leavenworth. None of the demanded

testimony has any apparent bearing on the guilt of the defendants remaining in the case for this

conduct.[4]

### C.  The Testimony Sought from Present and Former USAO Employees is Privileged and Inadmissible.

Much of the testimony the Federal Public Defender proposes to elicit from the USAO

employees is both privileged and inadmissible.  The subpoena seeks, among other things,

testimony about (and apparently copies of) internal office policies, Docket #330-1 at p. 2, 4;

internal USAO communications concerning ongoing litigation and decisions, *id*. at pp. 2, 3, 4, 5,

6; communication with Department of Justice attorneys about ongoing litigation, *id*. at 2; and

investigative and litigation strategy, *id*. at p. 5, 6.  Indeed, almost all of the testimony the Federal

Public Defender purports to seek from present and former USAO employees involves internal

USAO communications, decision-making, and operations.  This sought-after testimony is

inadmissible and outside the scope of Rule 17 by virtue of the work-product doctrine, and/or one

---

[4] It may be true that the subpoenaed documents and testimony have some relation to the special
master's *investigation*, but Rule 17 does not permit pre-hearing investigation; the rule is a means
of securing known evidence for presentation at a trial or hearing.  There is no alternative statutory
basis for the exercise of subpoena power in criminal case other than through the federal grand jury
during its investigation.

of more of the following privileges – the attorney-client privilege; the law enforcement privilege; and the deliberative process privilege.  *See, e.g. SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1203 (D.C. Cir. 1991) (explaining that when a federal prosecutor "prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, [she] has litigation sufficiently 'in mind' for that document to qualify as attorney work-product"); *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169-70 (2011) (recognizing that the government can invoke the attorney-client privilege); *United States v. Zingsheim*, 384 F.3d 867, 871 (7th Cir. 2004) ("The attorney-client privilege covers conversations between the prosecutors (as attorneys) and client agencies within the government."); *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981) (explaining that the law enforcement privilege "is based primarily on the harm to law enforcement efforts which might arise from public disclosure of . . . investigatory files . . . and bars disclosure of facts.") (citation and internal quotation marks omitted) (first ellipses in original); *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (explaining that the deliberative process privilege "allows the government to withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated") (citations and internal quotation marks omitted).

Some privileges must, of course, "yield to the demonstrated, specific need for evidence in a pending criminal trial."  *Nixon*, 418 U.S. at 713.  The government recognizes its obligation to disclose certain privileged information in compliance with its duties under *Brady v. Maryland*, 373 U.S. 83 (1963), *Giglio v. United States*, 405 U.S. 150 (1972), the *Jencks Act*, 18 U.S.C. § 3500, and the Federal Rules of Criminal Procedure.  But the applicable privileges do not yield here for at least two reasons.  First, the Federal Public Defender is not seeking the privileged information

on behalf of any of the defendants in this case.  There is simply no suggestion that the Federal

Public Defender needs access to the information in order for the Court to adjudicate the claims of

the parties in this case.  Second, the categories of information sought here would not ordinarily be

subject to disclosure in any criminal case.  Even if the defendants in this case had requested the

subpoenas, the defendants could not "demonstrate[ ]" a "specific need" for information regarding

internal USAO communications, decision-making, and operations.  *Nixon*, 418 U.S. at 713.

### D.  The Federal Public Defender's Testimonial Summaries are Not Specific.

The broad categories of testimony that the Federal Public Defender proposes to use Rule

17 subpoenas to elicit from USAO employees shows that it is attempting to conduct a far-reaching

investigation into the operations of the United States Attorney's Office, not obtain specific

admissible testimony relevant to the defendants and case before the Court.   Its summaries of

proposed testimony range from determining, for example, whether the United States Attorney

"knows of *any* attorney, agent, or employee of the USAO accessed, or had access to, defense

protected attorney-client communications," Docket #330-1 at p. 2 (emphasis added); to whether

the USAO Criminal Chief has knowledge of "*any* subpoenas sought and issued by her office to

CCA-Leavenworth to obtain video recordings made from surveillance video cameras within CCA-

Leavenworth, including whether she approved them before they were served" and "*any* subpoenas

sought and issued by her office to CCA-Leavenworth to obtain recordings of phone calls made by

detainees and their lawyers, and whether she approved them before they were served," *id.* at p. 3

(emphasis added); to remedial action taken in response to attorney misconduct, *id.* at p. 4, to advice

given in other cases and about other matters, *id.* at p. 5; to all cases in which an AUSA served on

a so-called "filter" team, *id.* at p. 5.

**E. The Federal Public Defender's Subpoenas are Invalid Because a Court-Ordered Investigation into the Operations and Decision-Making of the USAO is Outside the Scope of the Court's Authority.**

For the reasons explained in the Memorandum of Points and Authorities in the "Government's Motion to Terminate 'Phase III' of the Special Master's Investigation," incorporated herein, the Court lacks authority to conduct the Phase III investigation, either directly, or through a special master. This renders the related Federal Public Defender's Office subpoenas, all of which were issued in connection with that investigation, invalid.

**V**

**Conclusion**

For the reasons set out above, the government respectfully requests that this Court quash the Federal Public Defender's subpoena *duces tecum* and testimonial subpoenas.

**Certificate of Service**

I hereby certify that on the 18th day of December, 2017, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

<u>*S/Deanna Lieberman*</u>
Deanna Lieberman
Paralegal Specialist
United States Attorney's Office
Northern District of New York