# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**UNITED STATES OF AMERICA,**
*Plaintiff*,

v.                                              Case No. 16-20032-JAR

**LORENZO BLACK, et al.,**
*Defendant.*

_____

## RESPONSE IN OPPOSITION TO MOTION TO QUASH
_____

When the Court first questioned the United States Attorney's Office about violating the constitutional rights of hundreds of defendants, it pledged cooperation. It promised to work with the Court and the Federal Public Defender's Office to find the truth. It would answer any question, provide any document, and do whatever was necessary to prove its innocence.

But this was mere charade — and a cynical one at that. However well-intentioned these promises were at the time, it now seems that the USAO

> Our office has been cooperating with the special master all along — and we intend to continue doing so.
>
> - Tom Beall

has no interest in proving its innocence at all. At some point, it made a calculated decision to use empty vows of future cooperation to forestall any actual effort at present cooperation, while betting that the

Court's inquiry would stall of its own accord. When the USAO lost that bet, it revealed the true value of the promise of a United States Attorney.

The United States Department of Justice does not want the evidence of its constitutional violations to see the light of a courtroom. To that end, and reneging on its earlier promises, it hurls one procedural roadblock after another at the Court — not to find justice but to thwart it. It does not claim innocence, but rather that the Court is not entitled to evidence of its guilt. While its procedural arguments are unavailing and this Court should surely reject them, one cannot help but feel some betrayal watching the Department of Justice abdicate its sworn duty — to see that justice is done.

## Introduction

The Federal Public Defender has litigated the Sixth Amendment issues in this case since August 5, 2016, when we first filed a motion alerting the Court to the government's conduct.[2] The government obtained and then used surreptitious video and audio recordings of protected attorney-client communications. The Leavenworth Detention Center, owned and operated by Corrections Corporation of America[3] under a contract with the United States

---

[2] D.E. 82.

[3] Corrections Corporation of America changed its name to CoreCivic after this litigation began. For ease of reference, we refer to that entity as "CCA."

Marshals Service, captured and provided these communications before turning them over to the United States Attorney's Office.

Once the FPD learned of the government's secret intrusions, we acted quickly to prevent further damage — timely objecting to the privilege violations and exploring possible remedies for the systemic constitutional violations. In that regard, we filed a motion advising the court of the facts, asking for both protection (no more recording) and remedy (appointment of a special master).

At the same time, we filed similar motions in some 60 cases in the District of Kansas. A number of these remain unresolved, as the district court cases pend. A large number, having preserved the objections, may have post-conviction remedies available. These clients suffer identical violations of the attorney-client privilege.

To conserve time and resources, the FPD joined this action.[4] By developing the record in one case rather than litigate separately in 60 some odd cases, the Court has a strong interest in maintaining consistency and economy. The factual record made in this case, the legal conclusions reached by this Court, and the ultimate remedies, both prospective and retrospective,

---

[4] D.E. 82, 85.

3

are better served by litigating the same issues at the same time before the same Court.

## Arguments & Authorities

**I.    The FPD has standing in this case as an intervener and under Rule 41(g) and even if it did not, this argument is moot because the co-defendants have made identical requests.**

The USAO moves to quash subpoenas issued by the FPD by arguing that it lacks standing in this case. This argument fails because the USAO and this Court have already recognized the FPD as an intervener and that recognition gives the FPD the right to issue subpoenas.

### A.    *The FPD has standing as an intervener in this case, and that standing has already been recognized by the USAO and this Court.*

Since it first joined this case, the FPD has taken the lead in its litigation. The FPD first brought the matter to the Court's attention.[5] The FPD presented testimony and exhibits that eventually justified the Court's appointment of a Special Master.[6] At no point did the USAO ever seriously challenge the FPD's right to enter its appearance, sit at counsel table, call

---

[5] *See* D.E. 82, 85.
[6] *See generally* Hrng Tr. Aug. 9, 2016; Aug. 16, 2016; Sep. 7, 2016.

and question witnesses, introduce exhibits, make arguments, or file pleadings.[7]

1.     *This Court properly permitted the FPD to intervene in this case to protect its clients' Sixth Amendment rights.*

Until now. Feigning historical ignorance, the USAO now acts surprised to see the FPD in this case at all. Yet it fails to concede, as it must, that this Court can exercise its own discretion to permit intervention in a criminal case. That authority comes from the Court's supervisory powers.[8] The United States Supreme Court recognizes that a district court may use its supervisory powers to formulate its own rules or procedures in certain circumstances.[9] Specifically, it may do so to: (1) implement a remedy for a violation of recognized rights; (2) preserve judicial integrity; and (3) design a remedy to deter illegal conduct.[10] Courts have recognized that this supervisory power gives the district court discretion to allow a party to intervene in a criminal case in order safeguard the constitutional rights of others.[11]

---

[7] While the USAO did make some preliminary arguments about standing, it quickly abandoned them. *See, e.g.,* D.E. 237 at 6 (describing the USAO's tactical decision to abandon its standing arguments).

[8] *United States v. Hasting*, 461 U.S. 499, 505 (1983) (citing *McNabb v. United States*, 318 U.S. 332, 341 (1943)).

[9] *Hastings*, 461 U.S. at 505 (citations omitted).

[10] *Id.* (citations omitted).

[11] See, e.g., *United States v. Aref*, 533 F.3d 72, 81 (2d. Cir. 2008) (intervention proper to safeguard the public's First Amendment right of access to criminal proceedings); *In re Associated Press*, 162 F.3d 503, 507 (7th Cir. 1998) (same); see also *Barnwell v. Corrections Corporation of America*, No. 08-2151-JWL, 2009 WL

This Court properly exercised its supervisory powers to allow the FPD to intervene. Over a year ago, it noted that the FPD "entered its appearance on behalf of clients who were allegedly included in the recordings."[12] And the intervention was for a proper purpose: so that the Court could implement a remedy for the USAO's past Sixth Amendment violations and deter future violations. At the beginning of the case, the Court recognized that the USAO's actions constituted "a very serious Sixth Amendment violation. Well, actually, hundreds of Sixth Amendment violations."[13] The USAO even recognized the FPD's status as an intervener when it objected to a motion the FPD filed: "The motion should be denied because . . .  the relief exceeds the scope of the FPD's role as an intervener in this case[.]"[14]

The district court's exercise of its supervisory powers is reviewed for an abuse of discretion.[15] This Court permitted the FPD to intervene in this case to safeguard the Sixth Amendment rights of its clients. The Supreme Court recognizes that purpose as one that gives this Court the authority to formulate particular rules or procedures.[16] Other courts have cited that same authority to permit intervention to safeguard constitutional rights, and those

---

10645266 *1 n.1 (D.Kan. Aug. 27, 2009) (citing *In re Associated Press* to conclude that a motion to intervene was "appropriate.").

[12] D.E. 182 at 2 n.1 (Nov. 29, 2016).

[13] Hrng. Tr. 64:25-65:02 (Aug. 16, 2016).

[14] D.E. 218 at 3.

[15] *Aref*, 533 F.3d at 81.

[16] *Chambers v. NASCO*, Inc., 501 U.S. 32, 43 (1991).

courts have been affirmed on appeal.[17] Put simply, this Court correctly exercised its discretion to allow the FPD to intervene in this case for the proper purpose of protecting its clients' Sixth Amendment rights. This is inherent in the Court's authority to "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."[18]

2.    *As an intervener, the FPD has the authority to issue subpoenas.*

Premised on its first erroneous argument, the USAO challenges the FPD's authority to request and issue subpoenas under Rule 17. It properly quotes Rule 17(a)'s reference to a "party" and Rule 17(b)'s reference to a "defendant," then argues that the FPD is neither a party nor a defendant, so it cannot use Rule 17. But — other than a bare citation to the terms used in that rule — it offers no authority prohibiting an intervener from invoking Rule 17. Or even an argument as to why this Court *should* interpret its language so narrowly.

Even if it did, it would still lose. An intervener is a "party" to a suit, so the FPD's status as an intervener in this case — long recognized by the Court and the USAO — gives it the ability to invoke Rule 17(a). And it does so not only for its own sake, but "on behalf of clients who were allegedly included in

---

[17] *Aref*, 533 F.3d 81.
[18] *Chambers*, 501 U.S. at 43.

the recordings."[19] Those clients are defendants, and since the FPD used Rule

17(b) on their behalf, it did so properly.

3.    *The USAO waived any objection to the FPD's intervention because it explicitly recognized its right to object and chose not to.*

If the USAO had any objection to the FPD's status as an intervener in

this case, it waived the argument long ago. A party waives an argument by

intentionally abandoning a known right to rely on it.[20] Throughout this

litigation, the USAO has explicitly recognized its right to challenge the FPD's

intervener status and — just as explicitly — chosen to not to do so. For

instance, as late as April 17, 2017, it summarized its litigation strategy up to

that point:

> Further, despite reservations about the propriety of the type of
> motion filed by the public defender - the public defender's standing
> to bring any motion in the matter (not representing a defendant in
> the case and in fact representing some of the cooperating inmates)
> - the government deferred litigation of all such issues to ensure
> that, first and foremost, the questioned material was safeguarded
> in a manner approved by counsel. In other words, despite an
> available litigation strategy focused on procedure, the government
> chose to forgo that option and address the substantive issue,
> which deserved appropriate attention and resolution. The

---

[19] D.E. 182 at 2 n.1 (Nov. 29, 2016).
[20] E.g., *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007).

government has sought to keep the focus on the substantive issues meriting attention.[21]

This recognition-and-relinquishment is a textbook waiver.

Thus, any attempt to reverse course comes too late: the USAO made a choice to stand on substance rather than procedure. Now that it sees where the substantive path leads, it attempts to resurrect the same procedural roadblocks that it already left for dead. The law does not permit such a miracle, and neither should the Court.

4.    *The USAO is equitably estopped from objecting to the FPD's intervener status because it misled the FPD into believing that its intervention was uncontested.*

But it does not stop with waiver — the USAO now stands equitably estopped from contesting the FPD's intervener status. The equitable-estopped doctrine "prevents a party from taking a legal position inconsistent with an earlier statement or action that places his adversary at a disadvantage."[22] The doctrine arises when (1) the party to be estopped knows the facts and (2) intends that the other party will rely on his stated position, while (3) the party seeking estoppel did not know the facts and (4) relied on the other party's conduct to his detriment.[23] For example, the doctrine often arises

---

[21] D.E. 237 at 6 (citations omitted).

[22] *Spaulding v. United Transp. Union*, 279 F.3d 901, 909 (10th Cir. 2002) (internal citation omitted).

[23] *Id.*

when one party misleads the other about the status of an issue in the litigation: whether it remains contested or not.[24]

Here, the USAO affirmatively and explicitly misled the FPD into believing that its intervener status was a closed issue. It failed to object when the FPD acted as a full party in the case: sitting at counsel table, introducing evidence, making arguments, and moving for relief. It failed to object when this Court recognized the FPD as interveners. It did so consciously: as it explained to the Court, it knew it could make such an objection but affirmatively chose not to do so.[25] And it relied on the FPD's status as intervener while arguing for relief.[26] The FPD relied on these representations. If the Court were to credit the USAO's tardy objection at this point, that reliance would have been to the FPD's detriment.

5.    *If the Court erred by permitting the FPD to intervene, the USAO invited that error by urging the Court to accept the proposition that the FPD was a proper intervener.*

The USAO cannot now complain of an error it asked the Court to make. "The invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt."[27] The USAO asked this Court to adopt the proposition that

---

[24] E.g., *Spaulding* at 909-910.
[25] D.E. 237 at 6 (citations omitted).
[26] D.E. 218 at 3.
[27] *United States v. Deberry*, 430 F.3d 1294, 1302 (10th Cir. 2005).

the FPD was an intervener in this case. It did so both implicitly and explicitly. Implicitly, the USAO failed to object as the FPD acted as an intervener for more than a year in this case.

And it did so explicitly, most notably when it cited the FPD's role as an intervener in attempt to garner relief in this Court: "The motion should be denied because...the relief exceeds the scope of *the FPD's role as an intervener in this case[.]*"[28] In other words, the USAO allowed the FPD to intervene, recognized its status as an intervener, and then used the universally accepted proposition that the FPD was an intervener to advance its own interest in this litigation. By urging this Court to accept the proposition that the FPD was an intervener, the USAO invited the Court's decision — even if it were error (it was not) — to grant the FPD intervener status.

## B.    *Alternatively, as a movant under Rule 41(g), the FPD has standing in this case in order to seek return of property.*

### 1.    *The FPD has standing as a movant under Rule 41(g).*

The USAO claims that the FPD lacks standing because neither it nor any client it represents has alleged an injury in fact.[29] The USAO is mistaken. The FPD's original motion under Rule 41(g),[30] and its amended

---

[28] D.E. 218 at 3 (emphasis added).
[29] D.E. 340 at 9.
[30] D.E. 82.

11

motion under the same rule,[31] alleged those injuries. The USAO does not challenge any of the allegations contained in those motions, or explain why they fail to set out a case sufficient to grant standing under Rule 41(g).[32]

2.     *As a Rule 41(g) movant, the FPD has the authority to seek and issue subpoenas under Rule 17.*

The USAO bases its second argument on its first. It claims the FPD cannot move for subpoenas under Rule 17 because that rule only allows "parties" or "defendants" to make such a request.[33] Yet the FPD is a "party" under Rule 17(a) by virtue of its Rule 41(g) request. The USAO fails to cite any authority prohibiting a Rule 41(g) movant from exercising Rule 17's subpoena power, so one may reasonably assume it has none. And while Rule 17(b) only allows a "defendant" to move for a subpoena upon a showing of indigence, the FPD — as it explained in its Rule 41(g) motions and in its Rule 17(b) requests[34] — represents scores of indigent defendants: defendants who were housed at CCA, communicated with their attorneys, and had those communications secretly recorded.

Indeed, outside of those in this case, more than 70 defendants filed motions under Rule 41(g) concerning the government's seizure of their

---

[31] D.E. 85.

[32] See *United States v. Rodriguez-Aguirre*, 264 F.3d 1195, 1204 (10th Cir. 2001) (a party need only set out a facially colorable interest "in the proceeding" to satisfy Rule 41(g)'s case-or-controversy requirement.)

[33] D.E. 340 at 9.

[34] *See, e.g.,* D.E. 330 at 4.

attorney-client communications. Many of them withdrew them as this case wound on, assured that they would be able to renew their challenge in a § 2255 motion should this case reveal grounds to do so. But not all of them: about 12 defendants who filed Rule 41(g) motions still have matters pending in this district.

We also have a reasonable belief that the government still has in its possession audio recordings of protected attorney-client phone calls. Like the video, these recordings are attorney work-product, property of the FPD, and have not yet been identified or returned.

3.    *The USAO has waived any objection to the FPD's Rule 41(g) standing in this case.*

Even if it has challenged the FPD's Rule 41(g) standing, the USAO's argument would have quickly fallen because it already waived that argument. A party waives an argument by intentionally abandoning a known right to rely on it.[35] And that's what happened here. In its response to both Rule 41(g) motions, the USAO set out the basis for an objection to the FPD's standing to bring those motions.[36] Yet, after recognizing its right to make that argument, the USAO promptly abandoned it: "the government

---

[35] E.g., *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007).
[36] D.E. 110 at 8-10.

recognizes that these recordings, and their handling, present unique issues that require the Court's attention."[37]

It made that waiver even more explicit in a later pleading, where it summarized its past litigation strategy. Conceding that it was aware of "an available litigation strategy focused on procedure," it explained that it nonetheless "*chose to forgo that option* and address the substantive issue, which deserved appropriate attention and resolution."[38]

## C.    *Alternatively, the Court could follow the canon of constitutional avoidance and find that co-defendants' joinder in the FPD's requests mooted this argument.*

The USAO's argument is also moot because named defendants in the above-captioned case have joined in the FPD's subpoena requests.[39] The USAO makes its argument under the Constitution, invoking Article III to claim the FPD lacks standing in this case.[40] The USAO's decision to make a constitutional argument enables this Court to use the constitutional-avoidance canon and ignore it.

That was the canon's primary design. Among its "chief justifications is that [it] allows courts to *avoid* the decision of constitutional questions."[41]

---

[37] *Id.* at 10.
[38] D.E. 237 at 6 (citations omitted) (emphasis added).
[39] D.E. 337, 339.
[40] D.E. 340 at 5, 9.
[41] *Clark v. Martinez*, 543 U.S. 371, 381 (2005).

Here, the district court may properly recognize that the co-defendants named in the case have standing. And by virtue of their joinders in the FPD's requests, have mooted any argument that an improper party was moving the Court for relief. Such a decision would avoid ruling on the constitutional question raised by the USAO.

## II. The FPD seeks evidence relevant to its reasons for intervention: safeguarding the Sixth Amendment rights of its clients and obtaining the return of their confidential communications.

The USAO asks the Court to quash subpoenas directed to (1) CCA, (2) two former employees of CCA, and (3) the USAO. It claims that the records and testimony sought by these subpoenas "do not relate to the charges, evidence, or legal defenses raised in this case."[42]

A party seeking a Rule 17 subpoena must ordinarily clear three hurdles: relevancy, admissibility, and specificity.[43] The USAO does not argue that the subpoenas fail to meet these latter two requirements.[44] And though it cites Rule 17(c)(2) as authority for its motion,[45] the USAO similarly fails to

---

[42] D.E. 340 at 10.
[43] *United States v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006).
[44] The USAO does make another argument — that the testimonial summaries are not specific enough — in a later part of its motion. But it does not cite Rule 17's requirements in that part of its motion, making it difficult to discern whether that objection is based on Rule 17 or some other authority.
[45] D.E. 340 at 2.

argue "compliance would be "unreasonable or oppressive."[46] Instead, it confines its challenge to a single requirement: relevance.

The Tenth Circuit reviews a trial court's decision to grant or deny a Rule 17 subpoena under an abuse-of-discretion standard.[47] So it will not "disturb the district court's ruling" unless it has "a definite and firm conviction that the court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances."[48] The United States Supreme Court has "repeatedly held" that the denial of a motion to quash "is not final and hence not appealable."[49]

## A. **The FPD's subpoenas seek evidence relevant to its Sixth Amendment arguments and Rule 41(g) claims, and the USAO's failure to argue otherwise results in a waiver of that argument.**

The USAO's motion rests on a single yet flawed premise: that the only relevant issues in this case are the criminal allegations against the named defendants. But repetition does not make change reality. And this means the Court need not go further to reject the USAO's relevancy argument. Since that argument rests on a flawed premise, merely recognizing its false foundation destroys its remainder.[50] The Court could simply reject the

---

[46] Fed. R. Crim. P. 17(c)(2).
[47] See *United States v. Gonzalez-Acosta*, 989 F.2d 384, 388-89 (10th Cir. 1993).
[48] *Id.* at 388-89 (internal quotation omitted).
[49] *United States v. Nixon*, 418 U.S. 683, 690-91 (1974) (collecting cases).
[50] See *U.S. Specialty Insurance Co. v. Estate of Earley*, 680 Fed. Appx. 767, 771 (10th Cir. Mar. 3, 2017) ("But we decline to discuss these reasons because the Estate's argument is based on a flawed premise[.]") (unpublished).

argument by finding that: (1) the USAO's argument rests on the assumption that the issues in this case are limited to those in the indictment, but (2) the issues in this case are not limited to those implicated in the indictment; so (2) those are not the only relevant issues in the case; (3) the USAO's argument fails.

1.   *The FPD's subpoenas seek evidence relevant to the proper remedy for the USAO's constitutional violations and Rule 41(g) violations because they seek information about the frequency of those violations and corresponding intent.*

The Court permitted the FPD to intervene in order to safeguard the constitutional rights of its clients. The Supreme Court explicitly recognizes the district court's authority to do so in order to craft remedies that (1) protect constitutional rights and (2) deter future violations.[51] But the Court cannot even begin to construct a remedy until it knows how egregious the violations were.

The testimony and documents sought by the FPD go to that issue, and are accordingly relevant.  Something is "relevant" if it has a tendency to make a consequential fact more or less likely.[52] Here, the frequency of constitutional violations and mental state of the violators is relevant to the type of remedy the Court will design. The FPD seeks evidence that will make

---

[51] *Hasting*, 461 U.S. at 505.
[52] Fed. R. Ev. 401.

it more or less likely that the USAO repeatedly violated the defendants' Sixth Amendment rights by examining the past practices of the USAO. It also seeks evidence that will make it more or less likely that the USAO intentionally violated those rights. Those facts are consequential because they will play a role in determining the type of remedy the Court may impose.

In any event, the USAO has waived any argument it may have had that the FPD's subpoenas seek information beyond the Sixth Amendment issues. Instead, it chose only to argue that the information sought was irrelevant to the indictment's charges and defenses. It made the corresponding decision *not* to argue that the information sought went beyond the constitutional violations that the FPD intervened to address. And the result of that decision is waiver.

Likewise, the USAO declines to argue — and accordingly waives any argument — that the FPD's subpoenas do not seek information relevant to the Rule 41(g) actions. Even if it had, its argument would fail. A Rule 41(g) motion inserts new issues into a criminal case, and those new issues bestow relevance on otherwise irrelevant evidence. Something is "relevant" if it has a tendency to make a consequential fact more or less likely.[53] Rule 41(g) allows

---

[53] Fed. R. Ev. 401.

a party to move for the return of unlawfully seized property. In order to properly rule on such a motion, the Court must know not only *whether* the government seized property, but also *what* and *how much* of the property it seized. It must also know what mental state the government possessed during the seizure and be able to weigh witness credibility.

2.     *The FPD's subpoenas seek evidence that will make the credibility of the USAO's witnesses more or less likely.*

The FPD seeks evidence that will go to the credibility of the USAO's witnesses. Too long to recite here, the Court has been confronted with shifting — and sometimes contradictory — factual assertions by the USAO.[54] In several instances these allegations have gone beyond mere contradiction and become binary: only one of them can be true, meaning the other must be false. The Court's decisions regarding the quantity of communications seized and the USAO's accompanying mental state will likely hinge, if not completely swing, on the credibility of the USAO's witnesses — past and future. That makes credibility a consequential fact in this case, and likewise relevant.

The FPD's subpoenas seek evidence that will make consequential facts more or less likely. Specifically, how much of the FPD's property that the

---

[54] Compare *United States v. Dertinger*, 14-20067-06-JAR, Hrng. Tr. at 423:10-15 (Jun. 21, 2017) (Flannagan: I did not know the USAO had attorney-client videos on August 2), and 488:3-10 (Okay, maybe I did.)

government seized, the culpable mental state it had while doing so, and the credibility of the USAO's witnesses. Those facts have an effect on the type of remedy the Court may impose, making them consequential to this action.

## III.    The USAO's blanket privilege assertion fails as a matter of law and even if it did not, the USAO has waived any applicable privilege.

The USAO next objects to the subpoenas for testimony directed at its own employees under privilege. Specifically, it claims the testimony would fall under "the work-product doctrine, and/or…the attorney-client privilege; the law enforcement privilege; and the deliberative process privilege."[55] Other than tossing around the terms, the USAO fails to tie any privilege to a specific testimonial subject, or explain how the applicable privilege would cover that subject.

## A.    *Under Tenth Circuit law, a blanket privilege assertion fails as a matter of law.*

The USAO fails to pair any of its purported privileges to any of the specific testimony sought. Instead, it simply tosses every conceivable privilege onto the page and claims that the testimony is covered by either one, some, or all of those privileges. This is insufficient. "The burden of

---

[55] D.E. 340 at 11-12.

proving a communication is privileged is upon the person asserting the privilege."[56]

The Tenth Circuit has repeatedly condemned blanket assertions of privilege — identical to those made by the USAO here: "A general refusal to cooperate is not enough. [A party] must normally raise the privilege as to each record sought and each question asked" so that the district court can rule with specificity.[57] For instance, in 1983, the Tenth Circuit upheld the district court's denial of a motion to quash based on the same failure to specify a particular privilege to particular testimony: it affirmed — and quoted — the district court's observation that "this failure…was sufficient in and of itself to justify denying the motion to quash."[58]

It is the same here. The USAO has the burden of establishing these privileges, and "broad declarations simply do not meet this burden."[59] And for good reason: the USAO's generic submission robs the Court of the ability to determine whether the USAO's privilege assertions are valid, effectively precluding any review of the USAO's claims. So the privilege claims fail because the USAO bears the burden of proving them but has not done so.

---

[56] *United States v. Bump*, 605 F.2d 548, 551 (10th Cir. 1979) (citation omitted).
[57] *United States v. Hodgson*, 492 F.2d 1175, 1177 (10th Cir. 1974) (citations omitted).
[58] *Matter of Grand Jury Subpoena Duces Tecum Issued on June 9, 1982, to Custodian of Records*, 697 F.2d 277, 279 n.1 (10th Cir. 1983).
[59] *Id.*

**B.    *Even if properly invoked, the USAO explicitly and implicitly waived any privileges by repeatedly and voluntarily disclosing the matters in pleadings, exhibits, and testimony.***

Assuming arguendo that the privileges actually applied, the USAO has explicitly waived them. The Supreme Court has recognized that a party "may forfeit a privilege by exposing privileged evidence…."[60] For example, one may waive the attorney-client privilege by "disclos[ing] the substance of an otherwise privileged communication to a third party."[61] One may similarly waive the work-product doctrine's protection by divulging materials purportedly covered by it.[62] A party likewise waives both the law-enforcement privilege[63] and the deliberative-process privilege[64] by voluntarily disclosing the contents of otherwise privileged material.

1.    *The USAO explicitly waived any applicable privilege by repeatedly disclosing information covered by the privilege.*

Here, the USAO employees explicitly waived any applicable privileges by repeatedly disclosing their internal communications in this and related cases. For instance, during a September 7, 2016 hearing, Special Assistant United States Attorney Erin Tomasic made a lengthy statement before the

---

[60] *United States v. Salerno*, 505 U.S. 317, 323 (1992) (citations omitted).

[61] *United States v. Ryans*, 903 F.2d 731, 741 n.13 (10th Cir. 1990).

[62] *Grace United Methodist Church v. City of Cheyenne*, 427 F.3d 775, 801-802 (10th Cir. 2005).

[63] *In re Sealed Cases*, 121 F.3d 729, 741 (D.C. Cir. 1997).

[64] *Florida House of Representatives v. U.S. Dept. of Commerce*, 961 F.2d 941, 946 (11th Cir. 1992)

Court regarding what the government knew when it obtained recordings of attorney-client meetings, as well as the USAO's policies regarding listening to telephone calls between attorneys and clients.[65] And in *United States v. Dertinger*, Assistant United States Attorney Kim Flannigan testified for a number of hours regarding those same issues.[66] As part of that testimony, the USAO admitted into evidence its own internal communications detailing how it seized recordings of attorney-client meetings.[67]

The USAO also submitted a host of pleadings to this and other courts containing numerous factual assertions about its policy and practice of obtaining attorney-client recordings — all signed by USAO employees.[68] These all constitute waivers — explicit ones — of any privilege that may have applied to this information.

---

[65] *United States v. Black*, Hrng. Tr. at 13:10-38:10 (Sep. 7, 2016).

[66] *Dertinger*, Hrng. Tr. at 287-490 (Jun. 21, 2017).

[67] *Id.*

[68] *E.g.*, D.E. 133 at 28 (denying its intent to obtain recordings); 163 at 3-5 (recounting how it obtained the recordings); see also *United States v. Dertinger*, Case No. 14-20067-JAR, D.E. 453 at 6-10 (explaining procedure of how recording were obtained); *United States v. Herrera-Zamora*, Case No. 14-CR-20049-CM, D.E. 176 (disclosing that the USAO had intentionally eavesdropped on attorney-client conversations); *United States v. Huff*, Case No. 14-CR-20067-CM, D.E. 529 (same); D.E. 536 (disclosing that multiple members of the USAO and law enforcement had listened to attorney-client recorded call and intended to use its contents against the client at sentencing).

2.   *The USAO implicitly waived any applicable privileges by using privileged information to advance its position in this litigation.*

Along with these explicit waivers, courts may imply a waiver when the interests of fairness so require.[69] And fairness considerations arise when a party tries to use privilege as both "a shield and a sword."[70] "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications *to support its claim or defense* and then shield the underlying communications from scrutiny by the opposing party."[71]

The USAO has implicitly waived its claimed privileges. Throughout this and related cases, the USAO has repeatedly made factual assertions — in pleadings, exhibits, and testimony — concerning all of the topics sought in the testimonial subpoenas. No one compelled it to divulge this information; it chose to do so in order to advance its position.

Like all choices, it carried a consequence. Having opted to use this privileged information as a sword in an unsuccessful attempt to halt this and related proceedings, the USAO cannot transform it back into a privilege shield. By disclosing those facts in the course of this litigation, it has abdicated any claim to privilege it may have once held.

---

[69] *In re Sims*, 534 F.3d 117, 132 (2d. Cir. 2008).
[70] *Id.* (citation and quotations omitted).
[71] *In re Grand Jury*, 219 F.3d 175, 182 (2d. Cir. 2000) (emphasis added).

IV.   **The USAO's argument — that the testimonial bases are not specific enough — lacks sufficient specificity to allow a response.**

The USAO's fourth basis to quash the subpoenas is specificity. It claims that the bases identified for testimony are so broad that the FPD "is attempting to conduct a far-reaching investigation into the operations of the United States Attorney's Office, not obtain specific admissible testimony relevant to the defendants and the case before the Court."[72]

At the outset, the USAO's argument on this point is not a model of clarity. Consisting of a single paragraph,[73] it begins with the conclusion that the subpoenas do not seek admissible testimony relevant to the defendants in this case. It then proceeds to quote from the topics listed in the FPD's subpoena requests. Yet it utterly fails to explain why its quoted topics lack the required specificity, relevance, or admissibility.

Ironically, the USAO's own lack of specificity in its specificity argument makes it functionally impossible to answer.   To be sure, the Court cannot order Rule 17 subpoenas unless a movant shows specificity. But the USAO fails to cite this requirement, or advance an argument as to why the FPD's testimonial bases fall short of it. In other words, the FPD cannot discern the precise basis of the USAO's objection on this point, and remains hesitant to

---

[72] D.E. 340 at 13.
[73] D.E. 340 at 13.

speculate. Suffice to say, the FPD drew its summaries as precisely as it could under the circumstances. To the extent the USAO disagrees, it fails to point out how the summaries include more than necessary. And to the extent that the USAO's argument may be read to mean that that the sought-after testimony goes beyond the criminal allegations made against the named defendants in the above-captioned case, that ground was well trod above.

## V.    The separation-of-powers doctrine does not preclude the Court's investigation.

The USAO's fifth and final objection to the subpoenas is a separation-of-powers argument. It offers no new argument here, instead relying on the claims it advances in its motion to terminate the investigation.[74] Likewise, the FPD incorporates its response to that motion to address this final argument.

But even if that doctrine did stop the Court's investigation, it would not supply a basis to quash these subpoenas. As explained above, the FPD's requests do not depend on the Court's investigation but on its standing as a guardian of its clients' Sixth Amendment rights.

---

[74] D.E. 340 at 14.

### Conclusion

For over a year, the United States Attorney's Office has assured the Court that a thorough examination of its office would reveal no intentional constitutional violations. It tried to assuage the Court that, even though no such examination was necessary, it was so confident of the results — and so eager to clear its name — that it would forego any procedural challenges, just so the facts could come to light and exonerate its reputation.

None of it was true. It made grand gestures to transparency while only dragging its feet. It destroyed evidence, violated orders, broke into the Court's chambers, and steadfastly refused to hand over the evidence that would answer these allegations once and for all. But the United States Attorney's Office does not have a Fifth Amendment right against self-incrimination. Since it will not voluntarily turn over evidence of its own wrongdoing, it leaves this Court with no choice but to compel it.

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785.232.9828
Fax: 785.232.9886
Melody_Brannon@fd.org

s/ Branden A. Bell
BRANDEN A. BELL #22618
Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Branden_Bell@fd.org

s/ Kirk C. Redmond
KIRK C. REDMOND #18914
First Assistant Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Kirk_Redmond@fd.org

s/ Rich Federico
RICH FEDERICO #22111
Staff Attorney
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
Rich_Federico@fd.org

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2017, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties in the case.

s/ Melody Brannon
MELODY BRANNON, KS # 17612