IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS
(Kansas City Docket)

| | |
|---|---|
| UNITED STATES OF AMERICA,  ) | |
|     Plaintiff,  ) | |
| ) | |
| v.  ) | Case No. 16-20032-06-JAR |
| ) | |
| DAVID BISHOP,  ) | |
|     Defendant.  ) | |

**UNITED STATES' RESPONSE TO DEFENDANT DAVID BISHOP'S MOTION TO SUPPRESS EVIDENCE**

The United States of America, by and through D. Christopher Oakley, Assistant United States Attorney, responds to Defendant David Bishop's Motion to Suppress Evidence (Doc. 338). As discussed below, the evidence from the April 8, 2016 search warrant was lawfully obtained and should not be suppressed. However, the April 14, 2016 search warrant contained an error in the description of the residence and the government will not seek to introduce any evidence obtained during the April 14, 2016 search warrant.

**RELEVANT FACTS**

The defendant, David Bishop, resided at 200 Gentry, Sedalia Missouri, along with co-defendant Cathy Rowlette[1]. Bishop and Rowlette were involved in the introduction of contraband into Correction Corporation of America – Leavenworth (CCA). Bishop and Cathy Rowlette assisted Cathy Rowlette's son, Stephen, an inmate at CCA, introduce and distribute contraband inside the

---

[1] Cathy Rowlette has pleaded guilty to Providing Contraband in Prison, a class B misdemeanor, and was sentenced to probation.

facility by obtaining and depositing proceeds from the sale of contraband. (See *Complaint*, Doc. 1, filed 4/9/16).

During the investigation, agents executed two search warrants at 200 Gentry. The first was executed on April 8, 2016 ("April 8 search warrant") and the other on April 14, 2016 ("April 14 search warrant").

### *April 8, 2016 search warrant*

The April 8 search warrant was based upon an affidavit prepared by a United States Secret Service Agent and signed by a Pettis County, Missouri state court judge. Both the application and warrant specifically and accurately described 200 Gentry, Sedalia, Missouri, as the location to be searched.

The affidavit set forth in detail the crimes under investigation – a contraband smuggling operation at CCA. The affidavit set forth a description of the individuals involved, including Catherine Rowlette and David Bishop.

Rowlette was described as "[f]acilitating drug distribution within Correction Corporation of America due to receiving monies from outside the facility, depositing such monies and working directly with son Stephen Rowlette in advising when such monies are received and/or transferred as indicated through prison phone calls." The affidavit described Defendant Bishop's role as "[f]acilitating drug distribution within Correction Corporation of America by receiving and distributing Western Union moneis as indicated through prison phone calls. Believed to be in contact with BLACK, although the toll contacts have not been identified to date."

The affidavit further set forth that Catherine Rowlette discussed with Stephen Rowlette, an inmate at CCA, wire transfers to and from other CCA inmates. The affidavit stated that the calls involved coded language, but based upon the agents' knowledge of the investigation, the affidavit said the agent believed the calls related to the sale and distribution of drugs inside of the facility. The affidavit quoted recorded phone conversations between Catherine and Stephen Rowlette where Stephen Rowlette discussed transferring money to other inmates.

The affidavit described Defendant Bishop's history of depositing money into the inmate account of Karl Carter. The affidavit stated that Carter and Bishop "have no social or familiar relationship." Further, the affidavit stated that the agent has reviewed records that established that Bishop's only known source of legitimate income was $1321 he received each month from social security benefits. Defendant David Bishop deposited $11,000 into Carter's inmate account over a three and one half month period, during which Defendant Bishop received only $6,605 in income. The last deposit, as set forth in the affidavit, occurred March 15, 2016, less than a month prior to the search warrant.

The affidavit said that Catherine Rowlette and Defendant Bishop collected proceeds from illegal drug trafficking and delivered the proceeds to inmates at CCA through wire transfers and U.S. mail. The affidavit stated that the agent knows that persons who launder drug proceeds "often generate or caused to be generated receipts, books, ledgers, wire transfer instructions and

3

confirmations, routing numbers, account numbers, passwords, PIN's, bank statements, records reflecting the locations of safe deposit boxes, phone numbers and contact information of associates and co-conspirators.  It further stated that persons who engage in money laundering often generate records related to real estate and personal property and often store those items at their personal residence. Finally, the affidavit identified 200 Gentry Avenue, Sedalia, Missouri as "the personal residence of CATHERINE ROWLETTE and DAVID BISHOP."

The search warrant authorized the seizure of documents and records related to financial transactions.  Specifically, the warrant authorized the agents to seize:

> For the period January 1, 2010 through present, all documents, records, and tangible items relating to or indicative of financial or monetary transactions by, with, through, or on behalf of CORPORATE CORRECTIONS OF AMMERICA A.K.A. CCA [followed by a specific list of CCA corrections officers, inmates, and associates of inmates] including but not limited to:
>
> Any and all records made in connection with the purchases and/or sale of real estate including records which indicate the location of the property, appraisal reports, title files, dates of the real estate closing, the name of the parties to the real estate transactions, and the closing sheet which reflects the source and distribution of the proceeds from the sale and/or purchase, including the distribution checks;
> Other financial records including General Ledger, General Journals, all Subsidiary Ledgers and Journals, Gross Receipts and income records, Cash Receipts and Disbursement records and/or Journals, all sales and expense invoices including all invoices documenting expense paid by case (currency) or bank check (cashier or teller checks) and retained copies of any bank checks (cashier or teller checks.)
> All financial statements, bookkeeper's and/or accountant's work papers used in the preparation of tax returns.  Retained copies of all federal and state income tax returns.

> Financial account records including passbooks or bank statements, records reflecting dates and amounts of deposits, withdrawals, interest, debit and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, and records disclosing the disposition of withdrawals, wire receipts, debit and credit memos. Records of any certificates of deposit, money market certificates, U.S. Treasure Notes or Bills purchased, memos, Forms 1099 issued, wire transfer instructions and confirmations, routing numbers, account numbers, passwords, PIN's bank statements, records reflecting the locations of safe deposit boxes, phone numbers and contact information of associates and co-conspirators.

The warrant defined "records," "documents," and "information" to include information stored digitally such as in computer hardware and other devices.

During the execution of the April 8 search warrant, agents seized sixteen items including cash, receipts, documents, prepaid cards, bank receipts, and digital devices. (See *Evidence Custody Receipt* dated 4-8-16, Attachment A).

### *April 14, 2016 search warrant*

As the defendant points out, the April 14 search warrant contained an error—although the affidavit clearly established the premises to be searched was 200 Gentry, and included photographs of that residence, the search warrant erroneously listed the address as a location in Kansas City, Missouri, which belonged to co-defendant Anthon Aiono, and which had also been searched April 8, 2016 pursuant to a warrant.

During the execution of the April 14 search warrant, agents seized twenty-six items. (See *Evidence Custody Receipt* dated 4-14-16, Attachment B). The government will not seek to introduce any of those items.

The defendant's motion makes a particularity argument – that the warrant failed to particularly identity the place to be searched. The motion

asks that evidence from both the April 8 and April 14 search warrants be suppressed. However, as the defendant acknowledges, it is only the April 14 search warrant that contained any errors in describing the location of the place to be searched. The government will not seek to introduce evidence obtained from the April 14 search warrant at trial. However, since the defendant's motion relates to both search warrants, the government addresses the particularity argument as it relates to the April 8 search warrant.

**ARGUMENT AND AUTHORITIES**

    **I. Search warrants generally**

Warrantless searches "are per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967). Therefore, search by warrant is preferred. "The point of the Fourth Amendment . . . is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. Its protection consist in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson v. United States*, 333 U.S. 10, 13-14 (1948).

A magistrate considering whether probable cause exists to issue a search warrant is tasked with finding that "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

A court reviewing a magistrate's decision to issue a search warrant reviews the sufficiency of the affidavit by looking at the totality of the circumstances and simply ensuring "that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Tisdale*, 248 F.3d 964, 970 (10th Cir. 2001), quoting *Gates*, 462 at 238.  Likewise, in reviewing a warrant authorized by a state judge, the reviewing district court must "accord great deference to the probable-cause assessment of the state court judge who issued the warrant." *United States v. Pulliam*, 748 F.3d 967, 971 (10th Cir. 2014) (quotation omitted).  A "state judge's decision to issue a warrant is entitled to great deference and [a reviewing court] need only ask whether, under the totality of the circumstances presented in the affidavit, the state judge had a substantial basis for determining that probable cause existed."   *United States v. Perrine*, 581 F.3d 1196, 1201 (10th Cir. 2008) (internal quotations omitted).  "Accordingly, even in a doubtful or marginal case" the reviewing court must "defer to the magistrate's determination of probable cause."  *Pulliam*, 748 F.3d 16 971 (quotation omitted).

**II.  The April 8 search warrant adequately described the residence to be searched**

The Fourth Amendment to the United States Constitution provides, in part, that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Amend IV.

Unlike the April 14 search warrant, the April 8 search warrant accurately described the residence.  The affidavit and search warrant each described the

7

location as "200 Gentry Avenue, Sedalia, Missouri – One story, tan, wood frame single family residence with white window trim located on the Northwest corner of West 2nd & Gentry, Sedalia Missouri." Further, the search warrant affidavit contained two photographs of the residence. The defendant acknowledges that April 8 search warrant and application contained the proper address. See *Def's Motion*, Doc. 338 at 9, ("In contrast, the application for the April 8, 2016 search of the same residence (having the correct address on both the application and subsequent warrant issued) contain the signature, date and timestamp.")

The particularity requirement requires that the warrant particularly describe the place to be searched and the persons or things to be seized. *United States v. Webster*, 809 F.3d 1158, 1164 (10th Cir. 2016). The particularity requirement, as it relates to the place to be searched, seeks to avoid the threat of general and exploratory searches. *United States v. Lora-Solano*, 330 F.3d 1288, 1294 (10th Cir. 2003) (upholding anticipatory search warrant despite one digit error in address of place to be searched).

Here, as the defendant agrees, there was no error in the address or description of the house to be searched. Therefore, there is no particularity problem with the April 8 search warrant. Further, the defendant cannot prove any connection between the April 8 search warrant and the error in the April 14 search warrant.

It is the defendant's burden to prove a factual nexus between the Fourth Amendment violation and the seizure of the evidence sought to be suppressed.

*Tisdale*, 248 F.3d at 970. The defendant cannot meet his burden because the April 8 search warrant was supported by probable cause and accurately and particularly described the location to be search.

**III. The "fruit of the poisonous tree" does not apply to suppress evidence from the April 8 search warrant, which was executed prior to the defective warrant**

The exclusionary rule requires suppression of evidence obtained from a Fourth Amendment violation. *Mapp v. Ohio,* 367 U.S. 643, 648 (1961). Additionally, the "fruit of the poisonous tree" doctrine requires suppression of evidence that would not have been obtained, but for the execution of an unlawful search. "We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, grating establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint. *Wong Sun v. United States*, 371 U.S. 478, 487-88 (1963) (internal quotation omitted).

Once a defendant establishes that a search leading to evidence was unlawful, the government must

> prove that the evidence sought is not 'fruit of the poisonous tree,' either by demonstrating that the evidence would have been inevitably discovered, was discovered through independent means, or was so attenuated from the illegality as to dissipate the taint of the unlawful conduct.

*United States v. Nava-Ramirez*, 210 F.3d 1128, 1131 (10th Cir. 2000) (citations omitted).

9

Here, the fruit of the poisonous tree doctrine does not require suppression of the April 8 evidence. That evidence was obtained several days prior to the execution of the flawed April 14 search warrant, proving the evidence was discovered by means that were independent from the April 14 search warrant.

### III. There is no basis to suppress David Bishop's statements made on April 8, 2016.

In his motion to suppress, Defendant Bishop sets forth a list of items obtained from the search warrant that he wishes to suppress, and includes "17. Post arrest statements by Defendant David Bishop at time and place of search." (*See Def's Motion*, Doc. 338 at 2). However, the defendant does not cite a basis for suppression of his statements.

The defendant's statements were made after he was informed of his *Miranda*[2] rights and voluntarily agreed to speak with investigating agents. He does not allege the statements were given involuntarily or that he did not understand his rights. He merely alleges that the statements should be suppressed as "fruit of the poisonous tree." His interview occurred several days prior to the April 14 search warrant and was independent from the search warrant that would occur days later. There is no basis upon which to suppress the defendant's voluntary statements.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**CONCLUSION**

The government will not seek to admit any evidence seized from the April 14 search warrant. However, because the April 8 search warrant particularly described the location to be search and probable cause existed for the issuance of the warrant, any evidence seized from the April 8 search warrant is admissible. The "fruit of the poisonous tree" doctrine does not require suppression of evidence which was obtained prior to the flawed search. Therefore, neither the April 8 evidence nor the defendant's statements on that day should be suppressed.

    Respectfully submitted,
THOMAS E. BEALL
ACTING UNITED STATES ATTORNEY

/s/ D. Christopher Oakley
D. Christopher Oakley #19248
Assistant United States Attorney
500 State Avenue
Suite 360
Kansas City, KS 66106
Phone: 913-551-6738
Fax: 913-551-6541
chris.oakley@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January, 2018, I electronically filed the foregoing motion with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ D. Christopher Oakley
D. Christopher Oakley #19248
Assistant United States Attorney