```
 1                   UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF KANSAS
 2

 3    UNITED STATES OF AMERICA,

 4         Plaintiff,

 5    v.                            Docket No. 16-20032-02-JAR

 6    KARL CARTER,                  Kansas City, Kansas
                                    Date:  08/14/2018
 7         Defendant.

 8    ....................

 9
                          TRANSCRIPT OF
10                      STATUS CONFERENCE
            BEFORE THE HONORABLE JULIE A. ROBINSON
11               UNITED STATES DISTRICT JUDGE

12
      APPEARANCES:
13
      For the Government:  Mr. Steven D. Clymer
14                         (Appeared telephonically)
                           Department of Justice - USAO
15                         Lrm Eckert, William
                           100 S. Clinston Street
16                         Suite 9000
                           Syracuse, New York 13261
17
                           Mr. Duston J. Slinkard
18                         Office of United States Attorney
                           444 Southeast Quincy
19                         Suite 290
                           Topeka, Kansas 66683-3592
20
                           Mr. Stephen R. McAllister
21                         (Appeared telephonically)
                           Office of United States Attorney
22                         500 State Avenue
                           Suite 360
23                         Kansas City, Kansas 66101

24

25
```

```
 1    APPEARANCES:

 2    (Continued)

 3    For the Defendant Karl Carter:
                        Mr. David J. Guastello
 4                      (Appeared telephonically)
                        The Guastello Law Firm, LLC
 5                      811 Grand Boulevard
                        Suite 101
 6                      Kansas City, Missouri 64106

 7    For the Movant Federal Public Defender:
                        Ms. Melody J. Brannon
 8                      Mr. Kirk C. Redmond
                        Mr. Branden A. Bell
 9                      Office of Federal Public Defender
                        117 Southwest Sixth Street
10                      Suite 200
                        Topeka, Kansas 66603
11
      For the Special Master David R. Cohen:
12                      Mr. David R. Cohen
                        (Appeared telephonically)
13                      David R. Cohen Co., LPA
                        24400 Chagrin Boulevard
14                      Suite 300
                        Cleveland, Ohio 44122
15
                        Ms. Alleen VanBebber
16                      (Appeared telephonically)
                        VanBebber Law Firm, LLC
17                      2029 West 95th Street
                        Leawood, Kansas 66206
18

19

20

21

22
      _____
23
              Kelli Stewart, CSR-KS, CRR-MO, RPR, CRR, RMR
24                     Official Court Reporter
              259 U.S. Courthouse, 500 State Avenue
25                   Kansas City, Kansas 66101
```

```
 1                    (9:05 a.m., proceedings commenced).
 2              THE COURT:  All right.  You can be seated.
 3   All right.  We are on the record in United States versus
 4   Lorenzo Black, the case number is 16-20032.  So let's
 5   start with appearances in the courtroom.
 6              MR. SLINKARD:  Good morning, Your Honor.
 7   The government appears by Duston Slinkard, as well as
 8   Steve McAllister and Steve Clymer, who are by telephone.
 9              THE COURT:  All right.
10              MS. BRANNON:  Your Honor, the Federal Public
11   Defender appears by Melody Brannon, Kirk Redmond and
12   Branden Bell.
13              THE COURT:  All right.  So Mr. Clymer and
14   Mr. McAllister are on the telephone and their
15   appearances have been entered on behalf of the United
16   States.
17              Mr. Guastello, are you on the phone?
18              MR. GUASTELLO:  I am, Your Honor.
19              THE COURT:  If you'll enter your appearance,
20   please.
21              MR. GUASTELLO:  David Guastello appearing on
22   behalf of Karl Carter, who has waived his appearance for
23   purposes of today's hearing.
24              THE COURT:  All right.  Is Mr. Black's
25   counsel on the phone?  No?
```

1          Okay.  Mr. Cohen, are you on the phone?

2          SPECIAL MASTER COHEN:  I am, Judge, thank

3   you.  And I'll just remind the folks in the courtroom

4   that unless they're at a microphone, we cannot hear them

5   on the phone.

6          THE COURT:  Okay.  And, Ms. VanBebber,

7   counsel for the Special Master, are you on the phone?

8          MS. VANBEBBER:  Yes, I am.  Thank you, Your

9   Honor.

10          THE COURT:  Okay.  And then I believe

11   there's someone from CoreCivic general counsel's office

12   on the phone?  Is there someone from CoreCivic on the

13   phone?

14          SPECIAL MASTER COHEN:  She may have muted

15   her phone, but Alyssa Brockert was on the phone.  Oh,

16   there she is.

17          MS. BROCKERT:  I apologize, Your Honor.

18   Here I am.  Alyssa Brockert on behalf of Interested

19   Party CoreCivic.

20          THE COURT:  Okay.  Is there anyone else on

21   the phone that I haven't called on?  All right.  No one

22   else.

23          Okay.  All right.  So this, of course, was

24   set as a status conference in this case.  Several things

25   I'd like to accomplish this morning:

 1              First, I guess, unfinished business.  There

 2   were a number of questions that I discussed with Mr.

 3   Clymer at the last status conference, and I'd like to go

 4   over those with him, those questions that he was going

 5   to check on answers; and then

 6              Second, advise you of what I'm contemplating

 7   for a hearing date.  And I will be issuing a-- an order

 8   that sets out the hearing date and then deadlines for

 9   pretrial submissions or pre-hearing submissions.  I'll

10   do that in pretty short measure.

11              All right.  But I do have a number of

12   questions, and I think they're all directed to you, Mr.

13   Clymer, although, Mr. McAllister and Mr. Slinkard, if

14   you need to weigh in on them, that's fine too.

15              So the first thing is that, Mr. Clymer, you

16   were going to request permission to provide a written

17   delegation of authority to the Court and to the parties

18   in terms of what's been delegated to-- I guess either

19   the delegation has been withdrawn or-- in other words,

20   what pieces is Justice Department handling and what

21   pieces remain in the authority of Mr. McAllister?

22              So what can you tell me about that, Mr.

23   Clymer?

24              MR. CLYMER:  I have not received

25   authorization to disclose that, Your Honor.  I am still

1   discussing that with the Office of the Deputy Attorney

2   General.  I believe it's possible I'll be able to

3   disclose the original delegation order, but I'm not sure

4   I'm able to disclose the e-mail traffic regarding, you

5   know, the-- the tasking with respect to the

6   negotiations.

7            THE COURT:  Have you-- not that I'm asking

8   you what you've discussed, what the content is, but have

9   you at least had a discussion with Mr. McAllister so

10  that he has some understanding as to what his office is

11  still taking the lead on?

12           MR. CLYMER:  Your Honor, Mr. McAllister had

13  the same e-mail traffic that I have.

14           THE COURT:  So have you had a discussion

15  about where the lines of delegation are drawn?

16           MR. CLYMER:  Well, I-- with respect to that

17  e-mail, I believe we did.  But other than that, we have

18  not had a discussion since the time of the last hearing.

19           THE COURT:  Okay.  So--

20           MR. CLYMER:  At least to my recollection.

21           THE COURT:  So the e-mail traffic you're

22  talking about is something that occurred after the last

23  status conference?

24           MR. CLYMER:  No, Your Honor.  I'm sorry I

25  wasn't clear.  There was e-mail traffic before the last

1    status conference regarding my role in the negotiations

2    that had taken place previously without me.

3              THE COURT:  Okay.  Well, my recollection is

4    at the last status conference-- and I don't want to

5    speak for Mr. McAllister, he's on the phone, he can

6    speak for himself.  But my recollection was there was

7    not clarity with respect to what, Mr. Clymer, you were

8    handling on behalf of Justice and what remained with the

9    U.S. Attorney's Office.

10             What you're telling me is since the last

11   status conference there's been no discussion between you

12   and Mr. McAllister about that question; is that fair?

13             MR. CLYMER:  I have not discussed with Mr.

14   McAllister, Your Honor, but I think that there is some

15   clarity about something that I wasn't certain about

16   before, and I can explain that if the Court would like.

17             THE COURT:  All right.  Go ahead.

18             MR. CLYMER:  You had asked me, Your Honor,

19   about the-- both the pending and the future 2255

20   motions.

21             THE COURT:  Correct.

22             MR. CLYMER:  And Mr.-- I told you I hadn't

23   been advised about what my role was, and Mr. McAllister

24   told you at the hearing that his understanding was that

25   his office would be handling that.  I believe that Mr.

1   McAllister's understanding is correct with a caveat.

2          My role I believe, Your Honor, pertains to

3   responding to requests for information from the Court

4   and from the Special Master and from any parties to the

5   litigation for internal DOJ documents, from testimony

6   for U.S. Attorney and other DOJ employees, and that sort

7   of thing.  If the-- there are stand-alone 2255s that

8   doesn't involve requests for that sort of information

9   beyond what the standard discovery rules are in 2255

10  litigation, I believe Mr. McAllister's interpretation is

11  correct, that his office would handle that and not me.

12          THE COURT:  Okay.  So let me make sure I

13  understand.  So let's say there is-- well, every 2255 is

14  a stand-alone because it's a separate-- separate suit.

15  But let's say there's a 2255 and in that 2255 there's a

16  response for, in your view, internal DOJ documents.  Are

17  you handling the-- that entire 2255 or are you only

18  handling responding to such requests for production, et

19  cetera?

20          MR. CLYMER:  I have not received guidance

21  that specific, Your Honor, so I can't honestly answer

22  that question.  I believe that as long as this

23  litigation is-- continues and there are requests for

24  internal DOJ documents that the Department believes are

25  beyond what the rules of discovery permit, then I will

1  be responding to those requests.

2         THE COURT:  Well, you-- I don't know if

3  you're aware, but yesterday the Federal Public Defender

4  on behalf of their-- some of their clients filed 2255s

5  based on video-recordings.  So, you know, last time we

6  talked about pending 2255s, I told you I thought we all

7  anticipated a flood of future 2255s.  I think the flood

8  has already begun.  And those are just my cases and

9  based on their-- what they filed, it appears that they

10 intend to file more, and that's not to mention people

11 like, you know, private defense counsel.

12         But so I guess what I'm hearing from you,

13 Mr. Clymer, is you still don't have an answer as to

14 whether you're handling that 2255 litigation or not.

15         MR. CLYMER:  No, I-- I think the answer is

16 I'm not, Your Honor, unless there-- there are requests

17 for the sorts of internal documents that we're dealing

18 with in this litigation or testimony from the U.S.

19 Attorney employees or Department of Justice employees.

20 But if they're litigated the way 2255s typically are,

21 I-- my understanding is that I would not have a role in

22 that.

23         To put it differently, Your Honor, and

24 just-- and we're speaking a little hypothetically here,

25 and so I have to apologize because I'm a little

1    uncertain, but let's-- as I mentioned at the last

2    hearing, the government has conceded that the Court can

3    provide the relief that all the Rule 41 plaintiffs are

4    entitled to.  We have no objection to the Court

5    returning the property that all the Rule 41 plaintiffs

6    have brought.

7         We have moved to dismiss the last remaining

8    case here.  If the Court were to grant that and end the

9    *Black* litigation-- (reporter interruption).

10        THE COURT:  Wait, wait, wait.  We're having

11   trouble hearing you.  There's some interference or

12   something.  I'd ask everybody else to mute, and I-- I'm

13   assuming that's-- the interference isn't from you.  But

14   go ahead, Mr. Clymer, if you can repeat what you just

15   said.

16        MR. CLYMER:  Sure.  Yes, Your Honor.

17   Assuming hypothetically that the-- that the Court

18   granted all the relief that the defendants in *Black* and

19   the Rule 41 plaintiffs are entitled to - and the

20   government does not oppose the Court doing that - and

21   were to end the *Black* litigation and all that was left

22   was 2255 litigation, which the government believes is

23   the appropriate forum to address any defendant's claims

24   that their Sixth Amendment rights have been violated, I

25   don't-- I would see my role as ending, absent additional

1   demands on the government for documentation or testimony

2   beyond the scope of discovery permitted by Rule 2255.

3            In other words, I was originally appointed,

4   Your Honor, because of requests for documentation and

5   later testimony from the U.S. Attorney and Department of

6   Justice officials that the Department believes is beyond

7   the scope of what the law permits.  I believe that were

8   those demands to be resolved and the *Black* litigation to

9   be over, then my role would likely be over as well.

10            THE COURT:  All right.  So in other words,

11   if there was a 2255 filed, Mr. McAllister would have

12   authority to negotiate with the defendant, the

13   petitioner in that 2255?

14            MR. CLYMER:  That's my understanding, Your

15   Honor, within the parameters-- as Mr. McAllister said to

16   the Court at the last hearing, with the guidance that

17   the Deputy Attorney General's Office has received.  Now,

18   I can't tell you that Mr. McAllister has unfettered

19   authority, I can't speak for what involvement the DAG's

20   Office may or may not want to have.

21            But my understanding is, Your Honor, is that

22   I would not be involved in that litigation unless the

23   Deputy Attorney General's Office told me what it would

24   be.  At this point I have no reason to believe that that

25   would be the case.

1           THE COURT:  Well, I have reason to believe

2    that because what blew up the settlement was Mr.

3    McAllister and-- and Ms. Brannon's negotiations

4    concerning anticipated future 2255s.

5           MR. CLYMER:  And-- and, Your Honor, I

6    believe that Mr. McAllister-- Mr. McAllister said he

7    would be litigating the future 2255s consistently with

8    the guidance that the Deputy Attorney General's Office

9    has already provided to him in that letter dated July--

10   I don't have the date with me, the letter that was

11   marked at the last hearing as-- as an exhibit--

12           THE COURT:  Okay.

13           MR. CLYMER:  -- from the DAG's Office.

14           THE COURT:  I want to call on Mr. Slinkard,

15   I think he has something to add to this.  But before I--

16   just before I do that, you've said this I think in

17   writing and said it again or maybe said at the last

18   hearing that the government does not oppose granting of

19   Rule 41s.

20           But my recollection is, at least with

21   respect to some of the Rule 41s, is they asked for more

22   relief than just return of the-- of the recordings,

23   which, of course, the recordings are in the-- in the

24   Court's possession anyway, but they asked for relief

25   beyond that.  Are you conceding they're entitled to all

1   of the relief they asked for in all of those pending

2   41s?

3               MR. CLYMER:  We're conceding that they're

4   entitled to the relief that Rule 41 provides, Your

5   Honor, which is the return of property.  I don't know

6   what relief that they are seeking beyond what Rule 41

7   permits, but I don't think we can agree that they're

8   entitled to relief beyond what the law permits.

9               THE COURT:  All right.  Mr. Slinkard.

10              MR. SLINKARD:  And, Your Honor, I just want

11  to try to clarify what our understanding is, and if Mr.

12  McAllister wants to weigh in, I'd invite him to do so.

13  But originally Mr. Clymer was appointed as Special

14  Attorney with the eye towards managing the case with

15  respect to the Special Master's Phase III investigation

16  and the information requests associated therewith, and

17  the local U.S. Attorney's Office was going to continue

18  to handle the prosecution of the named defendants in

19  *Black*.

20              To my knowledge, that has not shifted.  I

21  can see why the Court sees it as a shift.  But from our

22  perspective, the DAG's decision-- the Deputy Attorney

23  General's decision with regard to the proposed

24  settlement matters was, as we understood it, his

25  exercise of his authority in the chain of command being

1    higher than the U.S. Attorney.  So not, in other words,

2    because the U.S. Attorney was not in his lane, if you

3    will, but that the Department was making a different

4    decision at a higher level.

5            So then the direction came down-- the e-mail

6    traffic Mr. Clymer refers to I think we took to mean

7    that going forward, because with the sentencing of

8    Lorenzo Black and the sentencing of Anthon Aiono and the

9    pendency of the motion to dismiss with respect to Karl

10   Carter and the dismissal of David Bishop, there were no

11   remaining issues in the underlying prosecution.  And so

12   for consistency sake, to speak with one voice to avoid

13   any inconsistencies, Mr. Clymer was to be the party

14   speaking to the Court, speaking to counsel with respect

15   to the issues.

16           So, again, I can see from the Court's

17   perspective why it could be perceived as a shifting of

18   his role vis-a-vis the role of the U.S. Attorney, but we

19   didn't take the decision that the DAG communicated in

20   its letter as being an expansion of Mr. Clymer's role.

21   It was the DAG making a determination over whether it

22   approved or did not approve of something that had been

23   done locally as the higher authority in the Department

24   of Justice.  And then going forward we were, you know,

25   given to understand that Mr. Clymer would be the

1    spokesperson with respect to issues.

2           So with respect to 2255s, unless we hear

3    differently, our expectation is that we would litigate

4    those, but that we would do so consistent with any

5    positions taken by Mr. Clymer vis-a-vis the information

6    obtained from the government that he described, any

7    discovery obtained from the government, that we would

8    take positions consistent with what he does in *Black*.

9           And with respect to settlement authority or

10   anything else, unless again we receive different

11   direction, I think we believe we'd probably have it in

12   the individual cases, but it would have to be exercised

13   consistent with the management directive we received

14   from the Deputy Attorney General.  So for all intents

15   and purposes, we would be finding our way or seeking

16   approval if we were going down that road.

17          But as far as litigating them goes, our

18   litigation positions I believe would be consistent with

19   whatever were taken in the underlying *Black* Phase III

20   investigation by Special Attorney Clymer.

21          THE COURT:  All right.  Thank you, Mr.

22   Slinkard.

23          Mr. McAllister, is there anything that you

24   wanted to add to that?

25          MR. McALLISTER:  No, Your Honor.  Mr.

 1   Slinkard I think accurately represented our office's
 2   understanding.
 3            THE COURT:  Okay.  Thank you.  Mr. Clymer,
 4   do you agree with that, what Mr. Slinkard-- the way he
 5   articulated it?
 6            MR. CLYMER:  Yes, Your Honor.
 7            THE COURT:  Okay.  All right.  So I have
 8   some other questions.  I think maybe what I'll do is
 9   proceed with my other questions and then turn to the
10   parties and see if there's anything more about these
11   questions or anything else.
12            Well, one question I had is whether the
13   Rosenstein letter in Paragraph 1 referred to the Justice
14   Department's position in both the underlying criminal
15   prosecution in the *Black* case and the Special Master
16   investigation, but I think what I've heard is the U.S.
17   Attorney's Office understands that the *Black* case
18   remains within their purview.
19            The Justice Department has never taken the
20   position that they were going to-- they were going to
21   handle the-- that case.  And, of course, there's only
22   one defendant remaining in that case with a pending
23   motion to dismiss.  But there's also, I will remind you,
24   in the *Black* case an order to show cause why the United
25   States Attorney should-- office should not be held in

1   contempt, and that's not something that goes away just

2   with a simple dismissal.

3              My next question is directed to you, Mr.

4   Clymer.  You were going to find out if Mr. Rosenstein

5   was offering to continue to work with Special Master

6   Cohen beyond the life of *United States versus Black.*

7   And I wonder if he even understands - because there's

8   been such a focus on this case and making this case go

9   away - that this case could go away and all that happens

10  is we move to a new arena, and that is a flood of 2255

11  motions where these same issues are going to be

12  litigated.

13             Is Mr. Rosenstein continuing-- offering to

14  continue to work with Special Master Cohen beyond the

15  life of this case, *U.S. v. Black*?

16             MR. CLYMER:  The Department of Justice is,

17  Your Honor.  And I should-- if I may add to that, I have

18  expressed to Mr. Cohen, and if the-- I know the Public

19  Defender is unwilling at this point to negotiate, but if

20  they change that position, I believe we could probably

21  have discussions to try to see if there's a way to

22  streamline the 2255 litigation.

23             As I mentioned earlier, the Department

24  believes that-- that the 2255 litigation is the

25  preferable forum for resolving any defendant's claims

1   that their Sixth Amendment rights have been violated.  I

2   understand the Court's concern about the flood of them,

3   but I think there might be ways that the parties could

4   get together and try to figure out ways to make that

5   less burdensome on the court system there.  And we

6   remain willing to work with Mr. Cohen to do that and

7   willing to work with the Public Defender's Office to do

8   that.

9            THE COURT:  Well, that's precisely what the

10  Public Defender and the U.S. Attorney were doing, that's

11  what they were negotiating, a way to streamline this

12  that would allow for judicial decision-making in each

13  case but with recommendations from them based on

14  parameters that they had reached.

15           That's the way we handle, you know, new

16  sentencings, you know, like, for example, in the three--

17  382 matters.  That's the way we've handled, you know,

18  what would otherwise have spawned all kinds of

19  litigation when the Supreme Court, you know, gives us a

20  new rule concerning-- whether it's some statutory

21  sentencing provision or sentencing guidelines and, you

22  know, the whole retroactivity issue comes to the fore

23  and, you know, that's sometimes resolved.

24           But, I mean, that is-- that is done all the

25  time.  Not only in this district, it's done across the

1    nation.  Every criminal AUSA knows that.  And the way

2    those things are handled typically is with some sort of

3    global understanding that still leaves to the judicial

4    decision-maker the final decision as to what to do in a

5    particular case.

6              And that's what I thought the parties were

7    doing in negotiating up until now, but apparently that,

8    for whatever reason - and I don't need to know - doesn't

9    fit within the parameters of what the Justice Department

10   wants to do.  I welcome you all entering into

11   negotiations if you're willing, but that's what was

12   going on.  And at least at the last hearing, the FPD

13   said given everything that had happened, she was no

14   longer willing to negotiate.

15             So I'm surprised that Justice Department is

16   open to that but yet wasn't open to what was already

17   going on that was along those lines.

18             All right.  Well, I guess that answers the

19   question.  Mr. Rosenstein is continuing-- offering to

20   continue to work with the Special Master.  You do

21   understand, though, that Mr. Cohen's appointment ends

22   with this case?  You understand that, Mr. Clymer?

23             MR. CLYMER:  That's my understanding, Your

24   Honor, yes.

25             THE COURT:  So I assume that if I appoint

1   Mr. Cohen to be a Special Master in all of the pending

2   2255 litigation in the District of Kansas, Department of

3   Justice isn't going to-- isn't going to object to that?

4              MR. CLYMER:  I can't answer that question,

5   Your Honor.  I-- I haven't run that question by the

6   Deputy Attorney General's Office, I haven't talked to

7   Mr. McAllister or Mr. Slinkard about that.  I do not

8   know the answer to that.

9              THE COURT:  Well, how-- under what-- under

10  what parameters would Mr. Rosenstein continue to work

11  with Mr. Cohen then?  In what capacity would they

12  continue?  You told me that Mr. Rosenstein is willing to

13  continue to work with Mr. Cohen.  How would that happen

14  outside of this case?

15             MR. CLYMER:  Your Honor, I-- my point is not

16  that the Department of Justice would object to that,

17  it's just that I don't know if the Department would or

18  not.  I can't speculate on what position the Department

19  would take on something that may be beyond the scope of

20  my authority.

21             THE COURT:  All right.  Well, you know, I--

22  this is frustrating for me, Mr. Clymer, because, you

23  know, on the one hand you make representations on behalf

24  of the Department.  On the other hand, you're not

25  willing to make other representations, which means the

1   first representation that Mr. Rosenstein would continue

2   to work with Mr. Cohen really is sort of an empty

3   promise.

4          Mr. Cohen is not involved in any 2255

5   litigation unless I appoint him as a Special Master, but

6   you can't assure me that Mr. Rosenstein would-- would

7   continue to work with him.  And I mean, you know, if

8   you're going to oppose his appointment as Special Master

9   in these other cases, then that means you're not going

10  to continue to work with him.  It can't be both.

11         So, I mean, I'm frustrated and I wonder if

12  perhaps somebody with more authority in the Department

13  of Justice needs to be on the phone here, whether that's

14  Mr. Rosenstein or whether that's the Assistant DAG.  I

15  mean, I don't-- maybe you're in a box, maybe you can't

16  speak to these.  But, you know, we can't really advance

17  the ball here unless I can get some better answers.

18         MR. CLYMER:  Your Honor, I-- I guess I could

19  say this:  It's my understanding that in this present

20  litigation, the Department of Justice opposed Mr. Cohen

21  having authority beyond essentially serving...

22         THE COURT:  All right.  We're getting a lot

23  of background noise.  Is that you, Mr. Clymer?

24         MR. CLYMER:  No, it's not, Your Honor.  I

25  was waiting for it to end.

1              THE COURT:  Okay.  I'm sorry, go ahead.

2              MR. CLYMER:  We-- the Department of Justice

3    opposed Mr. Cohen to, in the end, be essentially serving

4    as a filter.  The Court rejected that objection by the

5    Department and gave Mr. Cohen a broader scope.  We're

6    willing to work with Mr. Cohen, despite our objections

7    to his involvement, to the extent he's involved in this

8    case.

9              If the Court were to appoint Mr. Cohen in

10   the 2255 litigation in some fashion and were the

11   Department to object to it and were the Court to

12   nonetheless appoint Mr. Cohen, we would not refuse to

13   work with a court-appointed Special Master.  So I don't

14   think that the possibility that the Department might

15   object to Mr. Cohen's involvement in 2255 litigation--

16   and I'm not saying they would object, I just don't know

17   the answer to that.  But even if we did and the Court

18   decided he should be involved anyway, we wouldn't then

19   refuse to have discussions with Mr. Cohen.

20             I told Mr. Cohen already that I'm happy to

21   sit down and talk to him about ways to try to streamline

22   the 2255 litigation, hopefully as part of a larger

23   discussion about resolving the *Black* matter without

24   future litigation.  If the Court appoints a Special

25   Master and asks us to talk to him, we will talk to him.

1           THE COURT:  Okay.  My next question is-- and

2    you've sort of touched on this.  My next question was:

3    Will Mr. Rosenstein be willing to enter into global

4    negotiations of these 2255 cases by similarly-situated

5    defendants?

6           MR. CLYMER:  The answer, yes.  And I should

7    say that I-- I believe that I am permitted to do that,

8    Your Honor, and that's what I'm offering to do if-- and

9    I understand the Public Defender-- I can't make their

10   decisions for them and if they believe it's in their

11   interest of their clients not to speak to me, that's

12   their right to make that decision and I don't

13   second-guess or criticize it in any way.  But if they

14   change their minds about that, we stand ready, willing,

15   and able to negotiate with them.

16           THE COURT:  Okay.  My last question, at

17   least for now is:  You said that you would have to

18   confer with the DAG before responding to whether you'll

19   turn over records covered by the subpoenas *duces tecum*

20   that had been issued before.  And I will tell you at

21   least the Special Master is going to issue new subpoenas

22   *duces tecum*.  They will not be-- they will not be

23   identical to those issued before, but we'll be issuing

24   subpoena *duces tecum*.

25           And while I understand you may have

1    particularized objections, my real question is:  Other

2    than maybe perhaps particularized objections to things

3    within the subpoena *duces tecum*, are-- is the Department

4    of Justice going to otherwise comply or are they going

5    to object in total to subpoena *duces tecum*?

6              MR. CLYMER:  We will have to assess it based

7    on what's requested from the Department, Your Honor.

8    You know, as I've told Mr. Cohen, I'm willing to sit

9    down with him about the witness testimony - and this

10   goes for the Public Defender as well - to try to see if

11   there's areas we can streamline or reach agreement with

12   respect to witness testimony.

13             When we receive the subpoena *duces tecum*,

14   we'll take a look at it.  If there are things that are

15   demanded that we believe are appropriately produced, we

16   will.  If there-- if we don't think so, we will-- we

17   will state our objections and we'll go through the *Touhy*

18   analysis.  So without knowing what it says, I can't give

19   the Court an answer about exactly how we're going to

20   respond to it.

21             We will certainly take it seriously, Your

22   Honor.  And to the extent we believe it's appropriate,

23   we will produce what's demanded.  But if we think it's

24   inappropriate, we'll-- we'll take the position we've

25   taken previously with respect to the matters that we

1   don't think are appropriate.

2           THE COURT:  Well, my direction to Mr. Cohen,

3   I can't speak for the other parties obviously, but my

4   direction to Mr. Cohen is going to be to issue on my

5   behalf subpoenas *duces tecum* and subpoenas for witnesses

6   that hopefully are compliant with *Touhy*, issue *Touhy*

7   letters.  We're going to do our best to comply with what

8   we view the purview of the *Touhy* but not to sit down

9   and, you know, agree to testimony.

10          I mean, what the regs require is that there

11  be a summary of the testimony so that you I guess can

12  know what to expect and if you have objections, to make

13  those objections.  But there's not going to be any sort

14  of sit-down and agree to question-by-question procedure.

15  That's not going to happen.

16          MR. CLYMER:  I'm sorry, Your Honor.  I-- I

17  didn't mean to suggest that.  I wasn't-- I didn't

18  express myself very well, I didn't mean to suggest

19  question-by-question.  But if the Court and/or Mr. Cohen

20  and/or the Public Defender are interested, we're

21  certainly willing to sit down and talk about areas or

22  subject matters or topics to see if we can reach any

23  agreement in advance of that any-- any more evidence

24  just to streamline the process.  We stand ready to do

25  that if there's interest.

1          THE COURT:  Why-- why weren't you willing to

2   do that before?  Before you wouldn't sit down with--

3   before our evidentiary hearing you wouldn't sit down

4   with Mr. Cohen, you just-- you filed, you know, your

5   *Touhy* objections and there was no attempt to negotiate,

6   which is typically what Justice Department does is they

7   attempt to negotiate.  You didn't do that before, but

8   now you want to do it this time?

9          MR. CLYMER:  Well, Your Honor, the Court

10   has-- has expressed to me its displeasure about that,

11   and I took those communications to [sic] the Court to

12   heart.  And I guess my only answer is, Your Honor, is

13   better late than never.  I'm-- we're willing to do that.

14          Thus far, there's been no witnesses--

15   Department witnesses have been released from their

16   obligation to appear at the hearing.  So to the extent

17   we can reach agreement through negotiation, the parties

18   could ask any questions we could've agreed to

19   previously.  So I-- I think to the extent that the Court

20   is concerned that some damage were done by-- by what it

21   believes to be insufficient negotiation, we can rectify

22   that problem.

23          THE COURT:  Well, I just-- I'm-- I want to

24   clarify.  It wasn't displeasure, actually it was

25   surprise, because I've never heard of the Department

1   refusing-- I mean, typically what happens in *Touhy*

2   litigation and, you know, frankly, it's not in the

3   context usually of-- of Department employees being

4   accused of wrongdoing, it's, you know, something else

5   that has to do with official duties.  But usually what

6   happens-- I mean, that's just a matter of course,

7   there's a sit-down and there's negotiation.

8           And I mean, I was just surprised at the

9   push-back.  I wouldn't call it displeasure.  You have

10  the right to object, you have the right to invoke *Touhy*,

11  you know, in whatever parameters you want to invoke it.

12  You know, whether I agree with it or not, you have that

13  right.  So I mean, I was just surprised last time that

14  that's the way you chose to go, but...

15          All right.  That, for now, is what I had to

16  ask.

17          MR. SLINKARD:  Your Honor?

18          THE COURT:  Yes, Mr. Slinkard.

19          MR. SLINKARD:  Before you move on from these

20  preliminary matters, you had commented that from the

21  Court's perspective the motion pending in the *Black* case

22  regarding contempt was a matter that was open.

23          Just to clarify; that's predicated on the

24  government's response to the Special Master's Phase III

25  investigation.  So from our perspective, that's

1  something-- first of all, the response on those-- on

2  those requests for information came from the Special

3  Attorney and, second of all, that's something that we

4  definitely consider within his purview to litigate.

5       So just before we moved on, leaving aside--

6  I thought we had achieved clarity there, and I didn't

7  want to leave that hanging--

8       THE COURT:  All right.  I understand.

9       MR. SLINKARD:  -- that we consider that to

10  be a matter.  So we do not believe-- other than if the

11  Court were to raise some argument with respect to the

12  motion to dismiss on Defendant Carter, we're not aware

13  of anything in the *Black* case.  Certainly if a defendant

14  came back on a supervised release revo or something, but

15  we're not aware of other issues pending in the

16  underlying-- the underlying prosecution at this point.

17       THE COURT:  All right.  I appreciate that

18  clarity, Mr. Slinkard.

19       All right.  Ms. Brannon.

20       MS. BRANNON:  Your Honor, regarding the

21  Rule 41 issue that's been brought up, I would remind

22  that that Rule 41 didn't just go to the

23  video-recordings, it went to the phone recordings as

24  well and we still don't know what phone recordings were

25  obtained completely within the scope of *Black*.

1                We didn't have access to the discovery, we

2      still don't have access to the discovery, so we don't

3      know what the scope of the phone communications between

4      attorney and clients are that were obtained during *Black*

5      that the U.S. Attorney's Office still possesses, whether

6      they were used or relied on, that hasn't been resolved

7      by this investigation yet.

8                So those Rule 41s are still alive and well

9      regardless of what happens to the video-recordings.  And

10     I just wanted to bring that up, because I'm not sure

11     that the government is remembering that that's a part of

12     the Rule 41 motions.

13               THE COURT:  And the 2255s that you filed

14     yesterday were all based on video-recordings.  Correct?

15               MS. BRANNON:  That's correct, because those

16     are the ones that we've been able to sort of isolate and

17     identify so far.

18               THE COURT:  All right.

19               MS. BRANNON:  But we are working on the

20     phone-- identifying the phone recordings as well, but

21     those are individual 2255s.  Again, what happened within

22     *Black,* we know some of the phone recordings that were

23     obtained, but I am not confident that we know all of

24     them or that that's been fully explored.

25               As the Court knows, they weren't just

1   seeking the phone recordings of the named defendants in

2   that case, they were going far beyond that to other

3   people, like Virok Webb for example, that had nothing

4   clearly obviously to do with this case.  I'm sure there

5   was, you know, some argument that they were connected

6   otherwise.

7               But because of those sort of subtleties and

8   nuances and things that we don't have access to, I don't

9   think the investigation is complete regarding the phone

10  calls and whether those have been identified, much less

11  returned to the attorneys.

12              THE COURT:  Well, and, of course, the-- I

13  think the *Touhy* summaries as well as the subpoenas *duces*

14  *tecum* that the Court didn't proceed with last time went

15  to some of these issues as to what was obtained but also

16  what was used or listened to, if at all.

17              I mean, those are some of the questions.

18  Those are-- you know, some of the subpoenas *duces tecum*

19  went to I guess Mr. Clymer would call them internal

20  documents that might be evidence of whether these things

21  were acquired and/or-- more than acquired, that were

22  listened to or used in some manner.

23              So in that respect, I mean, I would agree

24  with you, the investigation is not complete.  The

25  Special Master's inability to get records, the-- the way

1   the evidentiary hearing went and the inability to get

2   answers to-- to questions that went to the very heart of

3   government misconduct all have prevented this

4   investigation from being complete and which is why we're

5   going to proceed with the evidentiary hearing which was

6   only adjourned, it wasn't completed last time.

7           So what you're telling me, Ms. Brannon, is

8   that while you might anticipate audio-- or 2255s based

9   on audio-recordings, there's a good reason why those

10  aren't filed yet.

11          MS. BRANNON:  That's correct, Your Honor,

12  and I-- I can go through where we are in that process.

13  But one of the specific things I want to ask for today

14  is a specific and new preservation order from this Court

15  for DOJ and the U.S. Attorney's Office to preserve and

16  maintain all phone recordings that they have obtained

17  from CCA or other detention facilities within the

18  District of Kansas and any related documents such as

19  e-mails, written requests, communication with defense

20  counsel.  And we can provide the Court with a proposed

21  written order.

22          But we're very concerned, as we are sort of

23  making progress in identifying the phone calls, that

24  there is a danger or a concern that that evidence might

25  be lost because so much of this is within the

1   possession, the sole and unilateral and inaccessible

2   possession of the U.S. Attorney.  They are the ones with

3   the file that may or may not have the particular phone

4   calls in that file.

5           As the evidence has developed, it is very

6   clear that they were able to obtain phone calls without

7   any written trail in some cases, simply picking up a

8   phone and calling the marshal, simply picking up the

9   phone and calling CCA and saying, I want these records

10  or these recordings, and those recordings appear.  But

11  we don't have any way to track it because they were able

12  to evade any sort of regular paper trail.  That's a

13  concern of ours.

14          And so we-- I think Mr. Redmond mentioned

15  this yesterday in another hearing.  We've gotten a list

16  of about 1,600 people from Securus that are just at CCA

17  whose recordings were accessed, and this - I think we'll

18  be able to show - in most instances was at the direction

19  of the U.S. Attorney's Office.

20          We have to dig further and see the-- the

21  details and particulars of those particular cases before

22  we file those 2255s.  But we are deep into that process,

23  it is a lot of-- a lot of work, and we just want to make

24  sure that that information that is beyond us that is not

25  Securus or CCA that is in the U.S. Attorney's Office is

1   preserved and not destroyed and that we have a very

2   clear order on that particular point.

3               THE COURT:  All right.  Is there any

4   objection, Mr. Clymer, to that request?

5               MR. CLYMER:  Your Honor, I-- I'd like to see

6   the motion because I-- I guess I'm confused about two

7   things.  The first is, it was my understanding and I--

8   if I'm wrong about this, Your Honor, I apologize, but

9   it's my understanding that the Court very early on in

10  this litigation issued a clawback order to obtain from

11  the U.S. Attorney's Office recordings related to the

12  investigation that resulted in the indictment in *Black,*

13  and that the U.S. Attorney's Office complied with that.

14              If that's correct, then I see no impediment

15  based on the government's non-objection to the Court

16  returning those recordings - and I'm talking about the

17  phone recordings now, not the video-recordings - to the

18  inmates or their counsel who were involved in those

19  recorded communications.

20              Second, if the Federal Public Defender means

21  every single call involving an attorney that has ever

22  been recorded by CCA-Leavenworth and potentially

23  produced to the United States Attorney's Office, it

24  seems to me that that's well beyond the scope of our

25  litigation, although I would want to see the motion the

1  Public Defender files and assess it before taking a

2  position on what the United States does in response.

3        So I'm not saying we would oppose such a

4  motion, Your Honor, but I'd certainly want to look at it

5  and get a better understanding of the underlying facts

6  before I say we have no opposition.  So, you know, if

7  they file the motion, we'd simply ask to have the-- the

8  regular amount of time under the local rules to respond

9  to it.

10        THE COURT:  I did enter a clawback order,

11  but I think it was limited in scope based on what

12  limited information has been revealed since the

13  investigation proceeded.

14        But as I understand it, Ms. Brannon, you're

15  not asking only for the audio-recordings that-- well,

16  there are audio-recordings that have been clawed back,

17  but you're asking for any additional audio-recordings

18  that are in the possession of the government, along with

19  related documents; is that correct?

20        MS. BRANNON:  I'm asking for them not to be

21  destroyed.  We're not asking for discovery at this

22  point, we're not asking for production.  What I'm

23  worried about is walking out of this courtroom without

24  an order for preservation.  If Mr. Clymer is objecting

25  to, you know, our request not to destroy evidence, I

 1   think we should flesh that out here.

 2              MR. CLYMER:  I'm not objecting to anything,

 3   Your Honor.  I simply want a chance to look at the

 4   motion before I respond to it.

 5              THE COURT:  Well, if the motion is only to

 6   preserve and not to produce, I don't see why there would

 7   be any objection.

 8              MR. CLYMER:  Well, Your Honor, for example,

 9   you know, I-- I believe that the Department of Justice

10   has certain policies regarding automatically purging its

11   e-mail system every-- periodically, and I don't know how

12   often that happens.  So I can't guarantee the Court that

13   tomorrow some e-mail message that's five or six or seven

14   years old doesn't automatically get purged in the

15   ordinary course of business.

16              I just don't know enough to know, Your

17   Honor, and so I'm reluctant to say that the government

18   could simply agree based on an oral request that's being

19   made of this magnitude to the Court that I'm hearing

20   about for the first time.  I'm simply asking for an

21   opportunity to take a look at the motion and respond to

22   it.  I'm not opposed to anything.

23              THE COURT:  I think you just made the

24   argument on behalf of the FPD why there needs to be a

25   preservation order.  You don't know whether there's

1   going to be a cyclical purge.  We've already had a

2   problem.  I entered a preservation order with respect to

3   the computers and so those could be preserved and, you

4   know, they were preserved except for the-- the key

5   computer from which there might've and probably was

6   metadata with respect to the video-recordings.  That got

7   wiped despite my preservation order.

8           So the fact that you don't know and that

9   there could be purging going on as we speak I think

10  makes the case for why I'm going to grant an oral motion

11  to preserve recordings and related documents, not for

12  production but for preservation.  And that's all I,

13  frankly, had ordered before was preservation, yet they

14  weren't preserved.  I'm very concerned.

15          So, Ms. Brannon, if you will submit an order

16  to me, a proposed order.  And I will make sure that it's

17  just preservation, it's not production.  I will make

18  sure that it's within the parameters of this Phase III

19  investigation, and I'll sign an order to that effect.

20          MS. BRANNON:  Thank you, Your Honor.  We

21  will also be asking that the-- the Department of Justice

22  or U.S. Attorney assures us that that order has been

23  distributed and published to everyone in their office

24  and their agents so that we don't have these sorts of

25  problems.

1              THE COURT:  Well, I want you to put that

2    language in the order.  I'll order that everybody in the

3    United States Attorney's Office be given a copy of the

4    order so there's no question that they're all aware,

5    including the IT people.

6              MS. BRANNON:  Thank you, Your Honor.

7              Just to touch on the offer of negotiation

8    from DOJ.  We are not willing to commit the time and

9    resources to sitting down at the table and negotiating.

10   We did that before, it cost us a lot.  Our time and

11   resources belong to our clients, it cost our clients.

12             However, if Mr. Clymer would like to submit

13   a written proposal for streamlining 2255s to us that has

14   been approved by Mr. Rosenstein, we are happy to read

15   it.  So we don't want to shut that door if they want to

16   propose something in writing that we can respond to or

17   consider.

18             We filed some 2255s yesterday, we have more

19   coming.  I think some of the issues that the Court has

20   brought up, we can at least give the Court notice.  We

21   are asking for an evidentiary hearing in every one of

22   those cases.  We will be asking for discovery in most of

23   them.  We are going to ask to expand the record in most

24   of them, and the motion to expand the record will be to

25   bring in the information from *Black* into those

1    particular cases.

2           So the idea that those cases are going to

3    sort of exist outside of *Black* or this litigation and

4    that they won't involve DOJ documents or some of the

5    things that we've been investigating here is just wrong.

6    Every single one of them will, and every single one of

7    them we will be asking for an evidentiary hearing in

8    those.  So there will be no splicing of that as far as

9    we can-- as far as what we are contemplating.

10          THE COURT:  Well, the record in *Black* is

11   pertinent in part to any 2255, because it was the

12   investigation in *Black* that led to the government

13   obtaining video and audio-recordings and that-- you

14   know, it was because they were investigating contraband

15   smuggling within the walls of CCA.

16          So, you know-- and I can't speak to this

17   because, again, the investigation is not complete, Mr.

18   Cohen's efforts have been thwarted a number of times.

19   But there are a number of audio-recordings that pertain,

20   as we know, to people that weren't indicted in this

21   *Black* case.  But the government very early on-- Ms.

22   Tomasic, who was the lead attorney, and I believe

23   others, indicated that they were planning to indict as

24   many as 90 people.

25          So they were-- they were obtaining

1  recordings of people not only that were indicted but

2  people that they apparently viewed as unindicted

3  co-conspirators in this case and potential defendants in

4  additional cases to be filed.

5          This was a very wide-ranging investigation.

6  It-- it touched apparently-- or there were a lot of

7  detainees whose conduct was at issue or at least they

8  were investigated.  And so these are the same people I

9  suppose that are going to file 2255s.  So it is all

10 interrelated.

11         I don't think that's something-- well, I

12 won't go-- I won't mention that.  But I don't think

13 that's something that perhaps Mr. Rosenstein fully

14 appreciates.  I don't think it's something Mr. Clymer

15 has fully appreciated, because he hasn't been here.  He

16 hasn't been here for the last two years, and he's not

17 particularly immersed in the case yet from what I can

18 tell.  But these are all interrelated.

19         And, you know, this is where the Court

20 thought it was going.  I understood from the very

21 beginning that there were going to be people that filed

22 2255s and claim prosecutorial misconduct.  Rightly or

23 wrongly, that litigation was going to happen.  There was

24 never any question about it.

25         So I viewed this Special Master

1    investigation in this case as a way-- as a way of

2    developing a record, not only with respect to the people

3    indicted in this case but with respect to the

4    investigation that was this case that went far beyond

5    just the few people that were indicted.

6               And so I don't view that every 2255 is going

7    to have its own unique and separate record.  To be sure,

8    we're talking about people and there's going to-- you

9    know, it's going to be particularized in the 2255

10   litigation to what recordings, if any, did the

11   government obtain with respect to this particular

12   defendant.

13              But all of the circumstances leading up to

14   obtaining that and how they were used and-- and if they

15   were and-- and why that, you know, mattered and whether

16   there was prejudice, all of those questions I think are

17   going to be related to, you know, the wider-scale Phase

18   III investigation and the record that's developed as a

19   consequence of that.

20              So this is not something that can be sliced

21   and diced into little bitty 2255s that are all

22   unrelated.  They're all related in that sense.  There's

23   a strong evidentiary connection between all of these

24   cases.

25              And, Mr. Clymer, if you're not aware of

 1  that, I suggest you get aware of it.  You need to spend

 2  some time in the District of Kansas, you need to-- maybe

 3  need to move here, because there's-- there's a lot of

 4  evidence that's already been developed.  I think there's

 5  a lot of evidence yet to be developed.  And there's a

 6  lot of people who I think are going to view themselves

 7  as 2255 petitioners.

 8           And until you really are immersed in this

 9  and know everything and have seen all these things and

10  understand how they interrelate, you know, I don't-- I

11  don't think you're representing the Justice Department's

12  interests very well.  And in particular, I don't think

13  you can sit there and say, I'm only going to deal with

14  the discovery requests.

15           I think you have to understand the entire

16  case, the entire investigation and who all these other

17  people are before you can represent the Justice

18  Department's interests in determining, you know, what

19  you're going to agree to as far as discovery and what

20  you're not.

21           All right.  I'm sorry, I said my piece.

22           Ms. Brannon.

23           MS. BRANNON:  And so to that point, the

24  incomplete investigation in the *Black* case will be

25  transferred to every 2255 that we are filing.  And that

1    investigation we will try to continue, and those motions

2    for discovery will be translated and transferred to

3    those individual 2255s.

4              I'd also like to make the point that I

5    believe the Department of Justice and the United States

6    Attorney's Office has an obligation to provide to us

7    material-- material that is favorable to our motions.

8    In other contexts we might call it exculpatory

9    information, but in this case if they have e-mails or

10   other documentation or policies that are favorable to

11   the claims we're making, they are obligated

12   constitutionally to provide that to us, and they cannot

13   hide behind DOJ policy or *Touhy* or anything else.  So

14   that will be an issue in the 2255s as well.

15             THE COURT:  And that's another common issue.

16             MS. BRANNON:  Right.

17             THE COURT:  Which is why if everybody-- it

18   seems like everybody on the same page in terms of-- for

19   judicial economy and parties' economy and all of that.

20   I mean, this has to be-- you know, there are common

21   issues, legal and factual, that the Court should treat

22   as common issues, which is what this whole Phase III

23   investigation was about.

24             And so I just want everybody to be mindful

25   that we're going to proceed with an evidentiary hearing.

1   And I don't know if we're going to be able to reach all

2   the common issues that may pertain to the 2255s, but my

3   hope is that we will, because this court and the judges

4   of this court do not have the resources to treat every

5   2255 like beginning from the beginning and there's no

6   other record because there is.

7             MS. BRANNON:  And the last thing I have is

8   just a question for the Court.  We're filing 2255s

9   before Judge Murguia and other judges who had these

10  cases.  I didn't know if the Court wanted us to provide

11  notice of those filings.  We probably will file a motion

12  to transfer the case at some point.  But if the Court

13  wants notice of each of those, we are-- we can do that

14  as well.

15            THE COURT:  Do you mean a notice to me?

16            MS. BRANNON:  Yes.

17            THE COURT:  Well, I don't think it would

18  hurt--

19            MS. BRANNON:  Okay.

20            THE COURT:  -- just so I am aware of what

21  the other 2255-- I anticipated that there would be

22  2255-- and, of course, you're only talking about your

23  clients, right, not about everybody else's clients.

24            MS. BRANNON:  Well, the Court issued a

25  standing order for us to represent everybody.

 1            THE COURT:  Oh, that's right.

 2            MS. BRANNON:  So that's why we're talking

 3     about such large numbers.

 4            THE COURT:  I anticipated that they

 5     probably-- these 2255s would show up in cases assigned

 6     to Judge Murguia and the other judges in the Kansas City

 7     division.  Although the senior judges haven't been

 8     taking new criminal cases for quite a while, they may

 9     still have some old 2255s.  And I don't know about the

10     judges in the Topeka division.

11            MS. BRANNON:  Judge Crabtree, yes, Your

12     Honor.

13            THE COURT:  Judge Crabtree, okay.  Yeah, I

14     think it would be helpful, because I wouldn't otherwise

15     know what the-- you know, that those have been filed, if

16     you want to give me notice.  I'm not saying that, you

17     know, I will agree to transfer all of them to one judge,

18     I have to think about that, but...

19            MS. BRANNON:  Unless the Court has

20     questions, that's all we have.

21            THE COURT:  Okay.  All right.  Mr.

22     Guastello, is there anything that you have to say?

23            MR. GUASTELLO:  No, Your Honor.

24            THE COURT:  All right.  Anything else from

25     the government?  Mr. Slinkard?

1          MR. SLINKARD:  Not locally, Your Honor, no.

2          THE COURT:  Okay.  Not from the United

3   States Attorney.

4          Mr. Clymer?

5          MR. CLYMER:  No, Your Honor.

6          THE COURT:  Okay.  Let's talk about the

7   evidentiary hearing.  And I have to tell you that-- so

8   we spent, what, a little over a day and had very few

9   witnesses.  And when I think about just the, you know,

10  outstanding subpoenas, the witnesses that hadn't been

11  called, the fact that Ms. Tomasic really probably wasn't

12  even halfway through, a two-day hearing I think is not

13  going to work.  In fact, I would be-- my hope would be

14  that we could get it done in five to six days.  And so

15  I've looked for a block of time that would give us five,

16  six, even seven days, because I just think that's--

17  that's what's really going to happen.  Let's be real

18  about this.

19          My availability is very limited when we talk

20  about a block like that, so I'm-- there's really not a

21  lot of wiggle room for me to come up with an

22  alternative.  So here's what I'm contemplating, and I'll

23  issue an evidentiary hearing order that sets deadlines

24  for any-- we're going to get the subpoenas out, the

25  Master is going to get the subpoenas out.  I'm going to

 1   issue an-- I mean, a-- I guess a scheduling order that

 2   gives deadlines for subpoenas, deadlines for motions to

 3   quash any subpoenas, deadlines for any responses that

 4   then gives me enough time to rule, because we are not

 5   going to have another derailing or continuance or delay

 6   of this hearing.  You know, we're talking about criminal

 7   defendants whose rights are on the line.  We're talking

 8   about 2255 litigants who are under time limitations as

 9   well.

10          So my plan is to schedule this for-- to

11   begin Tuesday, October 2nd.  And I've blocked out these

12   dates:  October 2nd, 3rd, and 4th.  So that's Tuesday,

13   Wednesday, Thursday.  And then take off Friday, that's a

14   long weekend, Columbus Day weekend.  And then to resume

15   on Tuesday October 9th, and to go the rest of that week

16   through Friday October 12th, if needed.  Hopefully we

17   won't need all of those days.

18          That's the best I can come up with, really

19   the only thing I can come up with given our-- our needs

20   in terms of how much time this is going to take.

21          Anyone want to speak to that?  Mr. Slinkard.

22          MR. SLINKARD:  If I could have just a

23   moment, Your Honor.

24          THE COURT:  Sure.

25          MR. SLINKARD:  Your Honor, I don't know from

1  the witness list before if everyone is contemplated to

2  still be on the witness list.  I have asked for a

3  calendar of availability of various people.  For the

4  dates the Court have-- has announced, the 2nd is only

5  problematic for a jury trial.  The 2nd, 3rd and 4th, Mr.

6  Rask is apparently in jury trial all that week with

7  Judge Murguia.

8          Debra Barnett is on leave the 3rd through

9  the 5th, and I understand that to be dealing with a

10  medical issue of a family member and something that's

11  been long scheduled.  I'm supposed to be on leave the

12  4th and 5th.  That's personal travel that's been booked,

13  but it's not as-- it's not a long-scheduled event.

14          On the following week, Pauletta Boyd is down

15  for leave on both the 5th and the 12th of October.

16          Those are the conflicts I'm aware of for

17  potential witnesses, and I don't know whom the parties

18  would intend to call necessarily.

19          THE COURT:  Okay, thank you.

20          Well, I understand-- I mean, there is

21  absolutely no set of dates that I could select that

22  there wouldn't be these kinds of issues.  But it sounds

23  to me like these particular witnesses, to the extent

24  they're witnesses, can fit within those parameters even

25  though they're out some days.

 1            Ms. Brannon.

 2            MS. BRANNON:  Your Honor, those dates are

 3   fine, and we will be happy to work with Mr. McAllister

 4   and Mr. Slinkard as far as order of witnesses if we need

 5   to accommodate certain things.  Those dates work.

 6            THE COURT:  All right.  And I-- Mr. Cohen

 7   will work with you as well, Mr. Slinkard.

 8            Mr. Clymer.

 9            MR. CLYMER:  Your Honor, I have no personal

10   problem with those dates.  The Court should know that

11   I'm leaving the country the following week, and so I

12   would not have the ability to extend over beyond the

13   dates the Court has already described.

14            THE COURT:  That's the week of October 5th?

15   I'm sorry, 15th.

16            MR. CLYMER:  I'll be leaving the week of

17   October 14th.

18            THE COURT:  Okay, I understand.  Well, we're

19   going to have to get this case finished, and I would

20   expect you all to-- to, you know, push to get-- to get

21   it done and-- and try this as efficiently as possible.

22   And my plan is to be done on October 12th as well, if

23   not before.  Hopefully before.

24            Okay.  So we'll push out an order with these

25   dates.  We'll-- Mr. Cohen will soon be pushing out

1   subpoenas with those dates, with the whole block of

2   dates.  But, again, we'll work with you on making sure

3   people can testify on days that they're available.

4           I'll push out deadlines on subpoenas for--

5   for Ms. Brannon and other parties.  And then Mr. Cohen

6   will also push out subpoenas *duces tecum*, and then I'll

7   set deadlines for any motions related to the subpoenas

8   and responses.

9           Okay.  What else?  What else do we need to

10  talk about?  Mr. Clymer?

11          MR. CLYMER:  Nothing from me, Your Honor.

12          THE COURT:  All right.  Mr. McAllister or

13  Mr. Slinkard?

14          MR. SLINKARD:  Your Honor, I have nothing

15  further.  Mr. McAllister sent me a message that he had

16  dropped off due to weather issues where he was

17  traveling.  I don't know if he's back on yet, but...

18          THE COURT:  Okay.  I did hear somebody

19  leave, I don't know if they came back.

20          MR. SLINKARD:  So I'm not aware of anything.

21  If he has something, we'll make it known to the Court

22  soon after, but I don't know of anything.

23          THE COURT:  Okay.  Ms. Brannon?

24          MS. BRANNON:  Nothing, Your Honor.

25          THE COURT:  Mr. Guastello?

1           MR. GUASTELLO:  No, Judge.  Thank you.

2           THE COURT:  All right.  Mr. Cohen?

3           SPECIAL MASTER COHEN:  Nothing else, Judge.

4    Thank you.

5           THE COURT:  Okay.  Ms. VanBebber?

6           MS. VANBEBBER:  (No response).

7           THE COURT:  All right.  She may have dropped

8    off as well.  And is it Mrs.-- Ms. Brochert [sic] from

9    CoreCivic?  You're still--

10          MS. BROCKERT:  I have nothing, Your Honor.

11          THE COURT:  Okay.  All right.  Thank you

12   all.  I appreciate your being available today.  We'll

13   get these-- these things going and we'll look forward to

14   seeing you beginning on October 2nd.

15          All right.  We'll be in recess.

16          (10:05 a.m., proceedings recessed).

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

 I, Kelli Stewart, a Certified Shorthand Reporter and
the regularly appointed, qualified and acting official
reporter of the United States District Court for the
District of Kansas, do hereby certify that as such
official reporter, I was present at and reported in
machine shorthand the above and foregoing proceedings.

 I further certify that the foregoing transcript,
consisting of 50 pages, is a full, true, and correct
reproduction of my shorthand notes as reflected by this
transcript.

 SIGNED August 16, 2018.



              /s/ Kelli Stewart
              Kelli Stewart, CSR, RPR, CCR, RMR