## In the United States District Court
## for the District of Kansas

---

**United States of America**,

                  Plaintiff,

v.

                            Case No. **16-cr-20032-JAR-02**

**Karl Carter,**

                  Defendant.

---

## Memorandum of Law re: *Touhy*

---

To prepare for the pending evidentiary hearing, the Special Master and Federal Public Defender compelled the appearance of several current and former employees and agents of the U.S. Attorney's Office. Out of an abundance of caution, the FPD offered *Touhy* notices, as acknowledged by the Government. But we maintain that *Touhy* does not apply when the United States is a party to the proceedings.

The Department of Justice's response falls into two categories: evidence beneficial to the Government is available, while evidence the FPD seeks to present is not. The Department of Justice unabashedly seeks to unilaterally

dictate what evidence the Court can consider.[1] But "judicial control over evidence in a case cannot be abdicated to the caprice of executive officers."[2] The "very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts, within the framework of the rules of evidence."[3]

This Court has already explained the applicable rule. "*Touhy* prevents courts from holding in contempt those Department of Justice employees and former employees who refuse to answer questions for lack of authority to answer from Department officials. But these privileges do not exempt an employee from appearing pursuant to a properly issued subpoena and either testifying or raising an appropriate privilege."[4] The DOJ's response asserts no privilege. It asserts that the prosecutor, not the Court, has the power to determine what evidence can and cannot be presented during the scheduled two-week evidentiary hearing.

---

[1] We had expected a negotiation over *Touhy*. We received a proposal, but rejected it in its entirety, as Attachment A explains.

[2] *United States v. Reynolds*, 345 U.S. 1, 9–10, 73 S.Ct. 528, 533, 97 L.Ed. 727 (1953).

[3] *United States v. Nixon*, 418 U.S. 683, 709, 94 S.Ct. 3090 (1974).

[4] D.E. 372 at 16; James Moore *et al.*, *Moore's Federal Practice*, § 45.05[1][b] (3d ed. 2006) ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.").

That is wrong. When the government is a party to an action, it "is to be treated in exactly the same way as any other litigant. Appointment to office does not confer upon a bureaucrat the right to decide the rules of the game applicable to his crusades or his lawsuits."[5] Otherwise, the "executive department would have the power on his own say so to cover up all evidence of fraud and corruption when a federal court or grand jury was investigating malfeasance in office, and this is not the law."[6]

We proceed in two parts. First, we establish that *Touhy* has no application when the United States is a party to a case. Second, we detail the constitutional defects in the government's argument.

---

[5] *E.E.O.C. v. Los Alamos Constructors*, 382 F.Supp. 1373, 1375, 1386 (D. N.M. 1974) ("Entitlement to receipt of a government paycheck is not a license to interfere with or to attempt to interfere with the fair administration of justice. Government files are not sacrosanct, and government employees are going to have to learn to live with the concept that even in their official capacity, they ordinarily have no fewer and no more rights in a lawsuit than does their adversary[.]"); *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 383 (10th Cir. 1964) (federal agencies are bound by discovery rules in the same manner as any other litigant).

[6] *Committee for Nuclear Responsibility v. Seaborg*, 463 F.2d 788, 794 (D.C. Cir. 1971); *Nixon v. Sirica*, 487 F.2d 700, 708 (D.C. Cir. 1973); *Streett v. United States*, Not Reported in F.Supp.2d, 1996 WL 765882 at 4 (W.D. Va. 1996) ("neither § 301.9000-1 nor *Touhy* may be used as a tool by the executive to usurp the judiciary's role in determining what evidence will enter into the courtroom. Our legal system would not endure long with the opposite rule, where a party to a dispute doubles as the referee. Just as surely as subsection (iii) protects privileged evidence, so the judiciary is the institution that must decide whether the asserted privilege applies. Otherwise, we confront the real danger that all evidence in the possession of the government will, by effective decree, be declared privileged and untouchable.")

1. **The government has no right to withhold evidence; because the government is a party, *Touhy* does not apply here.**

From "the earliest days of the Republic it was generally understood that no one, however lofty his station, was exempt from the reach of the compulsory process rights of even the lowliest defendant."[7] Government officials are not excepted from the rule.[8] It is an "ancient proposition of law" that the "public has a right to every man's evidence."[9] The government's position here squarely violates that proposition.[10]

---

[7] Milton Hersh, *The Voice of Adjuration: The Sixth Amendment Right to Compulsory Process Fifty Years after United States Ex Rel. Touhy v. Regan*, 30 Fla. St. U. L. Rev. 81, 86 (2002).

[8] John Henry Wigmore, *A Treatise on the System of Evidence in Trials at Common Law* § 2190 (1904), quoting *The Works of Jeremy Bentham* 320-21 (John Bowring ed., 1843) ("Are men of the first rank and consideration, are men high in office, men whose time is not less valuable to the public than to themselves, are such men to be forced to quit their business, their functions, and what is more than all, their pleasure, at the beck of every idle or malicious adversary, to dance attendance upon every petty cause? Yes, as far as it is necessary, they and everybody! What if, instead of parties, they were witnesses? Upon business of other people's, everybody is obliged to attend, and nobody complains of it. Were the Prince of Wales, the Archbishop of Canterbury, and the Lord High Chancellor, to be passing by in the same coach while a chimney-sweeper and a barrow-woman were in dispute about a halfpennyworth of apples, and the chimney-sweeper or the barrow-woman were to think proper to call upon them for their evidence, could they refuse it? No, most certainly.")

[9] *United States v. Nixon*, 418 U.S. 683 (1974).

[10] *Exxon Shipping Co. v. U.S. Dept. of Interior*, 34 F.3d 774, 779 (9th Cir. 1994) (government's *Touhy* invocation would "violate the fundamental principle that the public has a right to every man's evidence") (edited).

## 1.1   *Touhy v. Ragan*

The government relies on *Touhy v. Ragan*.[11] But that case has nothing to do with ours. The *Touhy* Court said so: "Nor are we here concerned with the effect of a refusal to produce in a prosecution by the United States."[12] For emphasis, *Touhy* cited *United States v. Andolschek*.[13] *Andolschek* observed a "critical distinction": while "we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution[.]"[14] So far as evidence may

---

[11] 340 U.S. 462, 467(1951).

[12] *Touhy*, 340 U.S. at 467.

[13] 340 U.S. at n. 6; 142 F.2d 503, 506 (2nd Cir. 1944).

[14] 142 F.2d at 506; In *United States v. Andolschek*, 142 F.2d 503, 506, (2d Cir. 1944), Judge Learned Hand explained that while "we must accept it as lawful for a department of the government to suppress documents, even when they will help determine controversies between third persons, we cannot agree that this should include their suppression in a criminal prosecution, founded upon those very dealings to which the documents relate, and whose criminality they will, or may, tend to exculpate. So far as they directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open, and will lay bare their subject matter. The government must choose; either it must leave the transactions in the obscurity from which a trial will draw them, or it must expose them fully. Nor does it seem to us possible to draw any line between documents whose contents bears directly upon the criminal transactions, and those which may be only indirectly relevant. Not only would such a distinction be extremely difficult to apply in practice, but the same reasons which forbid suppression in one case forbid it in the other, though not, perhaps, quite so imperatively.")

"directly touch the criminal dealings, the prosecution necessarily ends any confidential character the documents may possess; it must be conducted in the open[.]"[15]

The Supreme Court has cited *Andolsheck* with approval six more times, most comprehensively in *Jenks v. United States*.[16] The *Jenks* Court recognized that it "is unquestionably true that the protection of vital national interests may militate against public disclosure of documents in the Government's possession. This has been recognized in decisions of this Court in civil causes."[17] But "this Court has noticed, in *United States v. Reynolds*, the holdings of the Court of Appeals for the Second Circuit that, in criminal causes the Government can invoke its evidentiary privileges only at the price

---

[15] *Id.*; *United States v. Reynolds*, 345 U.S. 1, 12, n. 27 (1953) ("Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented." citing *Andolsheck*). *Reynolds* also cited *United States v. Beekman*, 155 F.2d 580, 584 (2d Cir. 1946). *Beekman* held that, "when the government institutes criminal proceedings in which evidence, otherwise privileged under a statute or regulation, becomes importantly relevant, it abandons the privilege." 155 F.2d at 584.

[16] 353 U.S. 657 (1967).

[17] 353 U.S. at 670.

of letting the defendant go free."[18] Criminal cases are different because "since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense."[19]

The remedy the Supreme Court has prescribed for government privilege invocations in criminal cases proves our point. A "criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at the trial."[20] The "burden is the Government's, not to be shifted to the trial judge, to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession."[21]

---

[18] 363 U.S. at 670-1.

[19] 363 U.S. at 671.

[20] *Id.* at 672.

[21] *Id.*; *Rovario v. United States*, 353 U.S. 53, n. 10, 77 S.Ct. 623 (1957) ("the trial court may require disclosure and, if the Government withholds the information, dismiss the action.", citing *Andolschek*.); *Dennis v. United States*, 384 U.S. 855, 873 86 S.Ct. 1840, 1851 (1966) ("In our adversary system for determining guilt or

## 1.2    The Tenth Circuit's treatment of *Touhy*.

Tenth Circuit cases citing *Touhy* prove our point. None support the government's position that it can dictate what evidence is admissible. The Tenth Circuit has cited *Touhy* only nine times. None of those cases support the government's position here that it is immune from disclosure. Four were cases in which the federal government was not a party.[22] In another three, the defendant failed to make a proper *Touhy* request.[23] One decided a

---

innocence, it is rarely justifiable for the prosecution to have exclusive access to a storehouse of relevant fact." citing *Andolshek*.)

[22] *State of Kansas v. Call*, 961 F.2d 220 (unpublished), 1992 WL 83536 (10th Cir. 1992) (appeal of removal to federal district court relating to state court subpoena); *U.S. Steel Corp. v. Mattingly*, 663 F.2d 68 (10th Cir. 1980); *Saunders v. Great Western Sugar Co.*, 396 F.2d 794, 795 (10th Cir. 1968) ("The appellees seeking the disclosure rely on our decision in *Sperandeo v. Milk Drivers and Dairy Employees Local Union No. 537*, 10 Cir., 334 F.2d 381. *Sperandeo* is distinguishable from the case at bar because there the governmental agency brought suit seeking judicial action and then refused to disclose. Here the SBA and its officials are not parties to the antitrust suit in the district court in which the disclosure is sought."); *In re Gray*, 162 F.3d 1172 (unpublished), 1998 WL 712663 (10th Cir. 1998).

[23] *United States v. Springer*, 444 Fed.Appx. 256, 263 (unpublished), 2011 WL 5068095 at 5 (10th Cir. 2011) (subpoena quashed under *Touhy* where "defendants made no attempt to comply" with its provisions); *United States v. Allen*, 554 F.2d 398, 406 (10th Cir. 1977) ("Our record shows no effort by defendant to submit the affidavit or statement summarizing the testimony desired so that the Department could consider the request and determine whether to grant permission for the testimony. In view of this, we feel that defendant is in no position to claim error in the court's refusal to require testimony by the prosecutor."); *Pippinger v. Rubin*, 129 F.3d 519, n. 8 (10th Cir. 1997) (discovery request denied because petitioner failed to comply with deadline to object to magistrate's ruling, but relief inappropriate in any event because *Touhy* does not establish a "legal right to speak 'informally' to any particular witness.").

question unanswered by *Touhy*, and is inapplicable here.[24] The only Tenth

Circuit case to squarely confront *Touhy's* application in a criminal case relied

on government concessions to sidestep the question.[25]

### 1.3 Where the government is a party, the Court decides what is admissible, not the government.

That has been the rule in the Tenth Circuit for over fifty years. In

*Sperandeo for and on behalf of N.L.R.B. v. Milk Drivers and Dairy Emp.*

*Local Union No. 537*,[26] the government sought an injunction against a dairy

union. The union issued a subpoena "commanding the Regional Director of

the National Labor Relations Board to appear on the return date and testify

on behalf of the union."[27] The government moved to quash; the trial court

---

[24] *Bonnet v. Harvest (U.S.) Holdings, Inc.*, 741 F.3d 1155, 1159 (10th Cir. 2014) (holding that a subpoena duces tecum served directly on a tribe triggers sovereign tribal immunity).

[25] *United States v. Winner*, 641 F.2d 825, 832-3 (10th Cir. 1981) (After government asserted *Touhy* and defendant subpoenaed Deputy Attorney General, subpoena quashed only after government offered to provide relevant information *in camera*. The Circuit held that "[w]ith some modifications, we conclude that this proposal presents a workable solution to a difficult problem.")

[26] 334 F.2d 381 (10th Cir. 1964); *Brock v. R.J. Auto Parts and Service*, 864 F.2d 677, 679 (10th Cir. 1988) ("The government as a litigant, like an ordinary litigant, is subject to the rules of discovery. *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 985–986, 2 L.Ed.2d 1077; *Sperandeo v. Milk Drivers and Dairy Employees Local Union No. 537*, 334 F.2d 381, 384 (10th Cir. 1964).")

[27] 334 F.3d at 383.

refused. The government chose not to honor the subpoena, and the trial court dismissed.

The government appealed, arguing that the subpoena covered privileged material. The Tenth Circuit affirmed.[28] The Court held that it "is for the Court, and not the governmental agency or executive branch, to determine whether documents sought to be withheld under a claim of privilege are entitled to the protection of that privilege." [29]Rejecting the government's attempt to unilaterally assess privilege, the Court explained that the district court must perform "a balancing of the need for production of the documents claimed to be privileged against the reasons for suppressing them and that where there is a need for them to preclude prejudice and unfairness, i.e., good cause…an agency regulation or conditional executive privilege cannot stand in the way of necessary discovery." [30]*Sperandeo* has proven influential. Sister circuits have echoed its rule,[31] and district courts

---

[28] *Id.* at 385.

[29] *Id.* at 384.

[30] *Id.* at 384.

[31] *Commissioner of Puerto Rico v. United States*, 490 F.3d 50, 61-2 (1st Cir. 2007) (cleaned up) ("Under the Housekeeping Act, 5 U.S.C. § 301, federal agencies may promulgate regulations establishing conditions for the disclosure of information." Those regulations "provide guidance for the internal operations of the agency but do not create a substantive defense to disclosure. In other words, the regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information." Id. Rather, they "simply set forth administrative procedures to be

followed when demands for information are received."); *United States v. Moussaoui*, 382 F.3d 453, 474 (4th Cir.2004) (the "Supreme Court has held that the defendant's right to a trial that comports with the Fifth and Sixth Amendments prevails over the governmental privilege. Ultimately, as these cases make clear, the appropriate procedure is for the district court to order production of the evidence or witness and leave to the Government the choice of whether to comply with that order. If the government refuses to produce the information at issue—as it may properly do—the result is ordinarily dismissal."); *Davis v. Braswell Motor Freight Lines, Inc.*, 363 F.2d 600, 603 n. 3 (5th Cir. 1966) (Relying on *Sperandeo* to conclude that "even if the head of the department refuses to permit disclosure of the subpoenaed material, the 'ultimate determination of the privilege remains with the courts.'"); *In re Banker's Trust Co.*, 61 F.3d 465, 470 (6th Cir. 1995) "5 U.S.C. § 301, which is the most specific of the statutes, provides that the Federal Reserve may prescribe regulations 'for the government of his [sic] department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers, and property.' Section 301, however, is nothing more than a general housekeeping statute and does not provide "substantive" rules regulating disclosure of government information…We likewise conclude that Congress did not empower the Federal Reserve to prescribe regulations that direct a party to deliberately disobey a court order, subpoena, or other judicial mechanism requiring the production of information."); *Olson Rug. Co. v. N.L.R.B.*, 291 F.2d 655, 662 (7th Cir. 1961) ("the Master has determined that there is a need for discovery to preclude prejudice and unfairness. In such circumstances, where 'good cause' exists, an agency regulation or a conditional executive privilege cannot stand in the way of necessary discovery."); *Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1092 (9th Cir. 2001) ("As the government acknowledged at oral argument, the regulations do not 'create an independent privilege' authorizing the Department of Justice to withhold information. *Exxon Shipping Co. v. United States Dep't of Interior*, 34 F.3d 774, 780 (9th Cir.1994). Nor could they, because the statutory authority for them, 5 U.S.C. § 301, makes clear that it 'does not authorize withholding information from the public or limiting the availability of records to the public.' *Id.*"); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 181 (D.C. Cir. 2001) ("We too have determined that sovereign immunity is not a defense to a third-party subpoena.")

have as well.[32] None of the cases cited by the government when it invoked

*Touhy* hold otherwise, because in none of those cases was the government a

voluntary party.[33]

---

[32] *Alexander v. F.B.I.,* 186 F.R.D. 66, 69 (D.D.C. 1998) ("Bacon's reliance on the *Touhy* line of cases is misplaced. The Supreme Court's holding in *Touhy* is applicable only in cases where the United States is not a party to the original legal proceeding…In cases originating in federal court in which the federal government is a party to the underlying litigation, the *Touhy* problem simply does not arise."); *Merchants Nat'l Bank & Trust Co. v. United States*, 41 F.R.D. 266, 268 (D.N.D.1966)("While the statute gives the Secretary the right to restrict disclosure, judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."; citing *Sperandeo*); *United States v. Fuentes-Correa*, Not Reported in F.Supp.3d, 2013 WL 588892 at 8 (D. P.R. 2013) ("[o]nce a defendant or litigant complies with an agency's or department's *Touhy* regulations, the agency or department head must either authorize compliance with the subpoena or formally assert a privilege that would justify refusal to comply with the subpoena.... It is then left to the appropriate court to determine whether that claim of privilege bars the production of evidence or testimony sought."); *Menocal v. GEO Group, Inc.*, Not Reported in F.Supp.3d, 2017 WL 4334000 at 3 (D. Colo. 2017) ("The conspicuous and sensible purpose of the *Touhy* regulations is to protect an agency of government from unrestricted disclosure of official documents when that agency or its 'employees' are not parties to the litigation. The purpose is not to create obstacles or shields from the normal rules of discovery when that agency or its 'employees' are parties. In the latter case, the law requires them to be treated equally without special and predictably stilted advantage. Tenth Circuit precedent supports this interpretation"); *S.E.C. v. Blinder, Robinson, and Co., Inc.,* Not Reported in F.Supp.2d, 1989 WL 80447 at 6 (D. Colo. 1989) ("the basic principles underlying the judiciary do not allow the executive branch to overrule the courts in matters properly within the courts' jurisdiction."); *City of Colton v. American Promotional Events, Inc.*, Not Reported in F.Supp.2d, 2011 WL 13223968 at 5 (C.D. Cal. 2011) ("Courts that have considered this issue have uniformly answered the query in the negative. Judicial control over evidence in a case cannot be abdicated to the caprice of executive officers." (cleaned up); *United States v. Rohner*, Not Reported in F.Supp.3d, 2014 WL 4327925 at 9 (N.D. Ohio 2014) (Discussing *Sperandeo* and concluding that the "lion's share of courts considering the reach of disclosure-limiting Touhy regulations have concluded that those regulations end at the courthouse doors.") (cleaned up); *Alexander v. FBI*, 186 F.R.D. 66, 69–71 (D.D.C.

## 2. The government's approach is unconstitutional.

First, the government's attempt to unilaterally determine admissibility would violate the separation of powers. It is emphatically this Court's duty to determine evidentiary questions; the government's attempt to usurp that function oversteps its institutional role. Second, the government's approach violates due process by dictating differential access to relevant evidence.

---

1998) (addressing 5 U.S.C. § 301, and finding that "neither the federal Housekeeping Statute nor the *Touhy* decision authorizes a federal agency to withhold documents or testimony from a federal court"); *McElya v. Sterling Med., Inc.,* 129 F.R.D. 510, 514–15 (W.D. Tenn. 1990) (holding that 5 U.S.C. § 301 does not grant authority to assert an evidentiary privilege not recognized by the Federal Rules of Civil Procedure or the law of evidence); *United States ex rel. Roby v. Boeing Co.*, 189 F.R.D. 512, 517 (S.D. Ohio, 1999) ("Third, it is well established that the Government, as a litigant, is bound by the rules of discovery to the same extent as any other litigant. Thus, fundamental fairness dictates that the *Touhy* regulations should not apply where the Government is a party to the litigation. *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381, 384 (10th Cir.1964)") (cleaned up); *Fed. Deposit Ins. Corp. v. St. Paul Fire and Marine Ins. Co.*, 53 F.R.D. 260, n. 2 (W.D. Okla. 1971) ("Whether the privilege is rightfully invoked is a question of law for the Court. *Sperandeo for and on Behalf of N.L.R.B. v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381 (10th Cir. 1964).") ; *Kinoy v. Mitchell*, 67 F.R.D. 1, 7 (S.D. N.Y. 1975) ("The Court, not the executive officer claiming privilege, makes the judgment whether to uphold or overrule the claim"; citing *Sperandeo*).

[33] D.E. 298-9; *Kwan Fai Mak v. F.B.I.*, 252 F.3d 1089, 1092 (9th Cir. 2001); *Boron Oil Co. v. Downie*, 873 F.2d 67, 69 (4th Cir. 1989); *Edwards v. United States Dep't of Justice*, 43 F.3d 312, 317 (7th Cir. 1994); *In re Boeh*, 25 F.3d 761, 766 (9th Cir. 1994); *Massock v. Superior Court*, No. C99-3713 SC, 2000 WL 10240, at *3 (N.D. Cal. Jan. 4, 2000).

### 2.1    Separation of powers.

The Supreme Court has "not hesitated to strike down provisions of a law that ... undermine the authority and independence of one or another coordinate Branch."[34] A "Judiciary free from control by the Executive and the Legislature is essential if there is a right to have claims decided by judges who are free from potential domination by other branches of government."[35] To preserve that constitutional guarantee, "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers."[36]

If the government could limit a federal district judge's authority to hear testimony, the ability of a federal court to perform its most basic function of deciding "cases and controversies" under Article III of the Constitution would be notably impaired. Courts cannot fairly decide cases if they cannot have access to the information needed for a fair, objective decision. The government argues that "sovereign immunity would authorize the executive branch to make conclusive determinations on whether federal employees may comply with a valid federal court subpoena. Such a broad definition would

---

[34] *Mistretta v. United States*, 488 U.S. 361, 382 (1989).

[35] *United States v. Will*, 449 U.S. 200, 218 (1980).

[36] *United States v. Reynolds*, 345 U.S. 1, 9–10 (1953).

raise serious separation of powers questions."[37] This Court should "decline to

hold that federal courts cannot compel federal officers to give factual

testimony."[38]

## 2.2   Due Process

The "Supreme Court has cautioned that "[t]estimonial exclusionary rules and

privileges contravene the fundamental principle that the public ... has a right to

every man's evidence."[39] The "Court further has cautioned that such rules and

privileges must be strictly construed and accepted only to the very limited extent

that permitting a refusal to testify or excluding relevant evidence has a public good

transcending the normally predominant principle of utilizing all rational means for

ascertaining truth."[40] Permitting the government to fiat what evidence can be

---

[37] *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 778 (9th Cir.1994).

[38] *Exxon Shipping* at 778; *Northrop v. McDonnell Douglas Corp.*, 751 F.2d 395, 398 n. 2 (D.C.Cir.1984) (declining to "graft onto discovery law a broad doctrine of sovereign immunity"); *Gulf Grp. Gen. Enters. Co. W.L.L. v. United States,* 98 Fed. Cl. 639, 647 (Fed. Cl. 2011) ("Mindful of the separation of powers, the judiciary, not the executive branch controls the admission of evidence at trial. It is the court's prerogative, as well as the court's duty and responsibility under the Federal Rules of Evidence and the Rules of the United States Court of Federal Claims, to decide the factual and legal issues raised by the plaintiff's complaints, as well as to review objections to testimony when offered. The court will not abdicate its decision authority in this regard.")

[39] *In re Quest Communications Intern.*, 450 F.3d 1179, 1185 (10th Cir. 2006), *citing Trammel v. United States*, 445 U.S. 40, 50 (1980).

[40] *In re Quest Communications Intern.*, 450 F.3d at 1185, quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)); *Grand Jury Proceedings of John Doe v. U.S.*, 842 F.2d 244, 246 (10th Cir. 1988) ("We have long recognized that the very purpose of the criminal justice system is that of investigating, charging, trying, convicting and sentencing those who have

presented would "violate the fundamental principle that the public ... has a right to every man's evidence."[41] Even where the government makes a valid claim of privilege, if "a defendant demonstrates that a witness can provide testimony material to his defense, then the government's interest must give way."[42] These principles "flow from the recognition that a defendant has a fundamental, constitutional right "to have compulsory process for obtaining witnesses in his favor."[43]

This Court announced the rule more than nine months ago: *Touhy* does "not exempt an employee from appearing pursuant to a properly issued subpoena and either testifying or raising an appropriate privilege."[44] And,

---

committed offenses legislatively determined to be violative of the rights of persons and property. And when the course of justice requires the investigation of truth, no man has any knowledge that is rightly private. Thus, the search for truth in society's quest to administer justice creates a strong presumption against testimonial privileges because they result in the suppression of competent evidence.") (cleaned up)

[41] *Exxon Shipping* at 779; *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, (1950).

[42] *United States v. Rivera*, 412 F.3d 562, 569 (4th Cir.2005).

[43] U.S. Const. amend. VI; *United States v. Rosen*, 520 F.Supp.2d 802, 809-10 (E.D. Va. 2007).

[44] D.E. 372 at 16; James Moore *et al.*, *Moore's Federal Practice*, § 45.05[1][b] (3d ed. 2006) ("[T]hough an agency regulation may provide the method by which an agency head will comply with or oppose a subpoena, the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure.").

even where the government makes a valid claim of privilege, if "a defendant demonstrates that a witness can provide testimony material to his defense, then the government's interest must give way."[45] The government is a party; it cannot rely on *Touhy* to shield the facts. If it tries, this Court can hold the prosecution in contempt.[46]

Respectfully submitted,

s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail: Melody_Brannon@fd.org

---

[45] *United States v. Rivera*, 412 F.3d 562, 569 (4th Cir.2005).

[46] *United States v. Salemme*, 978 F.Supp. 364, 371 (D. Mass. 1997) ("if the Acting Deputy Attorney General does not comply with the order to disclose the status of the individuals at issue, it will be necessary for him, rather than a subordinate, to respond to the defendants' motion that he be held in civil contempt… It does not, however, immunize the ultimate decisionmaker, the Acting Deputy Attorney General, from being held in civil contempt if the court decides that it is appropriate to compel disclosure of the information at issue. *Touhy*, 340 U.S. at 472 (Frankfurter, J., concurring) ("[T]he Attorney General [cannot] forbid every subordinate who is capable of being served by process from producing relevant documents and later contest a requirement upon him to produce on the ground that procedurally he cannot be reached … [T]he Attorney General can be reached.")

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 28, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties in the case.


s/ Melody Brannon
Melody Brannon