**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | **Case No. 16-CR-20032-JAR** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Government's Motion to Exclude** |
| ) | **Improper Expert Testimony About** |
| **KARL CARTER,** ) | **Law and Legal Conclusions** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

The United States of America, by and through its counsel of record, Assistant United States Attorney Steven Clymer, appointed as Special Attorney pursuant to 28 U.S.C. § 515 to represent the United States in connection with Phase III of the Special Master Investigation, hereby responds to the Federal Public Defender's "Notice of Expert Testimony [Docket #606], and moves the Court to exclude proffered expert testimony that would invade the province of this Court to decide matters of law and apply the law to its factual findings.

**A. Introduction**

The FPD's expert witness notice describes anticipated expert testimony of three expert witnesses, one of whom is Professor Peter Joy. The expert testimony the FPD seeks to elicit from Professor Joy is described as follows:

- "Whether non-verbal communications between attorneys and clients communicate protected information under the facts of this case";

- "The legal and ethical responsibilities of a lawyer or law office who comes into possession of protected information";

- "<u>The interplay between the rules of ethics, the attorney-client privilege, and the Sixth Amendment</u>";

- "<u>Whether a recorded message indicating that a phone call between an attorney and a client 'is subject to recording or monitoring' constitutes a waiver of the attorney-client privilege under the facts of this case</u>";

- "<u>Whether the facts of this case justify the USAO's unilateral determination that the recorded message had waived the attorney-client privilege, authorizing the USAO to listen to affected phone calls</u>";

- "The legal and ethical reasonableness of an attorney's belief that the recorded message did not waive the attorney-client privilege under the facts of this case";

- "<u>The legal propriety of a presumption, under the facts of this case, that attorney-client communications concern the client's legal matter</u>"; and

- "<u>The legal</u> and ethical <u>duties of an attorney or law office to notify another attorney or law office of the receipt of privileged communications</u>."

Docket 606 at p. 2-3 (underlining added).

Although *some* of the above-described matters may arguably be within the purview of Fed. R. Crim. Evid. 702, the proposed expert testimony that is underlined above clearly is not. The underlined descriptions, which are taken verbatim from the FPD's expert testimony notice (Docket #606), contemplate testimony from a law professor about (a) purely legal matters and (b) conclusions to be drawn from application of the law to facts that are in dispute. This Court (and, in the event of an appeal, the Court of Appeals for the Tenth Circuit), has sole authority to

determine what the law is, to make findings of fact (also subject to review on appeal), and to apply the law as the Court interprets it to the facts as the Court finds them to be.

### B. Argument

It is well established that expert testimony that invades the province of either the fact-finder (usually assumed to be a jury) or the Court is impermissible. As the Tenth Circuit explained in *United States v. Simpson*, 7 F.3d 186 (10th Cir. 1993):

> The Rules do not, for example, allow an expert to offer testimony that merely tells the jury what result they should reach or testimony phrased in terms of "inadequately explored legal criteria." Fed.R.Evid. 704 adv. comm. note. Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law.

*Id*. at 188; *see also United States v. Richter*, 796 F.3d 1173, 1195 (10th Cir. 2015) ("To be admissible, an expert's testimony must be helpful to the trier of fact. Fed. R. Evid. 702. To ensure testimony is helpful, '[a]n expert may not state legal conclusions drawn by applying the law to the facts, but an expert may refer to the law in expressing his or her opinion.'") (quoting *United States v. Bedford*, 536 F.3d 1148, 1158 (10th Cir.2008) (brackets in *Richter*)).

These and other decisions make clear that some of the FPD's proposed expert testimony is improper and should be excluded. For example, the FPD expert testimony notice contemplates having Professor Joy give his opinion about <u>what the law is</u> by (a) testifying whether non-verbal communications can be privileged; (b) interpreting the Sixth Amendment and its relationship to the attorney-client privilege and other unspecified "rules of ethics"; (c) opining whether there is a waiver of the privilege when an inmate makes a telephone call to legal counsel after having received multiple warnings that the call will be monitored and recorded; and (d) describing a federal prosecutor's discovery obligations. These all are matters for this Court to decide, subject to *de novo* review in the Tenth Circuit. *See United States v. Bacon*, 900 F.3d 1234, 1237 (10th

Cir. 2018) (explaining that "questions of law relating to a Rule 41(g) motion" are reviewed *de novo* on appeal). As a result, expert testimony about these legal matters is improper. *United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992) (stating that "even expert witnesses are not permitted to give opinions as to what the law is"); *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988) (*en banc*) ("In no instance can a witness be permitted to define the law of the case.").

To permit a defense expert to give opinions about legal matters that the Court may ultimately address will necessitate cross-examination and the introduction of competing testimony about contrary legal authority. For example, were Professor Joy to express his personal view that inmates at CCA-Leavenworth did not waive the privilege when they made outgoing telephone calls despite the warnings that they received and the consent that they gave to monitoring and recording, government cross-examination of Professor Joy with the large body of case law in the Tenth Circuit and elsewhere holding or suggesting that the privilege is waived in these circumstances would be appropriate. In addition, the government would be entitled to present rebuttal expert testimony. "If one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same." *Specht v. Jensen*, 853 F.2d at 809. The government does not deny that the parties here are free here to present authority and argue to this Court about matters of law; it simply notes that under Tenth Circuit law, an expert witness should not be permitted to give his opinion about such legal matters. Exclusion of this testimony would alleviate the need for both cross-examination about the law and competing expert testimony about legal matters in rebuttal.

Similarly, some of the FPD's descriptions of expert testimony contemplate Professor Joy applying his opinion of the law to "the facts of this case." Indeed, three of the FPD's proposed areas of expert testimony expressly call for legal conclusions "under the facts of this case." Even

if there was agreement about what "the facts of this case" are,[1] it is the province of the fact-finder – typically a jury, but in this context, this Court – not an expert witness, to find facts and apply the law to the facts. "[T]estimony which articulates and applies the relevant law . . . circumvents the jury's decision-making function by telling it how to decide the case." *Specht v. Jensen*, 853 F.2d. at 808. This is exactly what the FPD proposes to do through the testimony of Professor Joy.

The leading Tenth Circuit decision, *Specht v. Jensen*, *supra*, is directly on point. There, the *en banc* Court considered whether Fed. R. Evid. 702 "will permit an attorney, called as an expert witness, to state his views of the law which governs the verdict and opine whether defendants' conduct violated that law." *Id*. at 806. The *Specht* Court "conclude[d that] the testimony was beyond the scope of the rule and thus inadmissible." *Id*.

The *Specht* plaintiffs made claims similar to those that the FPD has made here: alleging that the defendant government actors violated their constitutional rights. The claims there turned on "whether defendants' conduct involved a 'search' within the meaning of the Fourth Amendment

---

[1] There is no such agreement. For example, the FPD's expert notice refers to "the USAO's unilateral determination that the recorded message had waived the attorney-client privilege, authorizing the USAO to listen to affected phone calls." This description of purported "facts" is pure fiction. There has been no testimony or other evidence at the hearing that the United States Attorney's Office for the District of Kansa made a "unilateral determination that the recorded message [on outgoing inmate telephone calls] had waived the attorney-client privilege, authorizing the USAO to listen to affected phone calls." In fact, the evidence shows the opposite – that the United States Attorney's Office does not rely on such a determination to justify listening to inmate-attorney telephone calls. Instead, the evidence shows that AUSAs and law enforcement agents typically *stop listening immediately upon determining that the call may between an attorney and an inmate-client*. For example, AUSA Jabari Wamble testified that "[w]hen I heard [the defense attorney's] voice [on a recorded inmate call], I stopped listening and asked my assistant to get calls that did not include his number." Similarly, AUSA Lanny Welch explained that, in the *Rapp* case, a decision to terminate listening to Rapp's calls to legal counsel was made before seeking guidance from Welch and the Professional Responsibility Advisory Office at the Department of Justice about related matters, such as whether agent recusal was required. Exhibit 33 confirms this. "Agent Stokes discontinued listening to the call as soon as he realized one of the speakers on the call was the defense attorney."

and whether plaintiffs consented to the search," both of which "were issues to be determined by the jury." *Id*. The plaintiff offered a lawyer as an expert witness to testify based on "a hypothetical of the facts that are in evidence in this case." *Id*. The expert would opine whether "a search took place in the plaintiffs' home and business" and whether "'based on the same facts in evidence whether he believed a consent search of either the business or the residence had been taken or undertaken,'" Plaintiff's counsel further proposed that the witness would testify about "what would constitute a proper search, or the proper documents constituting or allowing a search" and that "if there is no search warrant, if there is no consent, if there are no exigent circumstances, that the search is illegal *per se*." *Id*. Over objection, the district court allowed the expert witness to testify about these matters "[o]n the basis of hypothetical questions tailored to reflect plaintiffs' view of the evidence." *Id*. at 807.

On appeal, the Tenth Circuit found reversible error. Its reasoning makes clear that the FPD's proposed questioning of Professor Joy as underlined above is impermissible. Specifically, the *Specht* Court explained:

> [W]e conclude the expert in this case was improperly allowed to instruct the jury on how it should decide the case. The expert's testimony painstakingly developed over an entire day the conclusion that defendants violated plaintiffs' constitutional rights. He told the jury that warrantless searches are unlawful, that defendants committed a warrantless search on plaintiffs' property, and that the only applicable exception to the warrant requirement, search by consent, should not vindicate the defendants because no authorized person voluntarily consented to allow a search of the premises. He also stated that the acts of the private individual could be imputed to the accompanying police officer to constitute sufficient "state action" for a § 1983 claim. By permitting the jury to hear this array of legal conclusions touching upon nearly every element of the plaintiffs' burden of proof under § 1983, the trial court allowed the expert to supplant both the court's duty to set forth the law and the jury's ability to apply this law to the evidence.

*Id*. at 808.

The only differences between *Specht* and this case is that *Specht* involved claimed Fourth Amendment violations, and the claims here are based on the Sixth Amendment, and consent was an issue in *Specht*, whereas waiver is an issue here.  These differences are immaterial.  Here, the FPD, like the *Specht* plaintiff, proposes to present expert testimony "touching upon nearly every element of [its] burden of proof," which will "supplant both the court's duty to set forth the law and the [court's] ability [as fact-finder] to apply this law to the evidence."   Accordingly, the underlined expert testimony should be excluded.

### C. Conclusion

For the reasons stated above, the Court should preclude the FPD from eliciting from Professor Joy the proposed expert testimony underlined above.

Respectfully submitted this 8th day of October, 2018.

Steven D. Clymer
Assistant United States Attorney
Special Attorney for the United States


s/ Duston J. Slinkard
DUSTON SLINKARD
First Assistant United States Attorney
444 SE Quincy, Suite 290
Topeka, KS  66683
Tele:   785-295-2850
Fax:    785-295-2853
duston.slinkard@usdoj.gov
Ks S.Ct.No. 21294

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of October, 2018, the foregoing was electronically filed with the clerk of the court for the District of Kansas using the CM/ECF system, which will send a notice of electronic filing to all counsel.

s/ Duston J. Slinkard
DUSTON SLINKARD
First Assistant United States Attorney