**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| **Plaintiff,** | |
| v. | Case No. 16-20032-02-JAR |
| **KARL CARTER,** | |
| **Defendant.** | |

**FINAL PRODUCTION AND BRIEFING ORDER**

On October 2, 2018, this Court reconvened the evidentiary hearing that began on May 15, 2018, on all matters that were set for hearing on that date, specifically: 1) the Special Master's Phase III Report; 2) the Federal Public Defender's ("FPD") Motion to Show Cause and Supplemental Motion for Order to Show Cause (Docs. 301, 585); and 3) pending Rule 41 motions (Docs. 82, 85). At the conclusion of the evidentiary hearing on October 12, 2018, the Court advised the parties it was not closing the record and would set a hearing on outstanding issues concerning the production of documents for November 16, 2018. The Court also set for hearing the FPD's Second Supplemental Motion for Order to Show Cause (Doc. 668). After hearing testimony from three witnesses from the Office of the United States Attorney, District of Kansas ("USAO") and the Special Master, as well as arguments and statements of counsel, the Court makes the following findings and order addressing outstanding matters with respect to the government's production of documents.

I.      **Procedural History and Facts**

The procedural history of this case is mostly undisputed and the Court assumes the reader is familiar with the orders, hearings, and discovery requests that precipitate the matters before the Court. The Court will not restate the underlying facts in detail, but will provide excerpts from the proceedings and orders as needed to frame its discussion of the discovery production matter presently before it.

The USAO has been on constructive notice to preserve all information in its control or possession that relates to the allegations in the *Black* case since at least August 9, 2016—the date of the emergency hearing set to consider Defendants' and the FPD's allegations that the USAO wrongfully acquired and used recorded attorney-client confidential communications in the underlying investigation in the *Black* case.[1] The USAO was also put on actual notice of the need to hold and preserve such information in an email sent by the FPD on August 30, 2016.[2] Moreover, the USAO was given direct orders to do so in the claw-back order issued by this Court on August 16, 2016.[3]

On October 25, 2016, the USAO was ordered by the Special Master "to ***identify and preserve*** all information and sources of information relevant to" the matters leading to his appointment on October 11, 2016.[4] The Special Master made clear that "[t]his obligation includes preserving all emails (regardless of the device used to send or receive them) and other documents related to video- and audio-recording at CCA-Leavenworth or any other detention

---

[1] Docs. 101, 102.
[2] Hrg. Ex. 589.
[3] Doc. 113.
[4] *See* Discovery Conf. Order, Doc. 155 at 5–6 (emphasis in original).

facility."[5]  In addition, the Special Master specifically ordered the USAO "to immediately make a forensic image of the personal computers of Erin Tomasic, Kim Flannigan, and Pauletta Boyd, and also of any computer used to view the video-recordings produced in this case by individuals affiliated with the [USAO]."[6]  At the November 16, 2018 hearing, the Special Master testified that he always expected these records to be produced and to that end, he engaged in collaboration with the government on search terms beginning in the fall of 2016.

      The USAO was first on notice of the likelihood of formal discovery regarding the underlying *Black* investigation and the extent of the USAO's cooperation with the Special Master and his investigation, when it received the *subpoena duces tecum* ("SDT") issued by the Special Master in advance of the evidentiary hearing scheduled for January 2018.  The first SDT demanded production of, *inter alia*, documents and materials sent to USAO-Kansas personnel concerning retention, preservation, and production of materials that relate to or concern the *Black* case and responses thereto; and a list or log of all repositories in the USAO-Kansas systems that could have been or were being searched using the list of search terms negotiated with the Special Master.  Production was stayed, however, by the Department of Justice's ("DOJ") petition for mandamus relief.[7]  The Court did not later enforce that SDT, given the government's claims that

---

[5]*Id.* at 6.

[6]*Id.*

[7]Doc. 382.  On February 26, 2018, the Tenth Circuit Court of Appeals granted in limited part the petition for writ of mandamus to the following extent:

> The district court's order directing the Special Master to conduct a Phase III investigation authorized specific tasks as they pertain to three categories of people: defendants in the case before it; defendants with pending motions for relief in the District of Kansas which motions are based on certain allegations; and targets and subjects of the CCA investigation . . . We direct the district court to limit the scope of investigation and inquiries to matters related to defendants before the court in *United States v. Black*, No. 16-20032-JAR, and to other parties in *Black* who have filed Rule 41(g) motions in that proceeding.

Doc 398.

it had authority to preclude production and testimony based on its housekeeping regulations often referred to as the DOJ's *Touhy* Regulations ("*Touhy*").[8]

The Court ultimately rescheduled the evidentiary hearing for the first two weeks of October 2018.  On August 17, 2018, the Special Master served the government with a much narrower SDT.  This second SDT demanded, *inter alia*, information, documents, and instructions sent by Emily Metzger, the USAO Litigation Hold Coordinator, concerning retention, preservation, and production of materials related to the issues in *Black* and responses thereto, as well as a list or log of all repositories being searched using the negotiated search terms.  It included a response deadline of August 31, 2018, prior to the commencement of the hearing set for October 2, 2018.  The government did not object to that SDT, but instead merely asked for a two-week extension to produce the subpoenaed information ahead of the October hearing.[9]  The Court granted that request, giving the government an extra week, until Friday, September 21, 2018, to respond.[10]

Nonetheless, the government failed to produce all subpoenaed information, either timely or in full.  Specifically, on Monday September 17 and Tuesday, September 18, the government timely produced two thumb drives containing a total of 14.16 GB of electronically stored information ("ESI").  The government also notified counsel and the Court of its intention to produce documents responsive to the SDT on a rolling basis, with more to come later that week.  No further production responses were delivered before the deadline expired on Friday, September 21, 2018.

---

[8] 28 C.F.R. §§ 16.21–16.29.

[9] Doc. 582.

[10] Doc. 586.

On Monday, September 24, 2018, government counsel informed counsel for the Special Master that they were continuing to work on production, but had no authority from the Office of the Deputy Attorney General ("DAG"), which the government claimed was required in order to release more subpoenaed documents. Counsel for the Special Master chose not to seek relief from the Court, but responded that going past the week prior to the hearing would be problematic. The government then either obtained from the DAG the necessary authority or decided such authority was unnecessary; it produced a thumb drive containing 7.07 GB of ESI on September 25; another thumb drive containing 6.20 GB of ESI on September 27; and yet another thumb drive containing 2.11 GB of ESI on September 30.

The hearing started as scheduled on October 2, 2018. Upon questioning, counsel for the government could not say whether the USAO had provided all information responsive to the SDT.[11] The Court allowed the hearing to continue as scheduled through October 12, 2018. During the October 2 hearing, the government delivered another thumb drive containing 0.32 GB of ESI. The government produced a final thumb drive containing 0.06 GB *during* the hearing on October 11, too late for use with the only witnesses to which it applied.

On October 12, the last day of the hearing, government counsel still could not say whether the USAO would produce more information.[12] Furthermore, counsel for the government rejected the demand that the government produce a log of information withheld from production as "simply impractical," noting that the Special Master "is just going to have to rely on trust in the U.S. Attorney's Office that it is complying with what it said it's going to

---

[11]Hrg. Tr. at 410. The transcripts of the October 2018 evidentiary hearing consist of nine volumes found at Docs. 651, 652 and 669 through 677, and collectively consist of 2,485 sequentially paginated pages. For convenience, the Court cites to these documents collectively as "Hrg. Tr." followed by a reference to the page number in the transcript that appears in the upper right corner of each page.

[12]Hrg. Tr. at 2477–78.

do."[13]  The Special Master responded that under these circumstances, it simply could not rely upon that.[14]  It being evident that the Special Master, Defendant Carter, the FPD, and other interested parties were denied an opportunity to fully consider the government's discovery responses, the Court kept the record open and ordered a further evidentiary hearing for November 16, 2018, to "figure out whether the production is complete, all other concerns about production, [and] any requests for remedies about production."[15]

It was first verified at the November 16, 2018 hearing that the USAO had not put an effective litigation hold in place until May 2017, nine months after the government was repeatedly placed on notice in August 2016 to implement a litigation hold preserving all its information relative to the allegations in the *Black* case.  That evidence contradicted earlier testimony in October 2018 and SDT responses that the USAO had a litigation hold in place by virtue of an email sent to employees by Emily Metzger on December 19, 2016.  In fact, that email merely told employees to preserve documents, without identifying what type of documents or where the documents could be found.  On November 16, the USAO Systems Manager testified that the December email did not trigger the DOJ's litigation hold requirements that would prevent archived documents from being permanently deleted, and it did nothing to halt DOJ's automatic rolling purge of contents of certain other repositories.

Further, counsel for the government have been on notice that they needed to provide a production log, or otherwise work with the Special Master to resolve any issues concerning withheld documents, since at least June 7, 2017, when the Special Master directed them to discuss whether to produce an adequate log *in camera* to the Court or work with him on agreed

---

[13]*Id.* at 418–19.

[14]*Id.* at 419.

[15]*Id.* at 2482.

redactions from produced materials.[16]  The government, however, failed to provide a log of withheld documents, asserting it was too much work or too voluminous.  Of course, submission of a privilege log is standard in discovery production, obviating the need for the government to be placed on notice, and the Court did not have to specifically order it.  In any event, in October, counsel for the government expressly refused to produce a log.[17]

In addition to thwarting the preservation and production of documents, the government has allowed certain documents to be forever lost through an automatic rolling purge process that was not halted through a timely litigation hold.  Moreover, the government failed to protect against any purposeful destruction of documents by allowing the alleged wrongdoers to perform their own document reviews and production in response to the SDT issued ahead of the October 2018 hearing.  Notably, the only two prosecutors who did not have an opportunity to review their own repositories—Erin Tomasic and Tanya Treadway—proved to have breached attorney-client privilege by listening to audio recordings.  The government then produced a myriad of documents by dumping them on the Special Master and the FPD in a manner whereby it was not possible to ascertain what documents came from whom.  This latter problem was especially serious in connection with some of the thumb drives with the largest volumes of data.

## II.  Conclusions of Law

To prevent spoliation, litigants are under an "obligation to preserve evidence . . . when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation."[18]  The general rule is that "'[o]nce a party

---

[16]Hrg. Ex. 1184.

[17]Hrg. Tr. at 132–42.

[18]*Martinez on behalf of Estate of Martinez v. Salazar*, Civ. No. 14-534 KG/WPL, 2017 WL 4271246, at *2 (D. N.M. Jan. 26, 2017) (quoting *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 436 (2d Cir. 2001)).

reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a litigation hold to ensure the preservation of relevant documents" and other tangible evidence.[19]  Indeed, Emily Metzger testified at the November 16, 2018 hearing that as long as there is a reasonable suspicion that one may be sued or accused, that is the time to issue a litigation hold.  In this case, the DOJ had provided its own offices with a standardized litigation hold form.  This form was not provided to USAO employees in connection with this case, until May 19, 2017.

In light of the facts set forth above,

**IT IS THEREFORE ORDERED BY THE COURT** that the government shall accomplish the following:

1. Immediately preserve all documents on the USAO network, including shared, individual, national, and local drives to avoid any further destruction of documents, including documents that were deleted by the user and any earlier versions of modified documents.  The government is to construe this preservation order in the broadest terms possible, to ensure that no documents of any age or nature are destroyed, purged, or otherwise rendered inaccessible.  The Court may issue a more detailed preservation order at such time as the USAO provides further information about its local and national systems.

2. Use the search terms negotiated with the Special Master to run a document search on the ProofPoint email archive system files and all other electronic repositories,

---

[19]*School-Link Tech., Inc. v. Applied Res., Inc.*, No. 05-2088-JWL, 2007 WL 677647, at *3 (D. Kan. Feb. 28, 2007) (citing *Zubulake v. UBS Warburg,* LLC, 229 F.R.D. 422, 431 (S.D.N.Y. 2004)); *Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1294–95 (D. N.M 2016) (citing *Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, at *3 (10th Cir. Feb. 20, 1998)); *see Helget v. City of Hays*, No. 13-2228-KHV-KGG, 2014 WL 1308893, at *2–3 (D. Kan. Mar. 31, 2014) (discussing duty to preserve evidence if party on notice that future litigation is likely).

individual or shared, of every current or former USAO employee who has testified at any hearing in this case. All electronic repositories include those electronic repositories that are identified on the litigation hold notice and certification form issued May 19, 2017.[20] The Court notes that such a search was completed in June 2017 for the ProofPoint email archive file of Erin Tomasic, but not for any other person's ProofPoint email archive file; nor has there been a search of all of the other electronic repositories of any current or former USAO employee who testified at any hearing in this case.

3. Produce all documents resulting from the searches of the electronic repositories described in 2. above, and identify the source of each document, including the name of the user/employee/attorney, and the specific repository in which it was stored.

4. Search all non-electronic repositories of every USAO current or former employee who has testified at any hearing in this case, using a team of neutral, uninterested searchers to accomplish all steps of the search. Non-electronic repositories include those non-electronic repositories that are identified on the litigation hold notice and certification form issued May 19, 2017.

5. Produce all documents from the searches of the non-electronic repositories described in 4. above, and identify the source of each document, including the name of the user/employee/attorney, and the specific repository in which it was stored.

6. Produce every completed and signed response to the May 19, 2017 litigation hold notice and certification form and any communications or documents concerning the

---

[20]Hrg. Ex. 1196.

> responses, reactions, or actions to any litigation hold, the Court's preservation order, the Special Master's Discovery Conference Order, and the FPD's request to preserve.

7. Produce a production log for withheld information of any type, including identification sufficient to allow a reviewer to rule on the stated basis for withholding, including statutory or common-law privilege, *Touhy* authority, and/or any other category of justification that could allow exclusion from production in response to this Order.

**IT IS FURTHER ORDERED** that the government shall have **sixty (60) days** from the date of this Order to comply with directives (2) through (7) above; there will be no further extensions. The government shall comply with directive (1) above immediately. Within **120 days** of this Order, the FPD and the Special Master may move for admission of any additional exhibits identified through this production. The parties shall have **120 days** from the date of this Order to submit proposed findings of fact and conclusion of law.

**IT IS SO ORDERED.**

Dated: November 21, 2018

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
