IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>    Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>KARL CARTER,  )<br>  )<br>    Defendant.  )<br>_____ ) | Case No. 16-CR-20032-JAR<br><br>Affirmation of Stephen R.<br>McAllister; Exhibits |

I, Stephen R. McAllister, affirm as follows:

1. I am the United States Attorney for the District of Kansas. I was appointed to this position by the President of the United States and confirmed by the United States Senate. I took the oath of office on January 25, 2018.

2. I make this affirmation in support of the government's motion to reconsider and vacate the Court's "Final Production and Briefing Order" [Docket #690], issued on November 21, 2018; to terminate the Phase III investigation; and to disqualify the Special Master.

3. On August 21, 2018, I was served with a subpoena *duces tecum* issued by the Special Master. A copy of this subpoena, which is dated August 17, 2018, and demands that I produce 13 categories of documents and materials to the Special Master on or before August 31, 2018, is attached as Exhibit A.

4. Because this subpoena demanded production of "material contained in the files of the Department [of Justice] and "material acquired as part of the performance of [my] official

duties or because of [my] official status," I made efforts to determine whether I had Department of Justice ["DOJ"] approval to comply with the subpoena. *See* 28 C.F.R. §§ 16.22 and 16.23.

5. In the meantime, I took steps to expeditiously locate and collect documents and materials responsive to the subpoena. I directed First Assistant United States Attorney ["FAUSA"] Duston Slinkard to task those employees of the United States Attorney's Office for the District of Kansas ["USAO"] who conceivably could have possession or control of responsive documents and materials in electronic mail accounts, in other USAO electronic storage directories, or in their offices to locate, assemble, and produce digital copies of such materials to an USAO administrative employee who was not involved in the litigation giving rise to the Phase III investigation. Copies of electronic mail messages that FAUSA Slinkard sent to accomplish my directive are attached as Exhibit B and marked as Government Exhibit 46 in this litigation.

6. FAUSA Slinkard took similar steps to locate responsive documents that had been in the possession and control of former USAO employees, specifically former Special Assistant United States Attorney ["SAUSA"] Erin Tomasic and former Assistant United States Attorney [AUSA"] Tanya Treadway.

7. After the USAO employees who had been tasked to locate, collect, and produce internally responsive documents completed those tasks, the documents they identified as responsive were placed into digital folders for further review.

8. Compliance with the subpoena *duces tecum* between the date of service, August 21, 2018, and the compliance deadline, August 31, 2018, simply would not have been possible given the breadth of the categories of documents demanded by the subpoena, the expansive time-frame that the subpoena designated ("January 1, 2014 through May 1, 2017"), and the need to review numerous documents, both to screen for responsiveness and to determine if there were

other considerations that may affect disclosure. *See* 28 C.F.R. § 16.26(a) and (b). Accordingly, the government sought an extension from the Special Master, who refused to grant one, but directed the government to seek relief from the Court. The government moved the Court to stay compliance with the subpoena, Docket #582, and the Court granted a three-week extension. Docket #586.

9. I received authorization from the Office of the Deputy Attorney General ["ODAG"] to *voluntarily* disclose internal DOJ documents and materials to the Special Master consistent with the categories in the subpoena *duces tecum*, if they bore directly on the conduct of DOJ officials that is the subject of allegations of wrongdoing, specifically alleged violations of the Sixth Amendment, alleged efforts to improperly impede the Special Master's investigation, alleged willful destruction of evidence, and the unauthorized entry into Chief Judge Robinson's chambers. I was not authorized to disclose documents reflecting internal communications related to litigation-related decision-making and strategy and the thought processes of DOJ officials, or documents sent to or received by the Department's Office of Professional Responsibility ["OPR"] or its Professional Responsibility Advisory Office ["PRAO"].

10. Three people, FAUSA Slinkard, Assistant United States Attorney and Special Attorney Steven D. Clymer, and myself, personally reviewed the documents described in paragraph 7 above and separated them according to the authorization described in paragraph 9. I directed that we produce or withhold documents in accordance with the authorization I received from ODAG, with the exception described below in paragraph 18. In doing so, FAUSA Slinkard, AUSA Clymer, and I uniformly erred on the side of over-disclosure, and did so numerous times. By this, I mean that if there was any uncertainty whether a particular document described or was evidence of relevant conduct by a USAO employee or, instead, whether it reflected only

deliberations (as this distinction is more fully described in paragraph 9), I always chose to produce, rather than withhold the document.

11. Throughout this process, FAUSA Slinkard, AUSA Clymer, and I were extremely mindful of the need to review and produce documents to the Special Master as soon as was practicable given the Court's order and the upcoming evidentiary hearing set to begin on October 2, 2018. We endeavored to review documents as soon as they were placed into the digital folders described in paragraph 7 above. We conducted the review as expeditiously as possible consistent with our other responsibilities and the many competing demands on our time and attention (FAUSA Slinkard was also serving as the Chief of the USAO Criminal Division and AUSA Clymer is the Chief of the Criminal and Appeals Division in the USAO in the Northern District of New York) and our legal obligation to follow the authorization described in paragraph 9. We worked many nights and every weekend to conduct the necessary review of the large volume of documents that people within the Kansas USAO produced as carefully and expeditiously as possible.

12. I am aware that this Court has expressed frustration with the Department's voluntary disclosure, describing it as a "document dump." Given the breadth of the Special Master's subpoena *duces tecum*, and the time frame within which compliance was demanded, however, it was inevitable that any production consistent with the subpoena's demands would result in a large volume of documents being provided within a short period of time. We voluntarily accepted the structure of the Special Master's demands; I promptly directed that USAO employees identify, collect, and submit items with reference to the category of each of those demands; and Mr. Slinkard, Mr. Clymer, and I reviewed and produced items in response to each demand. The government's production was made in good faith as expeditiously as possible.

13. Using the process described above, I produced digital materials to the Special Master consistent with the list set out in Exhibit 1194.

14. During the above-described production, the government and counsel for the Special Master exchanged correspondence relevant to the government's reconsideration motion. I have attached the following communications related to the government's production: as Exhibit C: a letter dated September 17, 2018, from AUSA Clymer to counsel for the Special Master; as Exhibit D: a letter dated September 18, 2018, from counsel for the Special Master to AUSA Clymer; as Exhibit E: a letter dated September 21, 2018, from AUSA Clymer to the Special Master; and, as Exhibit F: a letter dated September 17, 2018, from me to counsel for the Special Master. In addition, I have attached as Exhibit I, a letter that then-United States Attorney Thomas Beall received from the Special Master in July 2017.

15. As part of the document review and production process described above, USAO Systems Manager David Steeby produced under the process described in paragraph 7 a large digital file titled ETOMASICBLACK7_0.pst as responsive to Category #2 of the Special Master's *duces tecum*, which demanded production of "[a]ny and all documents and materials sent, given to, or received by AUSA Emily Metzger in response to her instructions concerning retention, preservation, and production of materials that relate to or concern Black or the Investigation." This file was created from the results of a search string specified by the Special Master in an e-mail chain attached as Exhibit G. The search string was run through Erin Tomasic's e-mail account in the DOJ ProofPoint system to produce these results. It is my understanding that Metzger and/or Steeby had possession of ETOMASICBLACK7_0.pst as part of efforts to assist the Special Master refine search terms.

16. Although this entire digital file arguably was responsive to the Category #2 demand in the subpoena by virtue of the circumstances surrounding its creation and Metzger's possession of it, the file contains numerous internal DOJ messages that have no bearing on matters in this proceeding. Accordingly, I did not initially produce the entire digital file to the Special Master and we began an internal review of Tomasic's entire e-mail archive. I explained this, and my reasoning, to counsel to the Special Master in the letter marked as Exhibit F.

17. At that time, as I informed counsel for the Special Master, "[i]nstead of producing this large digital file, we have made and are continuing to make efforts to search Tomasic's e-mail account and other computer folders to identify responsive documents in her email messages."

18. Later, it became apparent that this effort to locate responsive Tomasic electronic mail messages would not be complete in time to produce those messages before Tomasic testified at the October evidentiary hearing. In order to ensure that the Special Master and the Federal Public Defender were not denied potentially relevant messages, I chose to voluntarily disclose the entire ETOMASICBLACK7_0.pst file. I did so and explained my reasoning in an electronic mail message to counsel for the Special Master on September 29, 2018. This message is attached as Exhibit H.

19. Based on conversations with FAUSA Slinkard, it is my understanding that before AUSA Tanya Treadway retired from DOJ on September 30, 2017, she produced to Mr. Slinkard materials that she had retained in compliance with a litigation hold that the USAO issued in connection with this case in 2016. AUSA Slinkard, in turn, provided these materials to AUSA Metzger because she was the USAO Litigation Hold Coordinator. Accordingly, by virtue of the circumstances under which these materials came into Ms. Metzger's possession and without regard to their content, they were responsive to Category #2 of the subpoena *duces tecum* and collected

during the process described in paragraph 7 above on that basis. Accordingly, after these materials were reviewed based on the authorization in paragraph 9 above, I produced them in their entirety (other than discs containing recordings of telephone calls, copies of which had been produced to defense counsel in discovery) to the Special Master. The Treadway materials included handwritten notes related to *United States v. Michelle Reulet*, Case No. 5:14-cr-40005-DDC.

I affirm the above to be true and correct to the best of my knowledge.

Dated this 4th day of December, 2018.

_____
Stephen R. McAllister