## In the United States District Court
## for the District of Kansas

**United States of America**,

Plaintiff,

v.

Case No. **16-cr-20032-JAR-02**

**Karl Carter,**

Defendant.

## RESPONSE TO MOTION TO RECONSIDER (D.E. 697)

The Court has ordered the Government to produce relevant information by a date certain.[1]  The Government asks the Court to reconsider.[2] We respond to just three concerns: the standard for reconsideration under D.Kan. Rule 7.3; the Special Master's impartiality; and the Court's authority to order the production because Rule 41(g) is a civil proceeding and because of the active contempt inquiry. Because all three issues weigh against the Government, the motion should be denied.

## 1. The Government's request does not qualify for reconsideration.

A motion to reconsider falls squarely within the Court's wide discretion[3], and is not "a second chance for the losing party to make its strongest case or to dress up

---

[1] D.E. 690.

[2] D.E. 697.

[3] *Hancock v. City of Oklahoma City*, 857 F.2d 1394, 1395 (10th Cir. 1988) (district court's decision on motion for reconsideration is reviewed under abuse of discretion standard); *Paramount Pictures Corp. v. Thompson Theatres, Inc.*, 621 F.2d 1088,

arguments that previously failed."[4] Because "rulings are not intended as first drafts, subject to revision and reconsideration at a litigant's pleasure,"[5] a "party's failure to present its strongest case in the first instance does not entitle it to a second chance in the form of a motion to reconsider."[6]

But this is precisely what the Government attempts here. Because the motion fails Kansas District Court Rule 7.3 standards—an intervening change in controlling law, the availability of new evidence, or to correct clear error or manifest injustice—it should be denied.

### 1.1. The Government presents no previously unavailable new evidence.

The Government claims new evidence is now available, asking "to bring to the Court's attention facts that were *not before it* at the time it issued its order, including, for example, the relevant exchanges between the Government and counsel for the Special Master related to the Government's response to the

---

1090 (10th Cir. 1980); *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir.2000) (a motion for reconsideration is an "inappropriate vehicle to reargue an issue previously addressed by the court when the motion merely advances new arguments, or supporting facts which were available at the time of the original motion.").

[4] *United States v. D'Armond*, 80 F.Supp.2d 1157, 1170-1 (D. Kan. 1999); *Voelkel v. General Motors Corp.*, 846 F.Supp. 1482, 1483 (D. Kan. 1994); *Sonnino v. University of Kansas Hosp. Authority*, 221 F.R.D. 661, 664 (D. Kan. 2004).

[5] *United States v. D'Armond*, 80 F.Supp.2d at 1170-1.

[6] *TBG, Inc. v. Bendis*, 845 F. Supp. 1459, 1460 (D. Kan. 1994); *Van Skiver v. United States*, 952 F.2d 1241, 1243 (10th Cir. 1991).

2

subpoena *duces tecum*."[7] But if those facts were "not before" the Court, it is because the Government did not present them, not because the facts were unavailable.

At the close of the October hearing, the Court scheduled a discovery status conference for the parties to provide the Court "a final word [on] . . . whether production has been completed to everyone's satisfaction."[8] That hearing was set for November 14, 2018. The "exchanges between the Government and counsel for the Special Master",[9] presumably set forth in Government exhibit B-I, all occur between July 10, 2017, and October 11, 2018, and completed a full month before the November discovery status hearing.[10] That the Government neither raised nor briefed those facts before November 14 does not render them new. It renders them forfeited. [11]

One other note—even had the "new evidence" been properly presented, it does not compel a different result. That the Government did not undertake production until August and that it abandoned production to individual AUSAs, ratifies the need for Court's Order.

---

[7] D.E. 697 at 4. (emphasis added).

[8] Hrng. at 2480.

[9] D.E. 697 at 4 & 697-1, Exhibit B-I.

[10] Hrng. at 2809.

[11] *Servants of the Paraclete v. Does*, 204 F.3d at 1012; *Van Skiver v. United States*, 952 F.2d at 1243 ("As this basis for reconsideration was presumably available when Defendants filed their motion to dismiss, it is not a proper basis for a motion to reconsider."); *TBG, Inc. v. Bendis*, 845 F. Supp. at 1460 (same).

**1.2 There was no clear error or manifest injustice.**

The Government also says that "reconsideration is needed here to correct 'clear error' and 'prevent manifest injustice', because the Court must disqualify the Special Master, terminate the Phase III investigation, and vacate the production and briefing order."[12] That is wrong for three reasons.

First, the Government misconstrues the relational link between the challenged Order and the feared injustice. This is a 1) non-dispositive production order and 2) it allows the Government to withhold legitimately protected information.[13] Vacating the Order will neither disqualify the Special Master nor terminate the Phase III investigation.

Second, the Tenth Circuit defines clear error as an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment."[14] Here, the Government identifies no factual error by the Court. The only alleged legal error asks whether Fed. R. Crim. P. 16 compels the production;[15] that is the wrong question, as we

---

[12] *Id.*

[13] D.E. 697-1 at 6, Counsel for Special Master SDT to USAO, citing 28 C.F.R. § 16.26 ('Counsel please take note: These demands are not intended to demand production that would violate any statutory or common law provision. . . . Should the Department of Justice deny disclosure of anything demanded herein, please identify the denial by reference to the factor(s) in §16.26(b) deemed applicable to that denial, and identify the official who is refusing to comply.").

[14] *Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1236 (10th Cir. 2001); *CalMat Co. v. Oldcastle Precast, Inc.,* __ F. Supp. 3d __, 2018 WL 3025053 (D.N.M. June 21, 2018).

[15] The Government also renews its argument that the Court's Phase III investigation violates the separation of powers. D.E. 697 at 13. The Government

explain below. And even in that argument, the Government made no effort to cast this as clear error *deserving reconsideration* under the relevant standard.

Third, to warrant reconsideration for manifest injustice, the moving party must show[16] a "result that is fundamentally unfair in light of governing law,"[17] or an error "apparent to the point of being indisputable"[18] and resulting from "a complete disregard of the controlling law."[19] Showing that the Court is "just maybe or probably wrong" is not enough; the Government must establish that the order "strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish."[20]

---

argued, and lost, the same issue to the Tenth Circuit in petitioning for mandamus. Tenth Cir. Case number 18-3007, Petition for Mandamus, at 21-22, 26; Petitioner's Reply at 11-17; and Order, Feb. 26, 2018

[16] *Koch v. Koch Industries*, 203 F.3d 1202, 1222 (10th Cir. 2000) ("Furthermore, the burden of demonstrating manifest injustice falls upon the party moving for modification."); *R.L. Clark Drilling Contractors, Inc. v. Schramm, Inc.*, 835 F.2d 1306, 1308 (10th Cir.1987) (same).

[17] *CalMat*, 2018 WL 3025053, at 1.

[18] *Paliwoda v. Showman*, Not Reported in F.Supp., 2014 WL 11517806 (D. Kan. 2014); *Shirlington Limousine & Transp., Inc. v. United States*, 78 Fed.Cl. 27, 31 (Fed. Cl. 2007) ("Where reconsideration is sought due to manifest injustice, the moving party can only prevail if it demonstrates that the injustice from the case is apparent to the point of being indisputable.").

[19] *Venegas-Hernandez v. Sonolux Records*, 370 F.3d 183, 195 (1st Cir. 2004); *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015) ("A manifest error occurs when the district court commits a wholesale disregard, misapplication or failure to recognize controlling precedent."); *In re Energy Future Holdings Corp.*, 904 F.3d 298, 311-12 (3rd Cir. 2018) (same, citing *Vengas-Hernandez* and *Burritt*).

[20] *Parts and Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988); *United States v. Rigas*, 583 F.3d 108, 123 (2nd Cir. 2009) (cleaned up) ("The manifest injustice standard is, by definition, deferential to district courts and

Here, too, the Government falls short. It relies on one case, *Cobell v. Norton,*[21] to make the "steep uphill climb"[22] of proving manifest injustice. But *Cobell* does not render the issue "indisputable" or establish that the Court exhibited a complete disregard of the controlling law. It is a 15-year-old, fact-driven case from a different circuit that the Government apparently overlooked every other time it argued before this Court or the Tenth Circuit. And even if the Government's interpretation of *Cobell* is spot-on (and it's not, as we explain below), it argues only that this Court's order was wrong, without citing a single case where a court found manifest injustice.

Finally, the Government says the Court invited the motion, and thus it is properly before the Court.[23] But what the Court said was, "I'd ask you to consider my order and decide whether you *in good faith* should even file a motion for reconsideration."[24] The Court did not say that any motion it filed would meet the requirements of Rule 7.3. The Government's motion fails to qualify for reconsideration and should be denied.

---

provides relief only in the proverbial rare case."); *United States v. Tapia*, 761 F.2d 1488, 1491-92 (11th Cir. 1985) (defining manifest injustice as a "shocking" error).

[21] 334 F.3d 1128 (D.C. Cir. 2003); DE 697 p 4-16.

[22] *United States v. Moran*, 393 F.3d 1, 8 (1st Cir.2004) ("A litigant seeking to fit within the confines of this exception must negotiate a steep uphill climb...A finding of manifest injustice requires, at a bare minimum, a definite and firm conviction that a prior ruling is unreasonable or obviously wrong.").

[23] D.E. 697 at 5.

[24] *Id.* at 2809 (emphasis added).

## 2. The Special Master need not recuse himself or be disqualified.

The Government argues that Special Master Cohen must recuse himself or be disqualified on grounds that his impartiality may be questioned.[25] The reason, according to the Government, is that the Special Master learned unfavorable facts about the USAO and developed opinions about those facts before Phase III.[26]

As a preliminary note, the effort to recuse the Special Master has no place in the motion to reconsider the production order. He plays almost no role in the Order itself. It should be rejected for that reason alone.

Substantively, the Government fails, too, for this reason: Receiving *accurate* information unfavorable to the Government *from the Government* during this very litigation does not create an unfair and disqualifying bias. Otherwise, any party could disqualify a Court or Special Master by merely introducing inculpatory information and then complaining when that information is accepted. This is precisely the misuse of the recusal statute that courts have warned against.[27]

---

[25] D.E. 696 at 5 (citing 28 U.S.C. § 455(a)).

[26] *Id.* at 7-10.

[27] *See* note 43, below.

**2.1 The accusation is unforgivably late.**

The Tenth Circuit has held that "under either 28 U.S.C. § 144[28] or § 155, the party seeking recusal must act in a timely fashion to request recusal."[29] Here, the Government's claim is based on conversations that took place two years ago between the Special Master and USAO attorneys,[30] but it never mentioned recusal until now, after exposure to reams of damaging exhibits and damning testimony from dozens of witnesses. The Tenth Circuit has cautioned that "[a] judge should recuse only for good and sufficient reasons, never to avoid a difficult task or indulge a party."[31] Moreover, "[j]ust as a district court judge should not be disqualified on the ground that one party disagreed with the judge's decision, so should [a Special Master] not be disqualified on the ground that one party disagreed with his report."[32]

---

[28] Section 144 establishes the procedure for making claims that a judge "has a personal bias or prejudice." We assume that the Government did not invoke this statute because it is not claiming that Special Master Cohen has an actual bias; rather, it presents its claim as one of an *appearance* of partiality. D.E. 696 at 5.

[29] *United States v. Stenzel*, 49 F.3d 658, 661 (10th Cir. 1995). Recently, the Tenth Circuit suggested that some recusal claims ought to be heard on their merits even if untimely, given that "recusal-based arguments uniquely implicate the integrity of the justice system." *United States v. Wells*, 873 F.3d 1241, 1250 (10th Cir. 2017).

[30] *Id.*

[31] *United States v. Jordan*, 678 Fed. Appx. 759, 768 (10th Cir. 2017).

[32] *Paycom Payroll, LLC v. Rishison*, 758 F.3d 1198, 1208 (10th Cir. 2014) (bracketed language standing in for "Román"—the Special Master whose recusal the Tenth Circuit denied).

In this case, this Court should exercise its discretion to declare the Government's claim waived.[33] As the Eleventh Circuit has warned, a party may not strategically wait to raise a recusal claim until it sees how the litigation turns out.[34] "The recusal provision was intended to be a shield, not a sword. An issue involving recusal cannot be used as an insurance policy to be cashed in if a party's assessment of his litigation risks turns out to be off and a loss occurs."[35] The USAO has treated recusal in exactly that way—willfully engaging in what it now claims were inappropriate conversations with the Special Master and then keeping a two-year-old recusal claim in its back pocket for use in desperate times. The Government waived its recusal claim long ago, and this Court should not consider it.

---

[33] *Id.*; *cf. United States v. Johnson*, 554 Fed. Appx. 773, 775 n.1 (10th Cir. 2014) (noting that "where the appellant has failed to timely seek recusal in district court," the Tenth Circuit variously treats such claims as waived or forfeited; citing cases).

[34] *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.*, 140 F.3d 898 (11th Cir. 1998).

[35] *Id.* at 913; *accord Belue v. Leventhal*, 640 F.3d 567, 574 (4th Cir. 2011) ("while recusal motions serve as an important safeguard against truly egregious conduct, they cannot become a form of brushback pitch for litigants to hurl at judges who do not rule in their favor"; finding recusal motion based on judge's "strong views about the merits" "decidedly ill-founded"); *Chevron Corporation v. Donziger*, 2018 WL 1234646 at *6 & n.15 (S.D.N.Y. March 1, 2018) (litigant "long ago" waived claim of Special Master bias where, despite objecting to Special Master's appointment, litigant "never moved to recuse or remove him"); *Bayer Healthcare Pharmaceuticals, Inc. v. River's Edge Pharmaceuticals, LLC*, 2016 WL 3687843 at *2 (N.D. Ga. Feb. 23, 2016) ("courts have recognized the potential for parties to use disqualification motions as an abusive litigation tactic"; denying motion to disqualify Special Master).

**2.2 There is no substantive basis to disqualify the Special Master.**

On the merits, neither Supreme Court nor Tenth Circuit law supports the Government's recusal claim.

The Supreme Court made it clear decades ago in *Liteky v. United States* that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible."[36] And thus a party does not establish bias or partiality by merely invoking "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases."[37] Neither does a party establish bias or partiality by invoking "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display."[38]

The USAO is in denial about the character and conduct of its own members. The Special Master did not independently instigate a plot to end the careers of AUSAs. First Assistant Deb Barnett provided the Special Master with information about the personnel and practices of the Kansas City, Kansas, USAO.[39] That information was

---

[36] 510 U.S. 540, 555 (1994).

[37] *Id.*

[38] *Id.* at 555-56.

[39] Exh. 1166; Hrng at 2412-13.

accurate. And in response, the Special Master said that he could help "*if* they were bad actors,"[40]  "*if* the cure . . .", and "*if* that was what it took to cure the problem . . .", and he was willing to do what he could to "properly fix it", including retraining.[41] Now, the Government complains about what it has done. This Court must reject the Government's recusal claim as self-inflicted, waived, and legally insupportable.

Further, the Government contends there is "no evidence that Barnett expressed agreement with or agreed to help implement this plan."[42] This is only because the Government did not raise the disqualification claim before Barnett and Beall testified. Otherwise, the cross examination of both would have explored this issue, other communications, the frequency of those communications, who initiated those communications, and who perpetuated the "cancer" metaphor.[43] We suggest that if the Government presses this issue, the record is incomplete. Beall and Barnett should be recalled.

The Special Master conducted this investigation as authorized by the Court's Order. He was authorized to compel record testimony, and did so.[44] He was authorized to issue subpoenas duces tecum,[45] and did so. He was authorized to issue

---

[40] Hrng at 2413.

[41] Hrng at 2771.

[42] D.E. 697 at 9 and n. 3.

[43] D.E. 697 at 10; Hrng 2771.

[44] D.E. 146 at 13.

[45] *Id.* at 14.

contempt citations,[46] and did not. The Special Master was entitled, and expected, to report facts and correct misleading and inaccurate claims from any party, and has done so. That does not evince unfair bias but ethical responsibility.

The Government's recusal claim fails because it misapprehends the "extrajudicial source" factor. Under *Liteky*, a judge is not subject to disqualification simply because he or she properly acquired knowledge and an opinion during the course of the proceedings at issue.[47] In other words, opinions developed during and because of the proceedings rather than extra-judicially will "rarely" establish a need for recusal.[48] Since *Liteky*, as the Fourth Circuit has observed, "the only cases where courts have granted recusal motions based on in-trial conduct tend to involve singular and startling facts."[49] Other district courts have relied on *Liteky* to deny recusal claims involving Special Masters and similar district court appointees.[50]

---

[46] *Id.* at 13.

[47] 510 U.S. at 551.

[48] *Id.* at 554.

[49] *Belue v. Leventhal*, 640 F.3d 567, 573 (4th Cir. 2011).

[50] *See, e.g., United States v. City of Albuquerque*, 2017 WL 5508519 (D.N.M. Nov. 16, 2017) (denying request to inquire into Independent Monitor's potential bias on grounds that Monitor had, during his tenure, developed "an ax to grind against certain city officials"); *Lindley v. Hackard & Holt*, 2011 WL 7775066 (N.D. Tex. Dec. 21, 2011) (denying request to recuse Special Master based on communications between Special Master and parties: "A reasonable, thoughtful, and objective person, knowing all of these facts, would not harbor doubts concerning the Special Master's impartiality, much less discern a deep-seated favoritism or antagonism that would make fair judgement impossible. Only a hypersensitive, suspicious, and cynical person would harbor such doubts.").

### 2.3 *Cobell v. Norton* is inapt.

The Government cites no Tenth Circuit law in favor of disqualification. Instead, to argue that this case involves extrajudicial information, the Government has only *Cobell v. Norton*, a 2003 D.C. Circuit case.[51] But *Cobell*'s holding was, on its own terms, "a narrow one, tethered to the peculiar facts" of that case.[52] In *Cobell*, the district court appointed Keiffer to act as a Court Monitor—a nonjudicial role.[53] While so acting, Keiffer gained significant knowledge about the case, and formed and expressed opinions based on that knowledge.[54] The district court later appointed Keiffer to act as a Special Master—a judicial role.[55] The knowledge Keiffer gained as a Court Monitor was "extrajudicial" because he was not then acting in a judicial role.[56] Consequently, "Kieffer's experience as Court Monitor disqualified him from later assuming a judicial role in this case."[57]

---

[51] D.E. 696 at 5 (citing *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003). The Government cites no Tenth Circuit law in its recusal argument. D.E. 696 at 5-12.

[52] 334 F.3d at 1141. The Tenth Circuit has cited *Cobell* only once, and that was in order to distinguish *Cobell* in reference to a non-recusal point. *F.T.C. v. Kuykendall*, 371 F.3d 745, 754 n.4 (10th Cir. 2004) (en banc).

[53] 334 F.3d at 1133.

[54] *Id.* at 1144.

[55] *Id.* at 1133.

[56] *Id.* at 1144.

[57] *Id.* at 1144-45.

The "peculiar" role-switching facts in *Cobell* are absent here. Special Master Cohen was appointed as a Special Master—that is, in a judicial role—since the outset of his involvement.[58] The Order appointing him contemplated the Phase III duties that were later initiated. Any information he has obtained, he has obtained in his same role and responsibilities. That unfavorable information he received from the Government, and his opinions about it, are not extrajudicial.

*Cobell's* singular and startling disqualifying facts are materially different from the facts here, as explained in *In re Kempthorne,*[59] which was an off-shoot of *Cobell.* Special Master Balaran was assigned to monitor the Department of Interior's handling of Indian trust accounts.[60] The Department itself hired an information technology firm to help with the accounts.[61] That firm eventually accused the Department of fraud in the midst of a contract dispute.[62] Special Master Balaran, aware of the dispute, hired an Executive Vice President of the firm to help him monitor the Department—without disclosing this fact to the Department.[63] As the D.C. Circuit put it, "[i]t is difficult to imagine a more biased way of conducting and reporting upon an investigation."[64] Secretly hiring a Department adversary (who

---

[58] *See* D.E. 146 (Appointment Order).

[59] 449 F.3d at 1266.

[60] *Id.* at 1267.

[61] *Id.*

[62] *Id.*

[63] *Id.*

had a financial interest in misconduct findings against the Department) to investigate the Department easily demonstrated bias.[65] There are no comparable facts here.

### 2.3 The Special Master's work product need not be disregarded.

In a single sentence, the Government states that "[n]ot only must the Special Master be disqualified, but the Court must disregard his work product from the outset of his investigation."[66] Even if the Special Master is recused disqualified, his work product should not be disregarded, for several reasons.

First, the Government's request to undo all of the Special Master's work is inadequately briefed and may be denied for that reason alone.[67]

Second, if this Court must disregard the Special Master's work product, then so must the Government. And yet the Government has relied extensively on facts developed by the Special Master for its own purposes in both this litigation and others.[68]

---

[64] *Id.* at 1271.

[65] *Id.*

[66] D.E. 696 at 12 (citing without explication *In re Kempthorne*, 449 F.3d 1265, 1271 (D.C. Cir. 2006)).

[67] *See, e.g., United States v. Ellis*, 868 F.3d 1155, 1181 (10th Cir. 2017) (two-sentence "bare assertion" insufficient to preserve claim for consideration; citing cases).

[68] *See, e.g.,* D.E. 306 at 3 (Brief of the Department of Justice Special Attorney Concerning the Special Master's Report Dated October 20, 2017) (arguing against further inquiry into Sixth Amendment violations because "the Special Master's investigation has uncovered no such proof"); *United States v. Hernandez*, D. Kan. No. 00-20154-01-JWL, D.E. 31 *passim* (Government Response in Opposition to

Third, if this Court must disregard the Special Master's work product, then it must appoint a new Special Master to recreate that product.[69] But such an extreme result is unnecessary. As we have already established, there is no basis for Special Master Cohen's recusal, and, likewise, no basis to disregard his work product.

One last point—the Special Master's seemingly endless patience with the USAO during 2016 and most of 2017 discredits the Government's bias claims. For many months, he attempted to negotiate, accommodate, and cajole the USAO to comply with the Court's Orders, only to find that time was wasted. Now, after exploiting the Special Master's forbearance to its own advantage and to the immeasurable and continuing detriment of FPD clients, to claim disqualifying bias is indefensible.

### 3. The Court has full authority to order production.

The Government insists that "there is no legal authority for the demands in this Court's recently-issued production order"[70] because "this is a criminal case, the

---

Defendant's Motion to Reduce or Vacate Sentence Under 28 U.S.C. § 2255, relying on *Black* D.E. 193 (Special Master's First Report Regarding Video Recordings), *Black* D.E. 214 (Special Master's Report Regarding Other Issues Related to Recordings at CCA-Leavenworth) and *Black* D.E. 253 (Phase III Order relying on Special Master's findings)).

[69] Contrast this situation with that in *Nichols*, where the Tenth Circuit could easily replace the district court judge without undoing years of work, given Defendant Nichols's timely recusal motion (a week and a day after the first complaint was filed; renewed again two weeks later). *See United States v. McVeigh*, W.D. Okla No. 95-CR-110 (D.E. 16, 26).

[70] D.E. 697 at 34.

Court's authority to order Government disclosures is principally governed by Fed. R. Crim. P. 16(a)." [71]

But Phase III is more than a routine criminal case, as the Court has repeatedly observed.[72] The Federal Rules of Civil Procedure, the Court's contempt powers, and the Court's inherent authority each authorize the Court's production order.

### 3.1 Rule 41(g) is a civil, not criminal, proceeding.

Today, the Government remains in possession of recorded attorney-client communications. Our Rule 41(g) motion has not been resolved. As the Tenth Circuit noted, this Court has authority to resolve the FPD's pending Rule 41(g) motion.[73]

Rule 41(g) proceedings are civil in nature, not criminal. [74] And the Court applies the Federal Rules of Civil Procedure to civil proceedings, not the Federal Rules of

---

[71] D.E. 697-1 at 25 Letter from SAUSAG Clymer to Counsel for the Special Master Van Bebber, Sept. 17, 2018, at 1, arguing that "*none*" of the disclosures requested "are apprpriate under the rules governing federal criminal cases." (emphasis in original).

[72] See, e.g., hrng tr. at 2804-05 (The Court: ". . . we're not going to talk about Rule 16 because . . . we're not talking about the criminal case.").

[73] Tenth Circuit case number 18-3007, Order at 1, Feb. 26, 2018.

[74] *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1167 (10th Cir. 2006) (". . . we agreed with every other circuit that had ruled on the issue in holding that a motion for return of property under Fed.R.Crim.P. 41(g) is civil rather than criminal. Such proceedings are essentially civil because they 'represent a means by which a criminal defendant can determine her rights in property, and not a part of the trial and punishment process that is criminal law.'); *United States v. Madden*, 95 F.3d 38, 39 (10th Cir. 1996) ("proceedings surrounding the motion for return of property seized in a criminal case are civil in nature."); *United States v. Maez*, 915 F.2d 1466, 1468 (10th Cir. 1990) (same);*United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996) ("a district court should treat a rule 41(e) [now amended as 41(g)] motion as a civil complaint").

Criminal Procedure (including Rule 16).[75] "The discovery rules apply to the United States—and to states and other governmental subdivisions and bodies—just as fully as they apply to any other person."[76]  The applicable civil rules include Fed. R. Civ. P. 11 (sanctions),[77] Rule 26 (duty to disclose), Rule 34 (producing ESI), and Rule 37 (failure to make disclosures or to cooperate in Discovery; Sanctions).

Rule 26(b)(5) also provides for a privilege log.[78] The SDT allowed the Government to withhold relevant but protected documents.[79] Privilege logs, as required by the Court's production order, are routine.

---

[75] *Clymore v. United States*, 415 F.3d 1113, n. 4 (10th Cir. 2005), *superseded by statute on other grounds, see Kadonsky v. United States*, 3 Fed.Appx. 898, n. 6 (10th Cir. 2001).

[76] 8 Fed. Prac. & Proc. Civ. § 2019 (3d ed.) (2018 update), Privileged Matter—Governmental Privileges.

[77] *King v. Fleming*, 899 F.3d 1140, 1150 (10th Cir. 2018) (district court did not abuse its discretion under Fed. R. Civ. P. 11 in dismissing a § 1983 action as sanction to deter future misconduct).

[78] *Ctr. for Native Ecosystems v. Salazar*, 711 F. Supp. 2d 1267, 1276 n.10 (D. Colo. 2010) (requiring production of privilege log to substantiate any claims of deliberative process and/or attorney-client privilege); *Gill v. Dep't of Justice*, Not published in F.Supp., 2015 WL 9258075, at 7 (N.D. Cal. 2015) (requiring production of a privilege log to substantiate the withholding of documents from the administrative record on deliberative process privilege grounds) *Regents of Univ. of California v. United States Dep't of Homeland Sec.*, Not published in F.Supp., 2017 WL 4642324, at 7-8 (N.D. Cal. 2017) (requiring Government to provide a privilege log for all documents withheld from the administrative record on privilege grounds).

[79] D.E. 697-1 at 6, citing 28 C.F.R. § 16.26 ('Counsel please take note: These demands are not intended to demand production that would violate any statutory or common law provision. . .. Should the Department of Justice deny disclosure of anything demanded herein, please identify the denial by reference to the factor(s) in §16.26(b) deemed applicable to that denial, and identify the official who is refusing to comply.

And Rule 37(e) provides that if,

> electronically stored information that should have been preserved in the
> anticipation or conduct of litigation is lost because a party failed to take
> reasonable steps to preserve it, and it cannot be restored or replaced through
> additional discovery . . .

the Court may make adverse inferences upon finding that the party acted with

intent to deprive another party's of use of the information in litigation.[80]

### 3.2 Contempt Powers

The Court also carries the inherent authority to punish contempt.[81] The end of a

criminal proceeding does not automatically extinguish related contempt

proceedings. The FPD has moved, repeatedly, for an order to show cause why the

USAO should not be held in contempt.[82] Those motions are pending, as the Court

noted at the November 16 hearing.[83]

Implicit in the Court's power to punish is the power to investigate. Much of the

evidentiary hearings were centered on the contempt allegations.[84] Likewise, much

---

[80] Rule 27(e) (2) (A) (and not requiring a finding of prejudice).

[81] *Chambers v. NASCO, Inc.*, 502 U.S. 32, 44 (1991) ("it is firmly established that "[t]he power to punish for contempt is inherent in all courts.").

[82] See, e.g., D.E. 301, 585, 668; Hrng at 439, 2809.

[83] Hnrg at 2809 (holding the contempt motion under advisement and asking for the "name of the individual at the Department of Justice that contempt would attach to if I were to order contempt.").

[84] D.E. 678 (Court's Order: "An evidentiary hearing is currently set in this matter for November 16, 2018 (Doc. 649) regarding the discovery production and other matters identified by the Court at the recess of the hearing on October 12, 2018. The Court now sets the Federal Public Defender's Second Supplemental Motion to Show Cause (Doc. 668) for evidentiary hearing that same date.").

of the production relates to whether USAO actors complied with or in violation of the Court's orders for cooperation and preservation. Thus, the production order will inform the Court's contempt findings and sanctions.

### 3.3 Inherent Powers

The Court has the inherent authority to investigate constitutional and prosecutorial misconduct claims in criminal, civil, or quasi-civil contexts.[85] The law would not expect a Court to turn a blind eye based on unreasonably myopic and illiberal reading of the law. An Article III Court is empowered and obligated to remedy those violations.[86]  That inherent authority sustains the production order, as well.

### 4. Conclusion

We ask the Court to deny the motion to reconsider and let stand the order for production.

---

[85] See, e.g., 42 USC § 1983; *Mayle v. Felix*, 545 U.S. 644, 655 (federal habeas proceedings are civil in nature).

[86] 28 USC § 453 Oaths of justices and judges; *Chambers v. NASCO, Inc.*, 502 U.S. at 44 ("It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others.").

Respectfully submitted,


s/ Melody Brannon
MELODY BRANNON #17612
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Melody_Brannon@fd.org


s/ Kirk Redmond
Kirk Redmond #
First Assistant
Federal Public Defender
for the District of Kansas
117 SW 6th Avenue, Suite 200
Topeka, Kansas 66603-3840
Phone: 785-232-9828
Fax: 785-232-9886
E-mail Address: Kirk_Redmond@fd.org

## **<u>CERTIFICATE OF SERVICE</u>**

I certify that on December 19, 2018, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties .

<u>s/ Melody Brannon</u>
Melody Brannon