In the United States District Court
for the District of Kansas

**United States of America**,
           Plaintiff,

v.

           Case No. **16-cr-20032-JAR-02**

**Karl Carter,**
           Defendant.

## Motion to Admit Exhibits

This Court set production deadlines for the government, and allowed the defense and Special Master to propose additional exhibits by March 7, 2019.[1] On February 5, 2019, we received material in response to the Special Master's subpoena duces tecum. We also received, and continue to receive, USAO material responsive to the Court's December 14, 2018 Order for production of recorded phone calls and derivative evidence.[2] We propose the attached exhibits, Def. Exh. 715A through 724. Below we identify and explain relevancy of each exhibit.

---

[1] D.E. 725.

[2] D.E. 705 (Order); D.E. 726 (joint Status Report related to recorded phone call production).

**Exhibit 715A** is the USAO updated inventory of recorded calls and derivative information that was surrendered to the Court and provided to the FPD on February 14, 2019. Exhibit 715 was admitted by Order of this Court on January 16, 2019, D.E. 712. Exh. 715A adds another 48 cases reviewed by the USAO. Two flash drives and eight DVD/CDs were surrendered to the Court, and copies provided to the FPD.

**Exhibit 715B** is a compendium of 54 separate requests−either email, subpoena, or USMS forms−for recorded CCA inmate calls. Similar documents are already in the record, see Def. Exh. 600-609, and were the basis for AFPD Federico's report and testimony.[3] We add these documents for reference and comparison to the material that the USAO provided, as identified in Exhs. 715, and 715A.

**Exhibit 715C** is a spreadsheet. Columns A through G were prepared by the USAO to track materials that were surrendered to the Court in response to the Court's Order.[4] Column G includes some USAO entries that read, "CCA Invest. calls and materials given to the Court in 08/2016." Those materials were given to the Court in response to the original clawback order,[5]

---

[3] Def. Exh. 562; Tr. 10/9/19 at 1497, et. seq.

[4] D.E. 705.

[5] D.E.113.

The FPD was not given a copy of the written or derivative material provided to the Court, nor were we provided an inventory or log of the materials; we cannot compare the content of that production to our data.[6] Column H was created by the FPD to combine the USAO information from Exhs. 715 and 715A for comparison in one document. Finally, Column I compares the FPD's information to that identified and produced by the USAO.

The relevancy of this comparison is two-fold: first, it confirms that recorded calls for one defendant may have been requested and accessed in a completely unrelated case, as was done in *Black*.[7] Thus, the absence of a call request within that defendant's individual case file may not reveal that the USAO accessed that defendant's calls in another case or investigation. Second, the comparison shows that the USAO cannot account for all of the recorded phone calls that it requested, obtained, or accessed. Simply put, there was not a uniform system for tracking or recording these requests or receipt of the calls.[8] Established evidence revealed that calls and video could

---

[6] We understand from the USAO that no inventory or accounting of those materials was made.

[7] See Def. Exh. 449, a partial list of attorney-client calls from unrelated cases that were obtained and disseminated in *Black* discovery.

[8] Def. Exh. 712 (3/27/17 Tomasic email to Metzger, Barnett, and Rask responding to the Special Master's request for inmate call forms: "it is clear that I did not make a uniform practice of keeping those forms in my case files. In some instances, the original form may have been delivered to the USMS. In other instances, the agent may have requested the calls.").

3

be procured without leaving any paper trail; this comparison sustains that conclusion. The absence of call access evidence in any individual case is not evidence that the USAO did not access the calls. The USAO cannot reliably account for the access, and cannot reliably deny that it accessed phone calls in any particular case for any particular defendant.[9]

**Exhibit 716** is an August 17, 2012, email from AUSA Chris Oakley to, inter alia, Special Agent Henry Herron and AUSA Jabari Wamble. The case referenced is *U.S. v. Mendy Forbes,* case #13-cr-20041-KHV-1. Oakley also prosecuted the *Black* case, Herron was an agent in *Black*, and Wamble prosecuted *U.S. v. Wood,* 14-cr-20065-JAR-1. This email reflects:

1) actual knowledge of these two prosecutors that recorded CCA calls could and did include attorney-client calls, and here produced a call attorney Kurt Kerns;

2) that there was a way to "block" attorney calls from the request to CCA;

3) that the AUSA, rather than an agent, was actually reviewing the recorded calls;

---

[9] The USAO agreed to provide the FPD with call access documents that it has located, however, that material was provided too late to incorporate into Exh. 715C. Counsel will say with confidence that the absence of the recently provided documents does not change, only confirms, the relevance of the proposed exhibit−that the USAO had no reliable means of tracking or documenting its procurement of recorded phone calls. *See* n. 8, *supra.*

4

4) that AUSA Oakley believed that the attorney-client calls were subject to the privilege, without mention of whether there was a prerecorded preamble warning that the call could be recorded; and

5) that no filter team was used to review these calls.

Finally, Herron sent the 2012 email back to Oakley on March 9, 2017, after the *Black* litigation commenced, and before Oakley testified in October 2018. These emails, which was covered by the Special Master's August 2018 subpoena duces tecum, were not produced until January 2019.

**Exhibit 717** is an affidavit from attorney Kurt Kerns, referenced in the emails marked in Exhibit 716, attesting that AUSA Chris Oakley never notified him that his attorney-client calls were recorded or that the USAO had possession of his attorney-client communication.

**Exhibit 718** is AUSA Trent Krug's March 31, 2016 written request for the U.S. Marshal to order recorded CCA phone calls made by defendant Luis Villa-Valencia for the purpose of "discovery/investigation." (pages 1 & 2).[10] The request did not exclude any calls to known attorney numbers. At the time, Villa-Valencia's attorney was Ed Fehlig, and his number was public record on CM/ECF in this case—he was appointed before calls were requested. As stipulated to by the parties in **718A**, Krug asked Sara Gardner

---

[10] *United States v. Villa-Valencia,* 16-cr-20008-CM-7.

to listen to and summarize the calls because Villa-Valencia is a Spanish speaker. Her notes (Exh. 718 at 3) reflect that one call she reviewed was an "attorney/client call."

**Exhibit 719** is two administrative subpoenas to CCA, Sgt. Wayne Bigelow, requesting recorded calls made by Michelle Reulet, who was prosecuted by AUSA Tanya Treadway in case no 14-cr-40005-DDC-3. The first page, dated July 18, 2016, shows that agents requested calls made by Reulet, with no exception made for attorney phone numbers. The second page is a similar request, but dated August 10, 2016, the day after the initial *Black* hearing. This request specifically excepts two phone numbers, both for attorney Melanie Morgan who represented Reulet in the criminal proceeding; it does not exclude the phone numbers for Reulet' s other attorneys, whose calls Treadway had already been reviewing.[11]

**Exhibit 720** documents the USAO requests for defendant Quentin Lawton's recorded CCA phone calls.[12] This exhibits shows that phone numbers could be specifically included or excluded merely by request. The two numbers excluded were the main number of the Topeka FPD and AFPD Branden Bell's direct line (Mr. Bell represented Mr. Lawton).

---

[11] Def. Exh. 592A-G, 692, & 693.

[12] D. Kan. case #16-cr-40036-DDC-1.

**Exhibit 721** is an email exchange between former AUSA Treadway and her agents investigating defendant Michelle Reulet. Like exhibit 719**,** this reflects that by August 10, 2016, the day after the initial *Black* hearing, Treadway took steps to exclude attorney Morgan's numbers from phone call requests, but did not specify the phone numbers for other Reulet attorneys whose calls she was actively reviewing.[13] Furthermore, it indicates that a taint team was designated for review of future CCA phone calls, but that the team was a special agent rather than an attorney. *Compare* testimony former DOJ attorney Justin Gelfand that that filter teams should use attorneys, not agents, to make privilege determinations.[14]

**Exhibit 722** is a May 24, 2014 email exchange between Tomasic, Zabel, and a KBI agent. It is relevant for two reasons. First, the agent says that he listened to every call in its entirety. Second, Tomasic and Zabel debate whether they should produce CCA calls in discovery. This indicates that it was not routine procedure, and confirms the common practice of only turning over information that the government intended to use. As Tomasic concludes, "I only turn them over if I'm gonna use them. I think the defense appreciates this BBC [sic] they feel obligated to listen to all if we disseminate them."

---

[13] Def. Ex. 693.

[14] Tr. at 1815:1-20 ("I never came across a situation [with a filter team] where . . . no attorney was involved.").

7

**Exhibit 723** is a January 29, 2014 email from CCA employee to Deputy Hoffer providing inmate phone call information. This document was not part of the recent disclosure, but overlooked by counsel from earlier productions. The relevance of the email is that inmate calls from case manager office telephones, which have been described as confidential legal calls,[15] were still available to the USAO.

**Exhibit 724** is not culled from the recent government productions, but is relevant in assessing the government's credibility over two and a half years of litigation. The former Deputy Attorney General, in scuttling the global resolution carefully negotiated by the Kansas USAO and the FPD, promised that,

> If any defendant has a valid claim, we will seek either to negotiate a resolution with counsel representing the individual defendant's interests, or to address it in litigation involving the aggrieved defendant.[16]

The letter shows that the FPD has offered to come to the table in every § 2255 that has been filed. This exhibit reflects that vapidity of DOJ's promise, the incredibility of the government's conduct, and the reason that

---

[15] Tr. 5/15/18 at 294:22-295:2 (testimony of former CCA Captain Leslie West).

[16] Def. Exh. 555 at 1-2 (7/27/18 letter from Deputy Attorney General Rod Rosenstein to the Special Master).

extraordinary remedies are the only meaningful remedies in this extraordinary circumstance.

## Conclusion

The FPD's proposed exhibits are attached for this Court's review. We ask the Court to admit each exhibit as relevant to issues pending before the Court.

                        Respectfully submitted,

                        s/ Melody Brannon
                        MELODY BRANNON #17612
                        Federal Public Defender
                        for the District of Kansas
                        117 SW 6th Avenue, Suite 200
                        Topeka, Kansas 66603-3840
                        Phone: 785-232-9828
                        Fax: 785-232-9886
                        E-mail Address: Melody_Brannon@fd.org

## CERTIFICATE OF SERVICE

 I certify that on March 7, 2019, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the Special Master and all parties, including Movant Parties and Interested Parties .

           s/ Melody Brannon
           Melody Brannon