IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. 16-20032-02-JAR |
| | ) |
| **KARL CARTER**, | ) |
| | ) |
| Defendant. | ) |

## STATUS REPORT OF RECORDED TELEPHONE CALL DISCOVERY

COMES NOW the United States of America, by and through Steven D. Clymer, Special Attorney, Stephen R. McAllister, United States Attorney for the District of Kansas, and Duston J. Slinkard, First Assistant United States Attorney, and pursuant to the Court's Order (Doc. 762), provides the Court with the following report on the status of production of recorded telephone call discovery related to the Federal Public Defender ("FPD")'s Motion for Discovery (Doc. 572) and the Court's Order thereupon (Doc. 705):

1. This discovery project has effectively consisted of two phases: an initial review of a group of individuals whose names were provided by the federal public defender and whom the federal public defender indicated were District of Kansas defendants who were *in custody*, and a later review of a group of individuals whose names were provided by the federal public defender and whom the federal public defender indicated were District of Kansas defendants who were *out of custody*. While there was some overlap between the two phases, for sake of simplicity they will be discussed separately.

### *Phase 1 – FPD In-Custody List*

2. On September 13, 2018, the FPD communicated to the undersigned an initial list of 37

names. *See* Attachment 1. These names were given to a U.S. Attorney's Office ("USAO") paralegal, who looked up each name in the Court's CM/ECF system, and created a spreadsheet identifying all cases for each individual and all Assistant United States Attorneys ("AUSA"s) who had appeared in each such case.

 3. On October 15, 2018, the FPD communicated to the undersigned an additional 66 names. *See* Attachment 2 (Note: Attachment 2 references 38, rather than 37 initial names, apparently by mistake). These 66 additional names were also researched to identify cases and AUSAs and added to the evolving spreadsheet.

 4. On October 22, 2018, the FPD communicated an additional name, Brett Williamson, which was similarly researched and added.

 5. The following process was used for each of the names provided by the FPD:

  a. All were provided to the United States Secret Service case agent for the investigation related to the *Black et al.* prosecution to identify whether calls had been obtained for any of the individuals during that investigation, and whether any such calls that were obtained during that investigation had been provided to the Court pursuant to its claw back Order (Doc. 113).

  b. Each individual AUSA who had been identified as appearing in a case for a person named was contacted and directed to provide the information based upon that AUSA's individual knowledge of the case, e.g.,

   [AUSA],

> As part of a discovery requirement in the Black case, I need to know the answers to the following questions with respect to each of the following list of inmates as soon as possible. Again, please provide answers to EACH question for EACH listed defendant.

2

> I may have additional follow-up questions later, and will likely have additional inmates to ask about later. In some instances, others in the office will also have handled the case for the government and may also be asked the same questions, but you only need answer based upon your individual knowledge. Please hold and maintain any information you consult in answering, regardless of whether such information has already been the subject of any litigation hold.
>
> Whether our office obtained inmate telephone calls at any time during the prosecution of the case?
> How such calls were requested, e.g. by subpoena, written request form, e-mail, telephone, etc.?
> Whether we still have any paperwork involved in the request for calls?
> Whether we still have the calls?
> Whether we have call detail reports for the calls?
> Whether there are derivative materials that show use of material from the calls, e.g. reports, affidavits, transcripts, correspondence with interpreters, etc.
>
> Right now, the defendants I have from cases for which you were involved are:

Once the later supplied names were processed, additional messages were sent as needed to communicate those names.

 c. Where a former employee who was no longer in the USAO had been identified as appearing in a case for an individual whose name was provided by the FPD, a member of the management team reviewed that former employee's e-mail archives for any responsive information. Similarly, when AUSAs suggested that a former legal assistant could have relevant information in their cases, that legal assistant's e-mail archive was reviewed.

 d. All the names were also reviewed against the call request forms that had previously been provided to the Special Master at his request.

      e. Network locations where case information is electronically stored were reviewed by a legal assistant working at the direction of the undersigned for any recorded calls or information or material revealing the existence of recorded calls for any of the individuals on the list.

      f. All physical case files for any of the cases identified for the individuals on the list remaining in the USAO were examined by a legal assistant working at the direction of the undersigned for any recorded calls or information or material revealing the existence of recorded calls.

      g. All physical case files for any of the cases identified for the individuals on the list which had been closed and sent to the Federal Records Center. At the point of closure, all materials not constituting a federal record, e.g. investigative materials, are removed from a file for return to the case agency or destruction, and the file is sent to the Federal Records Center to be retained for whatever period is required for its type of record. Files that were found to have already been closed and sent to the Federal Records Center were ordered back and examined by a legal assistant working at the direction of the undersigned for any recorded calls or information or material revealing the existence of recorded calls.

      h. In cases where information suggested that recordings were obtained, but no recordings could be located, agents were contacted to determine further information and, where possible, obtain such recordings.

9. Initially, the government's efforts were aimed at identifying responsive information, and the parties continued to negotiate how to handle calls and related information once

identified. However, by December 6, 2018, the parties were at an impasse and the FPD requested a hearing to be set on the Discovery Motion (Doc. 572). The Court set the hearing on December 14, 2018, and negotiations continued between the parties. At the hearing on December 14, 2018, the Court heard from the parties regarding their tentative agreement on production and entered its order (Doc. 705).

10. During the pendency of the motion, before and during production, the parties remained in communication, resulting in some listed individuals being identified by the FPD as not requiring a complete review. Where this was the case, they were so identified on the project spreadsheet.

11. From the beginning, the government tracked the information it was developing on a spread sheet. Once materials started to be delivered into the custody of the Court, inventory reports detailing the items delivered were included with the deliveries and also provided to the parties by e-mail. Affirmative answers were reported in the spreadsheet and inventory reports when specific affirmative evidence was found. Negative answers were reported when no such affirmative evidence was located. As such, affirmative answers were always represented to be firm, whereas negative answers were always represented as being subject to change upon the discovery of previously unknown affirmative evidence. As agreed by the parties, where any call recordings were located on the computer network, they were downloaded to a flash drive, deleted from the system, and the flash drive was delivered to the Court. Following is a listing of the disclosures to the parties and deliveries to the Court:

    a. On November 12, 2018, the government made its first disclosure to the FPD, providing the spreadsheet current to that date as an attachment to an explanatory e-mail.

*See* Attachment 3.

  b. On November 15, 2018, the government made its next disclosure to the FPD, providing the spreadsheet current to that date as an attachment to an e-mail wherein the parties continued to discuss the discovery itself. *See* Attachment 4.

  c. On December 5, 2018, the government made its next disclosure to the FPD, providing the spreadsheet current to that date as an attachment to an explanatory e-mail. *See* Attachment 5.

  d. On January 7, 2019, the government made its first submission of materials to the Court, including an inventory with the materials and providing the inventory electronically to the court and the FPD. *See* Attachment 6; also submitted as FPD Ex. No. 715, *see* Doc. 711. For this, and all subsequent deliveries to the Court, the government agreed to the materials submitted being obtained from the Court and copied by the FPD. An additional disc of calls was found, disclosed to the parties by e-mail and included with the materials from the January 7th delivery on January 11, 2019, prior to the FPD obtaining the materials to copy. *See* Attachment 7. (The submissions on January 7 and 11, 2019, including materials for Ashley Huff, who was not on the FPD's in-custody list, but whose codefendant Gregory Rapp was. Huff would later appear on the FPD's out-of-custody list.) The FPD identified certain issues and questions concerning the materials provided to the Court on January 7, 2019, and the parties discussed and resolved those issues as they arose. *See* Attachments 8-12.

  e. On February 14, 2019, the government made its next submission of materials to the Court, including an inventory with the materials. The inventory, along with an

updated informational spreadsheet, were provided to the parties and Court attached to an explanatory e-mail, indicating that the government believed that the review with respect to the in-custody names was complete except for files that were awaiting return from the federal records center or any new information that might be received on previously made inquiries. The government did have one document that was not able to be included in the February 14, 2019 delivery due to an oversight, and was emailed separately to the parties and the Court on February 15, 2019. *See* Attachments 13 and 14. As with the previous delivery, the parties continued to resolve questions that arose from the materials. *See* Attachment 15.

    f. On February 20, 2019, the parties filed a joint Status Report (Doc. 726), which addressed the January 7, 2019 and February 14, 2019 productions.

    g. On March 1, 2019, the government made its next submission of materials with respect to the in-custody list. These were materials from files received back from the Federal Records Center. The materials were accompanied by an inventory. Electronic copies or the inventory and an updated informational spreadsheet were provided to the parties and Court as attachments to an explanatory e-mail indicating that the government believed that the review with respect to the in-custody names was complete. *See* Attachment 16. As before, the parties continued to resolve questions, and additional explanatory materials were provided to the FPD at their request. *See* Attachments 17-20.

    h. On July 11, 2019, the government made its final submission of materials with respect to the in-custody list. These were materials for an individual, Robert Robinson, on the in-custody list that were not located at the time of the original review, but were

located during review of materials for a co-defendant, who was on the FPD's later out-of-custody list. These materials were submitted to the Court along with an inventory, and electronic copy of that inventory, as well as updated spreadsheet, were sent to the parties and Court attached to an explanatory e-mail. *See* Attachment 21.

*Phase 2 – FPD Out-of-Custody List*

12. On February 15, 2019, the FPD provided its out-of-custody list, consisting of 381 names, attached to an explanatory e-mail. The FPD also provided case numbers for the cases involving the named individuals. *See* Attachment 22.

13. As noted above, on February 20, 2019, the parties filed a joint Status Report, indicating as a result of the parties' negotiations that the government would have sixty days to conduct a preliminary examination of the out-of-custody list.

14. Subsequent to the filing of the Status Report, the government began preliminary examination of the list, including as before researching the individual cases to determine the which AUSAs had appeared in any of the identified cases, which offices of the USAO had handled the identified cases, personnel to be involved in the review of the list, and a method to conduct and document the review.

15. The government then began its review, employing a substantially similar methodology to that followed with the in-custody list, described in paragraph five above, with the following adjustments:

    a. For efficiency purposes, the process was re-ordered to first complete review of computer network locations and physical files to identify and collect any materials before AUSAs were asked about their knowledge of the cases. AUSAs were then asked if they

had any additional information at the point materials were ready to be submitted to the Court for a particular case.

    b. The personnel conducting the review of the computer network locations and physical files, and collection of any materials identified during that review for submission to the Court and / or production to the FPD, documented their work in a database, as was done with the inventories created during the Phase 1 in-custody review, rather than a spreadsheet format. As with reporting on the earlier in-custody phase, affirmative answers were reported when specific affirmative evidence was found, and negative answers were reported when no such affirmative evidence was located.

    c. After discussion with the FPD, it was agreed that there was not a need to bring back cases from the Federal Records Center if the individual on the list was sentenced in the case prior to 2010 and was not subject to any later revocation.

16. Following is a listing of the disclosures to the FPD and submissions to the Court made by the government with respect to the FPD's out-of-custody list:

    a. On April 24, 2019, an e-mail confirmation was provided to the FPD of an earlier verbal report regarding three individuals the FPD had prioritized for review. *See* Attachment 23.

    b. On May 15, 2019, the government made its first submission of materials to the Court, accompanied by database reports, one with respect to Kansas City cases from the list and one with respect to Topeka cases from the list. The reports were also e-mailed to the Court and the FPD. The Kansas City Report (Attachment 24) reported completion of the review for 26 individuals from the list – 23 for which no calls or materials were

9

located and 3 for which calls or materials were located and submitted to the Court. The Topeka Report (Attachment 25) reported completion of the review for 21 individuals from the list – 16 for which no calls or materials were located and 5 for which calls or materials were located and submitted to the Court.

    c. On May 22, 2019 and June 4, 2019, the parties met due to questions about the May 15, 2019 Topeka Report, which it was determined did not include 3 additional individuals: Michael Schuster, Shawn Lee Smith, and Donald Womack, whose materials were downloaded to a flash drive and deleted from the USAO's computer network. The FPD checked the materials they had copied from the submission to the Court on May 15, 2019, and confirmed that they did receive calls for Shawn Lee Smith. Further research identified that the materials for Michael Shuster were not calls, but a call transcript in .pdf form. The FPD was going to review their copies of the May 15, 2019 materials again to confirm whether they received the Schuster document and any material for Womack.

    d. On July 11, 2019, the government made a further submission to the Court. As described in 11.h. above, part of this submission was materials for an individual on the FPD's in-custody list. The rest of the submission was materials from Kansas City cases on the out-of-custody list. The Kansas City Report (Attachment 26) reported completion of the review for 12 individuals from the list – 9 for which no calls or materials were located, 2 for which calls or materials were located and submitted to the Court, and 1, Ashley Huff, for whom calls or materials had been located and submitted during the earlier in-custody review and production. *See* ¶ 11.d., above.

    e. On July 11, 2019, the government also reported on the overall status of the

project to the FPD via e-mail, including with its report two items of correspondence related to phone calls found when closed files were brought back from the Federal Records Center for Topeka cases on the list. *See* Attachment 27.

 f. On July 23, 2019, the government made a further submission to the Court with respect to Kansas City cases from the list, accompanied by a database report which was also e-mailed to the Court and the FPD. The Kansas City Report (Attachment 28) reported completion of the review for 26 individuals from the list – 20 for which no calls or materials were located and 6 for which calls or materials were located and submitted to the Court.

 g. On July 29, 2019, the government contacted the FPD by e-mail, provided an update concerning the status of the overall project, and raising some particular types of cases for discussion, which the parties later discussed and resolved. *See* Attachment 29.

 h. On August 2, 2019, the government made its most recent submission to the Court with respect to Kansas City cases from the list, accompanied by a database report which was also e-mailed to the Court and the FPD. The Kansas City Report (Attachment 30) reported completion of the review for 25 individuals from the list – 19 for which no calls or materials were located and 6 for which calls or materials were located and submitted to the Court.

 i. On August 27, 2019, the government provided the FPD via e-mail with items of correspondence related to four individuals from the list, which were identified during the last part of the review of physical files in Topeka and were the final materials for Topeka. *See* Attachment 31.

17. Following is a summary of the work done, work remaining, and a projection of expected completion for Phase 2 of the call project:

    a. **Topeka** (*See* Attachment 32.)

        1) There were **105** individuals listed with Topeka cases.

        2) The USAO's computer network was searched for all cases identified for those individuals.

        3) The physical files were reviewed for **28** cases identified for **33** individuals where the files remained in the USAO.

        4) The physical files for **72** cases identified for those individuals were determined to have been closed and shipped to the Federal Records Center. The physical files for **72** cases with activity in 2010 or after were ordered back from the Federal Records Center and reviewed.

        5) The physical files for **3** cases have not been able to be located after a diligent review.

        6) Of the **105** individuals with Topeka cases, **13** were found to have materials that were submitted to the Court and / or disclosed to the FPD, and the other **92** were not found to have any affirmative information that CCA calls were obtained by, through, or with the knowledge of the USAO.

    b. **Wichita** (*See* Attachment 33.)

        1) There were **37** individuals listed with Wichita cases.

        2) The USAO's computer network was searched for all cases identified for those individuals.

3) The physical files were reviewed for **3** cases identified for those individuals where the files remained in the USAO, with no responsive information being identified, and **3** cases for those individuals were found to be appearances on out-district warrants in magistrate court, for which no physical files had ever been created.

4) The physical files for **28** cases identified for those individuals were determined to have been closed and shipped to the Federal Records Center. The physical files for **3** cases with activity in 2010 or after were ordered back from the Federal Records Center and reviewed, with no responsive information being identified.

5) The physical files for **3** cases have not been able to be located after a diligent review.

6) Of the **37** individuals with Wichita cases, none were found to have any affirmative information that CCA calls were obtained by, through, or with the knowledge of the USAO.

c. **Kansas City** (*See* Attachment 34.)

1) There are **233** individuals listed with Kansas City cases.

2) The USAO's computer network has been searched for cases identified for **232** of those individuals and searches remain to be completed for **1** of those individuals. It is expected that all searches will be able to completed by September 30, 2019.

3) The physical files have been reviewed for cases identified for **119** of

those individuals where the files remained in the USAO. The review of physical files for approximately **24** cases covering **60** of those individuals remains ongoing and is expected to be completed by September 30, 2019.

4) The physical files for **55** cases identified for those individuals were determined to have been closed and shipped to the Federal Records Center. The physical files will not be ordered back for **3** cases that did not have activity after 2010, and review for those cases is considered complete. The physical files for **45** cases with activity in 2010 or after were ordered back from the Federal Records Center and will be reviewed upon receipt. This review is expected to be able to be completed by September 30, 2019. Records for **8** additional cases with activity in 2010 show that the files were sent to the record center, but do not provide the location information necessary to order the files back. To date, despite a diligent search, the location information has not been able to be determined.

5) The physical file for **1** case has not been able to be located after a diligent review.

6) Of the **233** individuals with Kansas City cases, **24** have been found to have materials that have been submitted to the Court and / or disclosed to the FPD (including **6** which had been previously submitted and / or disclosed prior to this project), and **27** have been found to have materials that are expected to be submitted to the Court and / or disclosed to the FPD on or before September 6, 2019. The review is complete for **65** others who were not found to have any affirmative information that CCA calls were obtained by, through, or with the

knowledge of the USAO. The review remains to be completed for **114** others (this number includes the 60 awaiting review of the physical files of their cases in the USAO, referenced in 3) above; the 45 files being returned from, and 8 files unable to be located from, the Federal Records Center, referenced in 4) above; and the 1 file that has been unable to be located, referenced in 5) above). It is expected that the review of the 105 files, whose locations are known, will be complete on or before September 30, 2019.

d. **Others**

1) There were **9** individuals listed whose cases had been petty offenses handled through the Fort Leavenworth magistrate court. The USAO does not maintain any computer or physical files for these types of matters.

2) There was **1** individual listed whose case had been a petty offense handled through the Fort Riley magistrate court. The USAO does not maintain any computer or physical files for this types of matter.

Respectfully submitted,

s/Duston J. Slinkard
Duston J. Slinkard, #21294
First Assistant United States Attorney
444 SE Quincy Street, Room 290
Topeka, KS 66683
Phone: (785) 295-2850
Fax: (785) 295-2853
duston.slinkard@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on 27th day of August, 2019, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the counsel of record in this case.

                                          s/Duston J. Slinkard
                                          Duston J. Slinkard
                                          First Assistant United States Attorney